# **EXHIBIT 6**

# SETTLEMENT AMENDMENT
August 12, 2023

The following represents the agreed terms of an Amendment (the "Settlement Amendment") to the Settlement Agreement and Mutual Release (the "Settlement") by and between **Stream TV Networks, Inc.**, a Delaware corporation ("Stream"), **Mathu Rajan** ("M Rajan"), and **Raja Rajan** ("R Rajan" and, together with Stream and M Rajan, the "Stream Parties") and **Rembrandt 3D Holding LTD**, a Nevis corporation ("Rembrandt"). Each of the Stream Parties and Rembrandt are referred to herein collective as the "Parties" and each as a "Party."

**WHEREAS**, the Parties entered into the Settlement on May 23, 2021, resolving litigation between them and conferring certain intellectual property license rights to the Stream Parties in consideration of cash payments and certain product purchase rights granted to Rembrandt;

**WHEREAS**, the Parties negotiated and agreed to certain proposed amended Settlement terms described in the Disclosure Statement (Docket Entry 293) filed by Stream on July 13, 2023 (the "Amendments") in the pending bankruptcy case in the Eastern District of Pennsylvania (Case No. 23-10763);

**WHEREAS**, all terms and conditions of the Settlement shall remain in full force and effect unless specifically amended herein; and

**WHEREAS**, the Parties wish to formally adopt the Amendments by executing this Settlement Amendment;

**NOW THEREFORE**, the Parties agree as follows:

## I. AMENDMENTS

### A. PAYMENTS

1. The Stream Parties shall pay Rembrandt Two Hundred Fifty Thousand Dollars (USD $250,000.00) as payment for attorney fees Rembrandt is owed under section 27 of the settlement agreement.
2. The Stream Parties shall pay Rembrandt Two Million Three Hundred Sixty Thousand Dollars (USD $2,360,000.00) – as the past due amount owed as of August 2023 – as follows:
   a. One Million Dollars (USD $1,000,000.00) paid to Rembrandt within seven (7) days of the Effective Date of Stream's Plan of Reorganization as approved by the Bankruptcy Court in the Eastern District of Pennsylvania.
   b. One Hundred Thousand Dollars (USD $100,000.00) per month paid to Rembrandt, beginning thirty (30) days after the Plan Effective Date, until all past due amounts have been satisfied.
   c. All subsequent monthly payments shall be made timely thereafter until the Settlement terms have been satisfied.

  d. Past due amounts shall be paid with interest accruing at the Delaware statutory rate of Six Percent (6.0%) per annum compounded annually from the date each payment was due under the Settlement.

### B. PRODUCTS
1. Delivery of prototype TVs owed to Rembrandt to be delayed until Stream's production line is operating.
2. Rembrandt may order Three Million Fifteen Thousand (3,015,000) 8K 3DASD units at cost limited monthly purchases up to the higher of
   a. Five Thousand (5,000) units per month starting the second month Stream is in production and adding an additional One Thousand (1,000) units per month each quarter thereafter
   b. Fifteen Percent (15%) of Stream's production capacity, or
   c. Any excess capacity in Stream's production in a particular month
3. Rembrandt may order additional units beyond the "at cost" units at most favored nation pricing.
4. Rembrandt will receive production financing at cost (i.e. at costs provided by third party lenders with no mark-up by Stream).

### C. RIGHTS
1. Stream's subsidiary and affiliate companies shall have the right to use the Rembrandt Intellectual Property (the "Rembrandt IP") solely for the benefit of Stream.
2. If Stream becomes aware that any of its subsidiaries are violating the terms of the Settlement by providing products or services to non-Stream customers, Stream will report such violation to Rembrandt and Rembrandt may seek an injunction to prevent further violations.

### D. CHANGE OF CONTROL
1. In the event of a change in control of Stream, Rembrandt agrees to a one-time transfer of the Rembrandt license from Stream to Visual Semiconductor, Inc. ("VSI") subject to:
   a. VSI making full payment of all amounts due to Rembrandt per the acceleration clause of Section 15 of the settlement; and
   b. VSI assuming all remaining obligations of the Settlement.

### E. FAILURE TO GAIN PLAN ACCEPTANCE
2. In the event, Stream's Plan of Reorganization is not approved, then Section I(A)(1), Section I(A)(2)(d), and Section I(D) shall continue in full force and effect but the remaining terms shall revert to the original Settlement terms unless the Settlement and the Settlement Agreement are transferred to VSI pursuant to Section I(D).

[ THE REST OF THIS PAGE LEFT INTENTIONALLY BLANK ]

The parties acknowledge their agreement to the terms of this Settlement Amendment by affixing their signatures below.

Accepted and agreed by Stream:

_____
Mathu Rajan
CEO
Stream TV Networks, Inc.

August 12, 2023

Accepted and agreed by Rembrandt:

_____
Stephen Blumenthal
President/CEO
Rembrandt 3D Holding LTD

August 12, 2023

Accepted and agreed by Mathu Rajan:

_____
Mathu Rajan

August 12, 2023

Accepted and agreed by Raja Rajan:

_____
Raja Rajan

August 12, 2023

Accepted and agreed by VSI:

_____
Visual Semiconductor, Inc.

Name: Joseph Corso
Title: Under Limited Power of Attorney Nov 30, 2022

August 12, 2023

SA20230811 - Page - 3

Stream Parties ___ / Rembrandt ___