# EXHIBIT 14

| | |
|---|---|
| **From:** | Christopher Michaels |
| **To:** | Vagnoni, Michael; George, Edmond |
| **Cc:** | ademarco@devlinlawfirm.com; Sheronas, Kelsey; ntwallace@aol.com; steve@rembrandt3d.com; kurtzman@kurtzmansteady.com |
| **Subject:** | RE: In re Stream TV - Letter to C. Michaels |
| **Date:** | Friday, September 6, 2024 4:18:00 PM |

Michael & Ed:

We have not received a response to our e-mail and it seems with the application to employ SSG advisors that you intend to proceed to offer the technology for sale. However, we have not heard from you whether you are planning to assume the Rembrandt license or remove the Rembrandt technology from the assets being offered for sale.

I have attached the scheduling order in the Delaware case in which Technovative is a defendant. Note that we now have a timeline for adding additional claims and parties. Depending on whether Stream assumes or rejects the current settlement agreement additional claims and parties might be added in the Delaware case. If rejected, Stream removes Rembrandt's technology affects whether the trustee and/or SSG advisors would be added as parties in the Delaware case. Can you respond to the questions we posit below?

I have copied Mr. Kurtzman on this email. Does SSG Advisors have a plan to avoid offering Rembrandt's technology for sale while conducting the sale of Stream assets?

Can we set up a call to discuss?

Chris

**Christopher A. Michaels**
*Registered Patent Attorney*
*Chief Executive Officer*



118 N. Tioga Street, Suite 400, Ithaca, New York 14850
Main: 607-256-2000  Fax: 607-256-3628
www.brownandmichaels.com

Email: michaels@bpmlegal.com
Direct Dial:  607-203-9470

Confidentiality Note: This email may contain confidential information that is subject to attorney-client privilege. If you received this email in error, please delete all message content from your system and notify sender.

**From:** ded_nefreply@ded.uscourts.gov <ded_nefreply@ded.uscourts.gov>
**Sent:** Friday, September 6, 2024 12:01 PM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:23-cv-00193-JLH Rembrandt 3D Holding Ltd v. Technovative Media, Inc. et al Scheduling Order

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

U.S. District Court

District of Delaware

## Notice of Electronic Filing

The following transaction was entered on 9/6/2024 at 12:00 PM EDT and filed on 9/6/2024

**Case Name:**       Rembrandt 3D Holding Ltd v. Technovative Media, Inc. et al
**Case Number:**     1:23-cv-00193-JLH
**Filer:**
**Document Number:** 55

**Docket Text:**
**SCHEDULING ORDER: Joinder of Parties due by 10/15/2024. Amended Pleadings due by 10/15/2024. Fact Discovery completed by 6/2/2025. Opening Expert Reports due by 6/30/2025. Rebuttal Expert Reports due by 7/28/2025. Reply Expert Reports due by August 25, 2025. Dispositive Motions due by 9/29/2025. A Pretrial Conference is set for 3/16/2026 at 03:00 PM in Courtroom 6D before Judge Jennifer L. Hall. A Jury Trial is set for 4/6/2026 at 09:30 AM in Courtroom 6D before Judge Jennifer L. Hall. The Court will determine the number of trial days/hours at the Pretrial Conference. Signed by Judge Jennifer L. Hall on 9/6/2024. (ceg)**

**1:23-cv-00193-JLH Notice has been electronically mailed to:**

Lisa Zwally     Lisa.Zwally@gtlaw.com, lisa-brown-9730@ecf.pacerpro.com, zerber@gtlaw.com

Benjamin J. Schladweiler     schladweilerb@gtlaw.com, Tonia.Younus@gtlaw.com, ben-schladweiler-8528@ecf.pacerpro.com, zerber@gtlaw.com

Renee Mosley Delcollo     Renee.Delcollo@gtlaw.com, tonia.younus@gtlaw.com, zerber@gtlaw.com

Andrew Peter DeMarco     ademarco@devlinlawfirm.com, dlflitparas@devlinlawfirm.com

Neil Wallace     ntwallace@aol.com

**1:23-cv-00193-JLH Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=9/6/2024] [FileNumber=5641643-0]
[10490e2ad3db001404550f5858867ef00ee922759874d3f3977fce176240d3673f43
2f81ee2bc5118ca136b365b45f4881405a494d03bb379d991eb15be49f86]]

---

**From:** Christopher Michaels
**Sent:** Monday, June 24, 2024 12:58 PM
**To:** Vagnoni, Michael <Michael.vagnoni@obermayer.com>; George, Edmond <Edmond.George@obermayer.com>
**Cc:** ademarco@devlinlawfirm.com; Sheronas, Kelsey <kelsey.sheronas@obermayer.com>; ntwallace@aol.com; steve@rembrandt3d.com
**Subject:** RE: In re Stream TV - Letter to C. Michaels

Michael & Ed:

We will be sending a proposal for a full discovery plan in both directions, however, I have some preliminary questions so we can better understand the scope of the information you are seeking.

Stream previously was assuming the license (see their disclosure DI 293 pages 15 & 16 attached). Stream has been using the technology post petition, such that the debtor has assumed the contract by its action of continuing to use the technology. What is the trustee/Stream's current position on the Rembrandt settlement/licensing agreement? Are you assuming or rejecting the agreement?

If you are assuming the agreement, what is your plan for making the monthly license payments?

If you are rejecting the agreement, what is your plan for removing the technology from the assets of the debtor?

In either case, what is your plan for removing Rembrandt technology from the assets of the debtor you are trying to sell?

I have attached a print out from the publicly available assignment database at the USPTO showing ownership of Rembrandt's patents. You can download the entire file history of the patent applications directly from the USPTO. Note that the priority patent application was filed well before Stream was even formed as an entity and before Steve ever met anyone from the Eindhoven team. Does the attached assignment recordation fully satisfy your request for information regarding ownership of the patents? Are you willing to stipulate that Rembrandt owns the listed patents or do we need to send a formal request to admit?

With respect to the ownership of the trade secrets, we understand that the settlement agreement quieted any dispute regarding ownership of the trade secrets. The original contracts between Stream, the Rajans, the Eindhoven team and lots of documents showing the work completed by the collective 3D Fusion/Rembrandt/Blumenthal team were at issue in the SDNY case. Those contracts assigned all derivative works to 3D Fusion (now Rembrandt) so the argument Rembrandt was making in the SDNY litigation was that 100% of UltraD technology belonged to Rembrandt. Stream was unable to provide a single document to counter this position during litigation and mediation, but tried to argue that it owned 100% of UltraD. We settled that case and agreed on a list of trade secrets owned by Rembrandt and that Stream was using and needed a license to that are included in the settlement agreement originally signed by Shad, then the Rajans. The SDNY litigation was dismissed based on that settlement. The agreement settled the ownership of the trade secrets and is the operative document that shows ownership of Rembrandt's trade secrets (filed as exhibits at DI 69). Our position is that the term sheet and settlement agreement are basically identical and the agreement speaks for itself with the parole evidence rule barring any of the lead up conversations.

The parole evidence rule actually plays to Stream's favor as the negotiations were largely based on an initial agreement that the Philips agreement would be the basis for our settlement (~$5,000,000 in cash with a royalty). At the time we were basing the settlement on the Philips license, but it is our understanding that Philips has since sold a portion of the IP portfolio for $250,000,000. So the benchmark for the settlement is 50x larger today that it was back in 2019. The agreement was negotiated with a mix of Stephen Blumenthal, Chi Eng, Neil Wallace, and me from the Rembrandt side and Raja Rajan, Shad Stastney, Mark Coleman, Neal Kronley, and John Welschlager from the Stream side before Magistrate Parker. In 2021, we emailed SeeCubic, Hawk, the Stream Shareholders, and Stream. The history of the negotiations included the Rajans putting forth one false explanation after another that we quickly disproved in front of the magistrate. It got so bad, we asked the judge to order Stream to send some other officer/director with authority to settle other than the Rajans. Stream brought Shad to the next mediation session. He proposed the concept of "at cost" displays in lieu of a royalty and we settled within a few hours. I don't think any of that history or benchmarks benefits Stream but if you want to get information about the parole evidence surrounding the agreement regardless of its admissibility lets discuss a plan for that discovery. We eventually discussed the agreement with Armstrong Teasdale and Mathu Rajan leading up to its signature. However, our position was they needed to sign the terms we negotiated with Shad without modification and they did so. You may want to reach out to DLA Piper and/or Armstrong Teasdale as we understand there were extensive attorney-client communications that we were not privy to that you would be able to get from them as trustee for Stream.

If we are working out a process to remove Rembrandt trade secrets and patented technology from the assets Stream/Technovative are trying to sell, then we probably need to work out a protective order protecting the information included therein. The issue of a protective order is being considered in the Delaware bankruptcy court with SeeCubic. I would propose we use a substantially similar agreement to avoid the need to replicate the effort of drafting/negotiating a unique document.

I propose a phone conference to discuss any remaining discovery issues.

Chris

**Christopher A. Michaels**
*Registered Patent Attorney*
*Chief Executive Officer*



118 N. Tioga Street, Suite 400, Ithaca, New York 14850
Main: 607-256-2000  Fax: 607-256-3628
www.brownandmichaels.com

Email: michaels@bpmlegal.com
Direct Dial:  607-203-9470

Confidentiality Note: This email may contain confidential information that is subject to attorney-client privilege. If you received this email in error, please delete all message content from your system and notify sender.

---

**From:** Sheronas, Kelsey <kelsey.sheronas@obermayer.com>
**Sent:** Monday, June 17, 2024 1:12 AM
**To:** Christopher Michaels <michaels@bpmlegal.com>
**Cc:** ademarco@devlinlawfirm.com; Vagnoni, Michael <Michael.vagnoni@obermayer.com>; George, Edmond <Edmond.George@obermayer.com>
**Subject:** In re Stream TV - Letter to C. Michaels

Counsel,

Please see attached correspondence regarding the above-referenced matter.

Best,



**Kelsey Sheronas**
Associate
Bankruptcy and Business Restructuring

**Obermayer Rebmann Maxwell & Hippel LLP**
Centre Square West
1500 Market Street | Suite 3400
Philadelphia, PA 19102-2101
215.665.3240 tel | 610.908.4163 cell | 215.665.3165 fax
kelsey.sheronas@obermayer.com | www.obermayer.com