**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **REMBRANDT 3D HOLDING LTD,** | **Case No. 2:24-cv-6706-JMY** |
| **Plaintiff,** | |
| v. | |
| **WILLIAM A. HOMONY, AS CHAPTER 11 TRUSTEE, et al.,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT**

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

    A.   Prior Stream Bankruptcy Cases ................................................................. 3

    B.   The 363 Sale ............................................................................................... 4

    C.   Rembrandt's Complaint ............................................................................ 10

III.  APPLICABLE LEGAL STANDARDS .............................................................. 11

    A.   Motions to Dismiss Under Rule 12(b)(1) ................................................. 11

    B.   Motions to Dismiss Under Rule 12(b)(6) ................................................. 12

IV.   ARGUMENT ...................................................................................................... 13

    A.   This Court Lacks Subject Matter Jurisdiction Pursuant to the *Barton* Doctrine, Because Plaintiff Did Not Obtain Leave of the Bankruptcy Court Before Filing the Complaint .......... 13

    B.   Plaintiff's Claims Against The Defendants Are Barred Or Otherwise Mooted By The Bankruptcy Court's Sale Approval Order ................................................................. 17

    C.   The Trustee And His Professionals Were Acting Pursuant To The Bankruptcy Court's Orders And Are Thus Immune From Suit ............................................................. 20

V.    CONCLUSION ................................................................................................... 22

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 12

*Barton v. Barbour*, 104 U.S. 126 (1881) ............................................................... 1, 13, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 12

*Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012) ................................................................. 12

*Buck v. Hampton Tp. School Dist.*, 452 F.3d 256 (3d Cir. 2006) ..................................... 13

*Carter v. Rodgers*, 220 F.3d 1249 (11th Cir. 2000)......................................................... 14

*Child v. Delaware Cnty.*, 2024 WL 464396 (E.D. Pa. Oct. 31, 2024).......................... 11

*Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347 (3d Cir. 2014)......................... 12

*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187 (3d Cir. 1999)......................... 17

*E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000) ............................... 19

*Friedberg v. Barefoot Architect Inc.*, 723 F. App'x 100, 103 (3d Cir. 2018).............. 13

*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) ............................................... 12

*Heavrin v. Schilling (In re Triple S Rests., Inc.)*, 342 B.R. 508 (Bankr. W.D. Ky. 2006), *aff'd*, 519 F.3d 575 (6th Cir. 2008) ........................................................................ 15

*In re Cambrian Holding Co., Inc.*, 110 F.4th 889 (6th Cir. 2024) ............................... 18

*In re Coastal Plains, Inc.*, 326 B.R. 102 (Bankr. N.D. Tex. 2005) ............................. 15

*In re Crown Vantage, Inc.*, 421 F.3d 963 (9th Cir. 2005) ............................... 13, 15, 16

*In re EXDS, Inc.*, 316 B.R. 817 (Bankr. D. Del. 2004)................................................ 19

*In re Fundamental Long Term Care, Inc.*, 628 B.R. 344 (Bankr. M.D. Fla. 2021), *aff'd* 2023 WL 2139226 (M.D. Fla. Feb. 21, 2023) .............................................................. 18

*In re Kids Creek Partners, L.P.*, 248 B.R. 554 (Bankr. N.D. Ill. 2000), *aff'd*, 2000 U.S. Dist. LEXIS 17718, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000)................................. 15

*In re Martin*, 91 F.3d 389 (3d Cir. 1996)...................................................................... 5

*In re MBMK Prop. Holdings, LLC*, 2024 WL 3167232 (Bankr. E.D. Pa. June 25, 2024) .......... 16

*In re Prosser*, No. 3:06-BK-30009, 2022 WL 4392445 (Bankr. D.V.I. Aug. 26, 2022), aff'd, No. 3:06-BK-30009, 2024 WL 3412639 (D.V.I. July 15, 2024) ..................................................... 21

*In re Reagor-Dykes Motors, LP*, 613 B.R. 878 (Bankr. N.D. Tex. 2020) ............................. 18, 19

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ................................................................................................................................... 11

*In re Swan Transportation Co.*, 596 B.R. 127 (Bankr. D. Del. 2018) .......................................... 15

*In re Truong*, 763 F. App'x 150 (3d Cir. 2019) ..................................................................... 11, 14

*In re United Tax Grp., LLC*, 2018 WL 1187395 (D. Del. Mar. 7, 2018) ................................... 16

*In re VistaCare Grp., LLC*, 678 F.3d 218 (3d Cir. 2012) ............................................. 2, 13, 14, 16

*In re Wyman*, No. 12-32264-DOF, 2023 WL 2253142 (Bankr. E.D. Mich. Feb. 27, 2023) ........ 21

*Lynch v. Jacobs*, No. CV 20-182 (MN), 2021 WL 602439 (D. Del. Feb. 16, 2021) ................... 21

*Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) ................................................................................. 12

*Matter of Baudoin*, 981 F.2d 736 (5th Cir. 1993) ....................................................................... 18

*Matter of Met–L–Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988) ................................................... 18

*Muratore v. Darr*, 375 F.3d 140 (1st Cir. 2004) ......................................................................... 15

*Phoenician Mediterranean Villa, LLC v. Swope (In re JBS Properties, LLC)*, 872 F.3d 138 (3d Cir. 2017) ............................................................................................................................. 21

*Reese v. Pook & Pook*, 158 F. Supp. 3d 271 (E.D. Pa. 2016) ............................................... 13, 14

*Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 484 (Bankr. D. Del. 2012) .... 15, 21

*Richman v. Batt*, 265 B.R. 416 (E.D. Pa. 2001) ......................................................................... 16

*Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) ..................................................................... 12

*Satterfield v. Malloy*, 700 F.3d 1231 (10th Cir. 2012) ................................................................ 11

*Sims v. Viacom, Inc.*, 544 F. App'x 99, 101 (3d Cir. 2013) ......................................................... 17

*Smith v. Dobin*, 852 F. App'x 49 (3d Cir. 2021) .......................................................... 19

*Smolow v. Hafer*, 353 F. Supp. 2d 561 (E.D. Pa. 2005) ............................................... 12

*W.G. Nichols, Inc. v. Ferguson*, 2003 WL 22158794 (E.D. Pa. Sept. 18, 2003).......................... 13

**Statutes**

28 U.S.C. § 959(a) .......................................................................................................... 15

Defendants William A. Homony, in his capacity as Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative," and collectively with Stream, the "Debtors"), SSG Advisors, LLC, J. Scott Victor, Teresa C. Kohl, Craig D. Warznak, Alexander D. Lamm, and Samuel P. Charlton, by and through their undersigned counsel, submit this Memorandum of Law in support of their joint motion to dismiss the Complaint [D.I. 1] filed against them by Plaintiff Rembrandt 3D Holding Ltd. ("Rembrandt").   In support of their motion to dismiss, Defendants respectfully state as follows:

## I.    INTRODUCTION

Rembrandt's Complaint is the latest in a long series of attempts to derail the orderly progress of the Debtors' bankruptcy proceedings.  Rembrandt's claims are based on the erroneous assertion – which it has argued (and lost) repeatedly before the Bankruptcy Court – that the Bankruptcy Court-approved sale of Debtor assets to SeeCubic Inc. ("SeeCubic") includes the sale of Rembrandt-owned intellectual property.  In fact, the Trustee did not sell and is not transferring any property owned by non-Debtors.  The Bankruptcy Court held as much in its sale approval order and opinion dated December 9, 2024 and January 8, 2025, respectively.

Defendants move to dismiss Rembrandt's Complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Dismissal under Rule 12(b)(1) is warranted because Rembrandt did not obtain leave from the Bankruptcy Court to sue the Trustee and his professionals in this Court.  Pursuant to *Barton v. Barbour*, 104 U.S. 126 (1881) and its progeny, leave of the bankruptcy court is required before

instituting an action against a bankruptcy trustee in another forum.[1]  Rembrandt does not (and cannot) allege that it received the requisite permission to institute this action, which deprives this Court of subject matter jurisdiction.

Alternatively, dismissal under Rule 12(b)(6) is warranted because Rembrandt's challenges to the Bankruptcy Court-approved sale transaction and the Trustee and his professionals' conduct relating thereto are barred by *res judicata*.  The judicially noticeable entries on the Debtors' bankruptcy docket establish that the Bankruptcy Court approved the sale over the objections of Rembrandt (and others), including objections by Rembrandt relating to its intellectual property. Rembrandt's Complaint is yet another impermissible collateral attack on the Bankruptcy Court's decisions and should be dismissed.

Finally, dismissal under Rule 12(b)(6) is warranted because the fact that the challenged actions of the Trustee and his professionals were approved by the Bankruptcy Court in the face of vigorous opposition by Rembrandt and others provides the Defendants with absolute immunity to Rembrandt's repackaged claims in the instant action.

## II.    BACKGROUND

On March 15, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").  The bankruptcy cases are being jointly administered, under the caption *In re: Stream TV Networks, Inc., et al.*, E.D. Pa. Bankr. No. 23-10763.[2]  *See* Complaint [D.I. 1] ("Compl.") at ¶ 1.

---

[1]    *See, e.g.*, *In re VistaCare Grp., LLC*, 678 F.3d 218 (3d Cir. 2012).
[2]    References to "Bankr. D.I. __" herein refer to public docket filings in E.D. Pa. Bankr. No. 23-10763.  As matters of public record in the underlying bankruptcy proceedings, the Court may

Defendant Homony is the court-appointed Chapter 11 Trustee of the Debtors' jointly-administered bankruptcy estates. *Id.* at ¶ 7. Defendant SSG Advisors, LLC ("SSG") is the Trustee's court authorized investment banker. *Id.* at ¶ 8. Defendants Victor, Kohl, Warznak, Lamm, and Charlton are employees of SSG. *Id.* at ¶¶ 16-20.

On September 20, 2024, the Bankruptcy Court entered an order granting the Trustee's application to employ and retain SSG as his investment banker to market the Debtors' assets for sale in a process subject to the oversight and ultimate approval of the Bankruptcy Court. Ex. 6, Bankr. D.I. 741. In connection with that order, SSG and its employees duly performed the services for which SSG had been retained.

## A. Prior Stream Bankruptcy Cases

The Trustee was appointed on January 5, 2024, for the reasons set forth by the Bankruptcy Court in its Memorandum dated same (Ex. 1, Bankr. D.I. 548, the "Trustee Opinion"). The Bankruptcy Court held, in relevant part, that, due to the gross mismanagement and lack of transparency under the Debtors' former CEO Mathu Rajan's leadership, (i) a Chapter 11 trustee must be appointed to administer the Debtors' cases, and (ii) Rajan was no longer authorized to act on behalf of the Debtors' estates. *See, e.g.*, Ex. 1, Trustee Opinion at pp. 31, 61.[3]

This is the third Stream bankruptcy case. The first was a Chapter 11 case initiated by Stream on February 24, 2021 and docketed at *In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case"). The Delaware Bankruptcy Court

---

consider such filings in ruling on the Trustee's motion to dismiss. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). For the Court's convenience, copies of the pertinent bankruptcy docket filings are being filed herewith as exhibits to the Declaration of Steven M. Coren, referenced herein as "Ex. __".

[3]    The Trustee Opinion also summarizes the complicated procedural history of the underlying bankruptcy case, certain of which is relevant here due to the Trustee's preclusion arguments.

dismissed the Delaware Voluntary Bankruptcy Case on May 17, 2021, as having been filed in bad faith. *See* Ex. 1, Trustee Opinion  at p. 6.

Six days later, on May 23, 2021, Rembrandt and two other purported creditors filed an involuntary Chapter 7 case, docketed at *In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case"). *Id.*  On the same day,  Stream, Rajan, Rajan's brother Raja, and Rembrandt had executed a collusive settlement agreement (the "Rembrandt Agreement").  It is this agreement that the instant Complaint trumpets as justifying the relief sought by Rembrandt. *See, e.g.*, Compl. at ¶¶ 1, 11, 216.  The timing of the execution of the Rembrandt Agreement and the filing of the Delaware Involuntary Bankruptcy Case (the same day) makes it clear that the Rembrandt Agreement was executed in a ruse to manufacture creditor status to Rembrandt (so that Rembrandt could act as one of the three purported "petitioning creditors" for purposes of the involuntary bankruptcy filing).  Not fooled, the Delaware Bankruptcy Court again dismissed the filing as having been made in bad faith, on June 10, 2021. *See* Ex. 1, Trustee Opinion at p. 6.

### B.  The 363 Sale

On May 6, 2024, the Trustee filed a Motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Motion," Ex. 2, Bankr. D.I. 630) to approve a settlement with the Debtors' secured creditor Hawk Investment Holdings Limited ("Hawk"), which had an action pending against the Debtors in the Delaware Court of Chancery.  The settlement, wherein Hawk was collateral agent for the secured creditors, resolved several disputes between the parties, provided a carve out of at least $9 million for the Debtors' estates, and provided a mechanism for the Debtors' assets to be exposed to a sale process, whereby the true value of the assets could be

assessed by exposing them to the market and at which SeeCubic would be allowed to credit bid (the "Hawk Settlement").

The Trustee's 9019 Motion was vigorously opposed by Rembrandt. *See, e.g.*, Ex. 3, Bankr. D.I. 643 (Rembrandt's 9019 objection), with Rembrandt arguing, *inter alia*, that the Hawk Settlement "will violate both the Philips and Rembrandt licenses" and that the Trustee's proposed compromise should not go forward due to the Rembrandt Agreement. *See id.* at ¶¶ 2, 31-35. The Bankruptcy Court conducted an evidentiary hearing on the 9019 Motion on June 5, 2024, during which the Trustee presented evidence that the Hawk Settlement satisfied the *Martin*[4] factors, established the facts and reasoning that had informed his decision, and was cross-examined by Rembrandt and others. *See* Ex. 5, Bankr. D.I. 670 (transcript of 6/5/24 hearing).

Ultimately, the Bankruptcy Court approved the Hawk Settlement (Ex. 4, Bankr. D.I. 653, the "9019 Order") over the objections of Rembrandt, holding, *inter alia*, that the "Settlement represents a valid exercise of the Trustee's business judgment, having been informed by extensive research, investigation, and negotiation by the Trustee" and that "[t]he Settlement and Agreement are in the best interest of the Debtors' estates and all of the Debtors' stakeholders." *Id.* at ¶¶ 4, 7. Rembrandt filed a notice of appeal of the 9019 Order (Bankr. D.I. 685), with the appeal currently pending in the District Court (E.D. Pa. No. 24-cv-2727).

Pursuant to the court-approved Hawk Settlement the Trustee negotiated an arms'-length asset purchase agreement with SeeCubic (the "Stalking Horse APA") and, on September 30, 2024, the Trustee filed a motion with the Bankruptcy Court seeking authorization and approval under Section 363 of the Bankruptcy Code of the Stalking Horse APA and the associated Bid Procedures in connection with the sale of substantially all of the Debtors' assets on an "as is," "where is" basis,

---

[4]    *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

without any warranty of any kind, express or implied (the "Sale Motion," Ex. 7, Bankr. D.I. 750).[5] The Sale Motion explicitly stated that the Trustee does not intend to sell or assign the Rembrandt License as a part of the Stalking Horse APA. *Id.* at ¶ 27. Likewise, on November 11, 2024, the Trustee filed a proposed Asset Purchase Agreement, which made it abundantly clear that the following were to be deemed "Excluded Assets" which were not part of the Debtor assets the Trustee sought to sell:

> (j)　　any grant of rights or license by Rembrandt 3D Holding Ltd. ("Rembrandt") or affiliates to Stream, including but not limited to the Rembrandt Grant of Rights in the Settlement Agreement and Mutual Release between Rembrandt and Stream dated May 23, 2021, any amendment thereto, and the Licensing Covenant between Rembrandt, Stream, and Visual Semiconductor, Inc. dated August 14, 2023, each to the extent valid, existing and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction;

> (k)　　any physical assets that contain or include Rembrandt Intellectual Property, to the extent valid, existing and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction . . . .

Ex. 9, Bankr. D.I. 795-1 at § 2.2.

As with the 9019 Motion, the Sale Motion was vigorously opposed by Rembrandt. *See, e.g.*, Ex. 8, Bankr. D.I. 789 (Rembrandt's objection to Sale Motion). Rembrandt argued that the proposed sale would include intellectual property belonging to Rembrandt and that the Trustee had failed to remove such intellectual property from the assets available for sale – the same allegations that form the basis for Rembrandt's instant Complaint. *See id.* at ¶ 1 ("Rembrandt requests that the [Sale] Motion be denied and Rembrandt further seeks an order to prevent the 363 Sale and that [sic] the chapter 11 trustee . . . not make any new proposal to sell assets of the Debtors until the Trustee has properly determined what are the assets of the Debtors and more specifically, has

---

[5]　　The Trustee's sale of the Debtors' assets is referred to herein as the "363 Sale."

removed the technology that belongs to other third party entities from the technology the debtors are proposing to sell").

Thereafter, on November 13, 2024, the Bankruptcy Court held a hearing and approved the Bidding Procedures and the Stalking Horse APA with SeeCubic.  *See* Ex. 10, Bankr. D.I. 807 (transcript of 11/13/24 hearing).  The order approving the Bidding Procedures was entered on November 20, 2024 (Ex. 11, Bankr. D.I. 811, the "Bidding Procedures Order").  The Bidding Procedures Order set a deadline of November 22, 2024 for the filing of objections specifically to the sale of the Debtor's Assets and a deadline of November 29, 2024, for the filing of responses to any objections.  On November 22, 2024, Rembrandt filed its objection, which attempted to reargue the merits of the Hawk Settlement.  *See* Ex. 12, Bankr. D.I. 816.  On December 4, 2024, the Bankruptcy Court held yet another hearing concerning the sale of the Debtors' assets.  *See* Ex. 14, Bankr. D.I. 878 (transcript of 12/4/24 hearing).

On December 9, 2024 – after consideration of Rembrandt's evidence and arguments at numerous hearings and in voluminous written submissions – the Bankruptcy Court entered an order (Ex. 13, Bankr. D.I. 876, the "Sale Approval Order") which detailed the Trustee's successful efforts to marshal and sell Debtor assets for the benefit of creditors, and approved the sale of those assets to SeeCubic pursuant to the APA.  In the Sale Approval Order, the Bankruptcy Court found, *inter alia*, that:

- The Trustee "afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Assets," *id.* at ¶ H;

- "The Trustee and the Buyer have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner and at arms' length," *id.* at ¶ J;

- "The sale process conducted by the Trustee pursuant to the Bidding Procedures Order and the Bidding Procedures resulted in the highest or otherwise best value for the Assets for the Trustee and the Debtors' estates, their creditors, and all parties

in interest, and any other transaction would not have yielded as favorable a result," *id.* at ¶ L;

- "The Trustee has demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of its obligations under the Asset Purchase Agreement.  The consummation of the Sale contemplated by the Asset Purchase Agreement is in the best interests of the Debtors, their creditors, their estates, and other parties in interest," *id.* at ¶ M;

- "the Trustee, on behalf of each Debtor, has all of the power and authority necessary to (i) execute and deliver the Asset Purchase Agreement and all other documents to consummate the Sale, and (ii) consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Trustee to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.  The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates," *id.* at ¶ AA; and

- "The Trustee has demonstrated a sufficient basis and compelling circumstances warranting his to (i) entry into the Asset Purchase Agreement, and (ii) sale of the Assets, and such actions are an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtors, their estates, and their creditors. Such business reasons include that (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement presents the best opportunity to maximize and realize the value of the Assets for the benefit of the Debtors, their estates, and their creditors; and (iii) unless the Sale contemplated by the Asset Purchase Agreement is concluded expeditiously, creditor recoveries are likely to be adversely affected," *id.* at ¶ BB.

The Sale Approval Order "authorized, empowered, and directed [the Trustee] to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms and conditions set forth in the Asset Purchase Agreement, Transaction Documents and this Sale Order," and made clear that "[a]ll persons, entities, and interested parties are prohibited and enjoined from taking any action that would in any way adversely affect or interfere with, or which would be inconsistent with, the ability of the Trustee to transfer the Assets to the Buyer (or its designee) in accordance with the Asset Purchase Agreement, the other

8

Transaction Documents, and this Sale Order."[6]  *Id.* at ¶¶ 5, 7.  Rembrandt filed a notice of appeal of the Sale Approval Order (Bankr. D.I. 877), with the appeal currently pending in the District Court (E.D. Pa. No. 24-6617).

On January 8, 2025, the Bankruptcy Court issued an Opinion (Ex. 15, Bankr. D.I. 916, the "Sale Approval Opinion") pursuant to Local Bankruptcy Rule 8003-1 in support of its Sale Approval Order.  The Bankruptcy Court held, in relevant part:

- "...Rembrandt focused [at the December 4, 2024 Sale Hearing] on what Assets were being sold and whether they included Rembrandt's intellectual property.  The APA, however, made clear that such intellectual property was an Excluded Asset.  As the Court observed at the Sale Hearing multiple times, the Assets to be sold 'are what they are,' and were set forth in the APA and its schedules.  SeeCubic agreed to purchase those Assets on an 'as is, where is' basis, and to the extent Rembrandt believes SeeCubic's use of the Assets after closing violates its rights, litigation against the purchaser is not barred," *id.* at pp. 17-18;

- "Nothing in the Blumenthal Declaration [submitted by Rembrandt at the Sale Hearing] undermines the Sale process. . . . Mr. Blumenthal does reiterate Rembrandt's argument that Stream's UltraD technology is dependent on Rembrandt's and Philips' technology, and that because Stream's licenses from Rembrandt and Philips are not transferable, SeeCubic's failure to obtain new licenses will render the Assets worthless. . . . The Court, however, dispensed with this argument at the Sale Hearing, finding that the Sale, with the exception of a piece of bonding equipment located in China, is a deal for Technovative's equity stake in certain non-debtor subsidiaries, and to the extent Rembrandt believes that the sale violates its intellectual property rights, its litigation claims [against the Buyer] are preserved," *id.* at p. 19;

- The Trustee's marketing process was reasonable in view of the facts, among others, that SSG contacted approximately 550 potential purchasers in connection with the solicitation process approved by the Bankruptcy Court in its order approving the Bidding Procedures Motion, *id.* at 18-19; and

---

[6]    While barring interference with the Trustee, the APA and Sale Approval Order expressly preserve Rembrandt's right to pursue any IP-related claims it purports to have against the Buyer.  *See, e.g.,* Ex. 13, Sale Approval Order at Ex. 1, § 2.3, (providing that "the Buyer . . . assumes any liability to the extent that there is any claim or cause of action alleging that any Intellectual Property of any third party, including but not limited to the Rembrandt Intellectual Property, has been improperly transferred or sold to the Buyer . . . as part of the Transferred Assets at Closing"); Ex. 15, Sale Approval Opinion at 18 ("to the extent Rembrandt believes SeeCubic's use of the Assets after closing violates its rights, litigation against the purchaser is not barred").

- "Finally, the Court finds that the Assets may be sold free and clear of any interests of third parties pursuant to § 363(f). Rembrandt asserts it (and Philips) has intellectual property that may not be transferred to SeeCubic. To the extent those rights exist, they are excluded under the APA. To the extent Rembrandt is arguing that Technovative's *equity interests* in non-debtor subsidiaries may not be sold because those subsidiaries are in possession of the intellectual property, the Court finds that this argument lacks merit," *id.* at p. 21.

As the Bankruptcy Court discussed, these meritless objections had been raised for the "second or third time[]" in response to the Sale Motion. *See id.* at pp. 4, 7-10 (discussing objections filed by Rembrandt and associated entity VSI to 9019 Motion and Bidding Procedures Motion, which included, *inter alia*, that the property to be sold included Rembrandt IP and that the Trustee had not "removed" those assets); *id.* at pp. 12-13 (discussing objections filed by Rembrandt and VSI to Sale Motion).

### C. Rembrandt's Complaint

On December 17, 2024, Rembrandt filed the instant Complaint against the Trustee, SSG, and certain SSG employees, asserting claims for patent infringement, misappropriation of trade secrets, and breach of the Rembrandt Agreement, and seeking injunctive relief and damages.  D.I. 1.  Rembrandt's allegations against the Trustee and his professionals at SSG all center around the actions in facilitating and entering into the 363 Sale on behalf of Debtors' estates.  *See, e.g.*, Complaint. at ¶¶ 167-69, 185, 199 (patent infringement claims based on Trustee's alleged failure to prevent Buyer's "infringing actions" and to "remove Rembrandt's patented technology from the Debtors' assets being sold"), ¶ 206 (misappropriation claim based on Trustee allegedly "selling or allowing the sale" of assets at issue), ¶ 216 (breach of contract claim based on Trustee allegedly "taking actions during his administration of the Debtors' estates" that include "selling," "allowing the sale of," and "offering for sale" the assets at issue).  Rembrandt's complaints about the Trustee and the 363 Sale are barred or otherwise mooted by the Bankruptcy Court's Sale Approval Order

– which expressly approves and directs the Trustee to consummate the sale and as to which Rembrandt's vigorous objections in the Bankruptcy Court were overruled. The fundamental allegation underlying the Complaint – *i.e.*, that "[t]he assets Defendants have sold include the intellectual property of Rembrandt," Compl. at ¶ 12 – is plainly foreclosed by the Sale Approval Order. *See* Ex. 13, Bankr. D.I. 876, Sale Approval Order at ¶ AA ("The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates."). As such, this Court should recognize the Complaint as an impermissible attempt to circumvent both the Sale Approval Order and the bankruptcy appellate process.

## III. APPLICABLE LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(1)

Under FED. R. CIV. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "At issue in a Rule 12(b)(1) motion is the court's very power to hear the case." *Child v. Delaware Cnty.*, 2024 WL 4643966, at *2 (E.D. Pa. Oct. 31, 2024) (citation omitted). Motions to dismiss based on the *Barton* doctrine are properly brought under Rule 12(b)(1) because the doctrine is "jurisdictional in nature." *In re Truong*, 763 F. App'x 150, 154 (3d Cir. 2019) (quoting *Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012)).

The applicable standard of review for a Rule 12(b)(1) motion depends on whether the motion presents a "facial" or "factual" attack. *Schering Plough*, 678 F.3d at 243. A "facial" attack "contests the sufficiency of the pleadings," and the district court "appl[ies] the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d

347, 358 (3d Cir. 2014). A "factual" attack, on the other hand, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites," and the district court is permitted to weigh and consider evidence outside the pleadings. *Id.* (citations omitted). "For both categories of attack, a plaintiff has the burden of proving jurisdiction." *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005).

A Rule 12(b)(1) motion filed before a defendant has filed an answer or otherwise presented competing factual evidence is "by definition, a facial attack," subject to the same standard as a Rule 12(b)(6) motion. *Const. Party*, 757 F.3d at 358.

### B. Motions to Dismiss Under Rule 12(b)(6)

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007);

*see also, e.g.*, *Friedberg v. Barefoot Architect Inc.*, 723 F. App'x 100, 103 (3d Cir. 2018) (documents filed on bankruptcy dockets are matters of public record which may be considered in deciding a 12(b)(6) motion); *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (in evaluating a motion to dismiss, the court "may consider . . . items appearing in the record of the case").  Res judicata and collateral estoppel may be raised upon a Rule 12(b)(6) motion if the facts are admitted, uncontroverted, or conclusively established so that nothing further can be developed by a trial of the issue.  *W.G. Nichols, Inc. v. Ferguson*, 2003 WL 22158794, at *2 n.5 (E.D. Pa. Sept. 18, 2003).

## IV.    ARGUMENT

### A.    This Court Lacks Subject Matter Jurisdiction Pursuant to the *Barton* Doctrine, Because Plaintiff Did Not Obtain Leave of the Bankruptcy Court Before Filing the Complaint

In *Barton v. Barbour*, the Supreme Court held that "before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained."  104 U.S. 126, 128 (1881).  In *In re VistaCare Grp., LLC*, the Third Circuit extended this common law doctrine to include lawsuits against a bankruptcy trustee.  *See* 678 F.3d 218, 224 (3d Cir. 2012) (joining sister circuits in extending *Barton* doctrine to bankruptcy trustees).  The Third Circuit held that "a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity."  *Id.* at 232.  The *Barton* doctrine applies to both Chapter 7 and Chapter 11 proceedings.  *See, e.g.*, *In re Crown Vantage, Inc.*, 421 F.3d 963, 970-72 (9th Cir. 2005) (applying *Barton* doctrine to liquidating trustee in Chapter 11 case).  The *Barton* doctrine also "shields not only the bankruptcy trustee, but also 'other bankruptcy-court-appointed officer[s], for acts done in the actor's official capacity.'"  *Reese v. Pook & Pook*, 158 F. Supp. 3d 271, 283-84 (E.D. Pa. 2016) (quoting *Carter v. Rodgers*, 220 F.3d

1249, 1252 (11th Cir. 2000) (applying *Barton* to bar suit against bankruptcy trustee and antiques dealer appointed by the bankruptcy trustee to conduct sale of estate property)).  As such, the doctrine applies with equal force to SSG and its professionals, as the Trustee's court authorized investment banker.

The purpose of the *Barton* doctrine is to prevent "usurpation of the powers and duties which belong[] exclusively to the appointing court" and to protect "the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities."  *VistaCare*, 678 F.3d at 225 (quoting *Barton*, 104 U.S. at 136) (brackets omitted).  "Because a judgment against the trustee . . . may affect the administration of the estate, the requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate be either brought in the bankruptcy court or with the permission of the bankruptcy court."  *Id.* at 228 (citation and internal quotation and alteration marks omitted).

Rembrandt's claims against the Defendants are barred by the *Barton* doctrine because Rembrandt did not obtain leave from the Bankruptcy Court before filing its Complaint.  This Court is deprived of subject matter jurisdiction where, as here, the plaintiff seeks to sue the Trustee and his court authorized professionals for actions taken in their official capacity – such as administration of the estate and liquidation of estate property – without leave of the Bankruptcy Court.  *See Truong*, 763 F. App'x at 153-54 (affirming dismissal of complaint against trustee related to sale of estate property because plaintiff did not obtain leave of bankruptcy court); *see also Reese*, 158 F. Supp. 3d at 283 (holding that "[p]laintiff's failure to allege that they secured the permission of the Bankruptcy Court before filing the claims strips [the District Court] of subject matter jurisdiction").

14

Further, Courts have held that the failure to first seek leave of the appointing court cannot be rectified after the suit has been filed because the case is void *ab initio*. *See, e.g., Richardson v. Monaco (In re Summit Metals, Inc.),* 477 B.R. 484, 497 (Bankr. D. Del. 2012); *In re Swan Transportation Co.*, 596 B.R. 127, 138 (Bankr. D. Del. 2018) (agreeing with *In re Summit Metals, Inc.*); *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 558-59 (Bankr. N.D. Ill. 2000), *aff'd*, 2000 U.S. Dist. LEXIS 17718, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000) (the appointing court dismissed the case under the *Barton* doctrine when plaintiffs requested leave to sue the Trustee only after filing suit in non-appointing court); *Heavrin v. Schilling (In re Triple S Rests., Inc.*), 342 B.R. 508, 512 (Bankr. W.D. Ky. 2006), *aff'd*, 519 F.3d 575 (6th Cir. 2008) (the appointing court dismissed the case under the *Barton* doctrine because the plaintiff did not seek or obtain leave of that court before filing suit against the Trustee in state court); *In re Coastal Plains, Inc.*, 326 B.R. 102, 111-112 (Bankr. N.D. Tex. 2005) (same).

There is a narrow statutory exception to the *Barton* doctrine, codified at 28 U.S.C. § 959(a), which provides "Trustees . . . of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a); *see also VistaCare*, 678 F.3d at 226-27. "By its terms, this limited exception applies only if the trustee or other officer is actually operating the business, and only to 'acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise.'" *Crown Vantage*, 421 F.3d at 971-72 (quoting *Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004)).

The § 959(a) exception clearly does not apply here, as Rembrandt's allegations against the Trustee, SSG and the SSG employees do not involve the operation of any Debtor business.[7] The Trustee "was not operating the business previously conducted by the debtor; he was liquidating the assets of the estate" – which is "precisely the type of activity that the *Barton* doctrine was designed to protect." *Crown Vantage*, 421 F.3d at 972; *see also Richman v. Batt*, 265 B.R. 416, 418 (E.D. Pa. 2001) (§ 959(a) does not apply to acts taken to administer and liquidate estate assets); *Muratore*, 375 F.3d at 144-46 (exception did not apply to allegations concerning improper liquidations).[8] In addition, because none of the Defendants acted outside the scope of the duties and responsibilities imposed by the Bankruptcy Code and supervised by the Bankruptcy Court, Rembrandt can neither allege nor prove that any of the conduct complained of is actionable. In this regard, the Defendants submit that Rembrandt knowingly disregarded the procedural restrictions established by *Barton* in order to avoid the scrutiny of its instant claims by the Bankruptcy Court, which was already thoroughly familiar with them.

---

[7]    Indeed, the Debtors were not operating at all when the Trustee was appointed. *See* Ex. 15, Bankr. D.I. 916, Sale Approval Opinion, at p. 16.

[8]    Some courts have also applied an "*ultra vires*" exception to the *Barton* doctrine, which applies when a receiver acts beyond the scope of his authorized duties – with the typical example being wrongful seizure or control of non-receivership property. *See In re MBMK Prop. Holdings, LLC*, 2024 WL 3167232, at *21 (Bankr. E.D. Pa. June 25, 2024). The Third Circuit has not recognized the *ultra vires* exception. *See In re United Tax Grp., LLC*, 2018 WL 1187395, at *4 (D. Del. Mar. 7, 2018) (citing *VistaCare*, 678 F.3d at 232). Furthermore, any attempt by Rembrandt to rely on the *ultra vires* exception due to its allegations that the Sale assets "include the intellectual property of Rembrandt" (Compl. at ¶ 12) would be barred or otherwise mooted by the Bankruptcy Court's Sale Approval Order, which expressly considered and rejected the argument. *See* Ex. 13, Sale Approval Order [Bankr. D.I. 876], at ¶¶ AA ("The [Sale] Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.").

Because Rembrandt's failure to obtain leave from the Bankruptcy Court prior to filing its Complaint deprives this Court of subject matter jurisdiction, dismissal under Rule 12(b)(1) is required.

**B.  Plaintiff's Claims Against The Defendants Are Barred Or Otherwise Mooted By The Bankruptcy Court's Sale Approval Order**

Rembrandt's patent infringement, misappropriation of trade secrets, and breach of contract claims against the Trustee and his professionals are all based on their alleged actions in connection with the marketing and sale of Debtor assets as part of the 363 Sale to SeeCubic.  *See, e.g.*, Compl. at ¶¶ 167-69, 185, 199 (alleging patent infringement via failure to prevent Buyer's "infringing actions" and to "remove Rembrandt's patented technology" from the Sale assets), ¶ 206 (alleging misappropriation by "selling or allowing the sale" of assets at issue), ¶ 216 (alleging breach of contract "by taking actions during his administration of the Debtors' estates" that include "selling," "allowing the sale of," and "offering for sale" the assets at issue).  Rembrandt's claims are just repackaged objections to the 363 Sale (which Rembrandt already raised and lost before the Bankruptcy Court) and are at odds with the Bankruptcy Court's 9019 Order (Ex. 4) and Sale Approval Order (Ex. 13).

Res judicata, also known as claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Sims v. Viacom, Inc.*, 544 F. App'x 99, 101 (3d Cir. 2013) (citation omitted).  The following requirements ordinarily must be satisfied for res judicata to apply: "(1) a final judgment on the merits in a prior suit involving, (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action."  *Id.*  "If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded."  *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

17

The first and second factors are clearly satisfied here.  With respect to the first factor, it is well-established that orders approving bankruptcy sales and compromises are final orders for res judicata purposes.  *See, e.g.*, *In re Cambrian Holding Co., Inc.*, 110 F.4th 889, 892 (6th Cir. 2024) ("Courts have treated a bankruptcy court's order approving a sale of the debtor's property under § 363 as a 'final' order.  This treatment has meant that a disgruntled party can immediately appeal a sale order.  And it has meant that a sale order can trigger the doctrines of issue and claim preclusion in other cases.") (citations omitted); *Matter of Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993) ("Our precedent clearly establishes that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for *res judicata* purposes."); *Matter of Met–L–Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir. 1988) (holding that bankruptcy court's order confirming judicial sale of a debtor's estate was a final order); *In re Fundamental Long Term Care, Inc.*, 628 B.R. 344, 346 (Bankr. M.D. Fla. 2021), *aff'd* 2023 WL 2139226 (M.D. Fla. Feb. 21, 2023) ("[A] final order approving a bankruptcy settlement under Fed. R. Bankr. P. 9019 binds creditors and has preclusive effect on all matters that were or should have been raised in the proceeding."); *In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 887-88 (Bankr. N.D. Tex. 2020) ("An order approving a settlement under Rule 9019 has res judicata effect as a final order.").[9]

The second factor is similarly clearly established by Rembrandt's active opposition to the 9019 Motion and the Sale Motion.  *See, e.g.*, *Smith v. Dobin*, 852 F. App'x 49, 51-52 (3d Cir.

---

[9]    Rembrandt has filed several appeals relating to the 9019 Order and Sale Approval Order, but such appeals do not affect the finality of the orders for res judicata purposes.  *See, e.g., In re Gay*, 2024 WL 2947614, at *12 n.18 (Bankr. W.D. Pa. June 11, 2024) (collecting cases holding that "courts have found the doctrines [of res judicata and collateral estoppel] applicable even in instances where the final order being enforced or applied is the subject of appeal"); *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 418 (M.D. Pa. 2020) ("The pendency of an appeal does not affect the potential for *res judicata* flowing from an otherwise-valid judgment.") (quotation marks and citation omitted).

2021) (affirming the district court's ruling that claims were barred by claim preclusion, and concluding that the plaintiff also failed to state a claim on which relief can be granted when the plaintiff unsuccessfully challenged the purchase of her former house in the bankruptcy court, because the plaintiff "either litigated or could have litigated her allegations of fraud regarding [the buyer] in that proceeding"); *In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 888 (Bankr. N.D. Tex. 2020) (holding that a party in interest who receives notice of and has opportunity to object to a Rule 9019 motion is bound by a resulting order for purposes of res judicata). Rembrandt objected to the Trustee's 9019 Motion (Ex. 3, Bankr. D.I. 643) and objected to the Trustee's Sale Motion (Ex. 8, Bankr. D.I. 789), raising issues which are substantively identical – including arguments based on alleged infringement of Rembrandt's intellectual property and alleged violation of the Rembrandt Agreement – to those which form the basis of Rembrandt's claims in the instant Complaint. *See* Ex. 15, Bankr. D.I. 916, Sale Approval Opinion, at pp. 4, 7-10, 12-14 (summarizing objections to 9019 Motion, Bidding Procedures Motion, and Sale Motion, and hearings held on same).

The final res judicata factor – a subsequent suit based on the same cause of action – is also met here. While courts within the Third Circuit have recognized that application of the traditional res judicata analysis is "confound[ed]" by the "depth and breadth of a bankruptcy proceeding," *In re EXDS, Inc.*, 316 B.R. 817, 822 (Bankr. D. Del. 2004), the relief requested by Rembrandt is clearly such that the "factual underpinnings, theory of the case, and relief sought . . . are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." *E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330, 337 (3d Cir. 2000).

Indeed, the purported wrongdoing raised in the Complaint – i.e., Rembrandt's allegation that the Trustee and his professionals sought to sell property belonging not to the Debtors, but instead to Rembrandt, *see, e.g.*, Compl. at ¶¶ 7-12 – is identical to the grounds raised in Rembrandt's objections to the Trustee's 9019 Motion and Sale Motion. *See, e.g.*, Ex. 3, Bankr. D.I. 643 at ¶ 41 (Rembrandt's objection to 9019 Motion, alleging that "all Stream demonstrators, products and even the core Ultra-D technology itself contains Rembrandt IP"); Ex. 8, Bankr. D.I. 789 at ¶ 2 (Rembrandt's objection to Sale Motion, alleging that "the bankruptcy estates do not own either of the Philips or Rembrandt technology that has been incorporated into the technology and products that were being sold by the Debtors"). The Bankruptcy Court's 9019 Order and Sale Approval Order fully and finally disposed of Rembrandt's claims that the Trustee and his professionals were improperly seeking to sell property belonging to Rembrandt, and Rembrandt's claim that the Trustee has infringed its intellectual property rights via the Sale is accordingly barred by the doctrine of res judicata. *See, e.g.*, Ex. 13, Bankr. D.I. 876, Sale Approval Order at ¶ AA ("The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates."); Ex. 15, Bankr. D.I. 916, Sale Approval Opinion, at pp. 17-21.[10]

### C. The Trustee And His Professionals Were Acting Pursuant To The Bankruptcy Court's Orders And Are Thus Immune From Suit

"[W]hen a trustee is acting pursuant to a court order, . . . the trustee is protected by absolute or derived immunity." *In re Wyman*, No. 12-32264-DOF, 2023 WL 2253142, at *6

---

[10]    For the same reason, Rembrandt's claims against the Trustee are also barred by collateral estoppel (also known as issue preclusion), which is narrower than claim preclusion in that claim preclusion bars all issues that were or could have been raised in the prior proceeding, while issue preclusion bars only those issues actually raised and decided. *See, e.g.*, *In re Radnor Holdings Corp.*, 564 B.R. 467, 483 (D. Del. 2017).

(Bankr. E.D. Mich. Feb. 27, 2023) (citing *Phoenician Mediterranean Villa, LLC v. Swope (In re JBS Properties, LLC)*, 872 F.3d 138, 142 n.3 (3d Cir. 2017)); *Lynch v. Jacobs*, No. CV 20-182 (MN), 2021 WL 602439, at *9 (D. Del. Feb. 16, 2021) ("Given that the Trustee was acting in compliance with and pursuant to the Delaware Bankruptcy Court's Modified Confirmation Order, the Bankruptcy Court correctly determined that the Trustee is immune from any suit brought by Appellants."); *In re Prosser*, No. 3:06-BK-30009, 2022 WL 4392445, at *6 (Bankr. D.V.I. Aug. 26, 2022), aff'd, No. 3:06-BK-30009, 2024 WL 3412639 (D.V.I. July 15, 2024) ("Judicial immunity is a defense available to bankruptcy trustees and professionals when they act within the scope of their authority and pursuant to court order."); *Summit Metals*, 477 B.R. at 501 ("Because [the] Complaint is composed almost entirely of claims stemming from official, Court-approved or Court-ordered actions, the factual allegations in the Complaint do not support a right to relief against the Defendants.").

As set forth in detail above, Rembrandt's claims against the Trustee and his professionals are all based on alleged actions in connection with the marketing and sale of Debtor assets as part of the 363 Sale to SeeCubic, which occurred pursuant to explicit Orders of the Bankruptcy Court, i.e., the 9019 Order and Sale Approval Order. The fact that the challenged actions of the Trustee and his professionals were approved by the Bankruptcy Court in the face of vigorous opposition by Rembrandt and others provides the Defendants with absolute immunity to Rembrandt's repackaged claims in the instant action.

## V.    CONCLUSION

In light of the foregoing facts and authorities, Defendants respectfully request that this Court enter an order dismissing the Complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted.

Dated: April 4, 2025                              Respectfully submitted,

/s/ Jeffrey Kurtzman                            /s/ Steven M. Coren
Jeffrey Kurtzman, Esquire                       Steven M. Coren, Esquire
KURTZMAN STEADY, LLC                            COREN & RESS, P.C.
555 City Avenue,                                Two Commerce Square, Suite 3900
Suite 480                                       2001 Market Street
Bala Cynwyd, PA 19004                           Philadelphia, PA 19103
Telephone: (215) 883-1600                       Telephone: (215) 735-8700
kurtzman@kurtzmansteady.com                     scoren@kcr-law.com

*Counsel to SSG Advisors, LLC, J. Scott*                              and
*Victor, Teresa C. Kohl, Craig D. Warznak,*
*Alexander D. Lamm, and Samuel P.*             /s/ Michael D. Vagnoni
*Charlton*                                      Michael D. Vagnoni, Esquire
                                                Edmond M. George, Esquire
                                                OBERMAYER REBMANN MAXWELL & HIPPEL
                                                LLP
                                                Centre Square West
                                                1500 Market Street, Suite 3400
                                                Philadelphia, PA 19102
                                                Telephone: (215) 665-3066

                                                *Counsel to the Trustee*

22