# Exhibit 7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Stream TV Networks, Inc.,** *et al.* | **Bankruptcy No. 23-10763 (AMC)** |
| **Debtors.** | **(Jointly Administered)[1]** |

**MOTION OF WILLIAM A. HOMONY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR (I) AN ORDER (A) APPROVING THE BIDDING PROCEDURES AND FORM OF ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS INCLUDING APPROVAL OF PROVISIONS FOR DESIGNATION OF A STALKING HORSE, (B) ESTABLISHING THE NOTICE PROCEDURES AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND SCHEDULING AN AUCTION, (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) SCHEDULING A SALE HEARING, (E) GRANTING EXPEDITED CONSIDERATION PURSUANT TO LOCAL RULE OF BANKRUPTCY PROCEDURE 5070-1(g); AND (F) GRANTING RELATED RELIEF, AND (II) AN ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF**

William A. Homony, in his capacity as Chapter 11 trustee (the "**Trustee**") of the bankruptcy estates of Stream TV Networks, Inc. ("**Stream**") and Technovative Media Inc. ("**Technovative**", or collectively with Stream the "**Debtors**"), hereby files this motion (the "**Motion**") (A) for entry an Order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**")[2], authorizing and approving (i) the proposed bidding procedures for soliciting bids for the Debtors' Assets (the "**Bidding Procedures**") in the form attached to the Bidding Procedures Order as **Exhibit 1**, including provisions authorizing and approving, but not

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures or Bidding Procedures Order.

directing Debtors' selection and designation of, a stalking horse bidder (the "**Stalking Horse**"), and (ii) the form of Asset Purchase Agreement attached hereto as **Exhibit B** (the "**Asset Purchase Agreement**"), (iii) establishing notice procedures and approving the form of notice and manner of all procedures in connection with the proposed sale of the Debtors' Assets (the "**Sale**"), scheduling an auction (the "**Auction**") (iv) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases, (v) scheduling a hearing (the "**Sale Hearing**") to approve the Sale, (vi) granting Expedited Consideration shortened time and limited notice pursuant to Local Rule of Bankruptcy procedure 5070-1(g), and (vii) granting related relief.  In addition, by this Motion, the Trustee ultimately seeks entry of an order, substantially in the form attached hereto as **Exhibit C** (the "**Sale Order**"), (i) authorizing and approving, but not directing, the sale of the Assets, in each case with such Sale being free and clear of any and all liens, claims, encumbrances and interests, (ii) and the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale, and (iii) granting related relief.

In support of this Motion, the Trustee relies upon and incorporates by reference (i) the *Declaration of William A. Homony in Support of the Sale Motion* filed contemporaneously herewith (the "**Homony Declaration**"). In further support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      As more fully described below, the Trustee intends to conduct a Sale of substantially all of the Debtors' assets (the "**Assets**") (as defined herein) for the benefit of the Debtors' estates and their creditors.

2.     The Trustee spent significant time evaluating the Debtors' options, and, with the absence of any real operations or revenue, has determined that a sale of the Debtors' Assets best serves the interests of all stakeholders in the Debtors' Cases.

3.     The Sale is necessary to maximize the value of the Debtors' Assets by exposing them to market. By this Motion, the Trustee seeks to establish procedures related to the marketing, bidding and sale process for the Debtors' Assets.

## RELIEF REQUESTED

4.     Pursuant to sections 105, 363, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007 and 9008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Local Bankruptcy Rules**"), the Trustee first seeks entry of the Bidding Procedures Order, which will authorize and approve, but do not direct, among other things: (a) the proposed Bidding Procedures; (b) the provisions approving a Stalking Horse Bidder, without bid protections; (c) the notice procedures and the form of notice and manner of all procedures in connection with the auction (the "**Auction**") and the Sale; (d) the procedures for the assumption and assignment of certain executory contracts and/or unexpired leases; (e) the scheduling of the Sale Hearing to approve the Sale; and (f) related relief. Second, at the Sale Hearing, the Trustee will seek entry of the Sale Order that will approve the sale of the Assets to the Successful Bidder, the assumption and assignment of certain executory contracts and unexpired leases and grant related relief.

5.     For the reasons set forth below and as follow, the Trustee submits that the relief requested herein is in the best interest of the Debtors, their jointly-administered but not

substantively consolidated bankruptcy estates, creditors, stakeholders, and all other parties-in-interest. The Trustee respectfully asserts that the Motion, therefore, should be granted.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the Eastern District of Pennsylvania, dated July 25, 1984, and as amended (Luongo, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7.      The factual and procedural background of this case are well known to this Court and to the extent not stated herein, the Trustee incorporates the factual and procedural background contained in the Court's Memorandum and Opinion filed on January 5, 2024 (the "**Trustee Opinion**") (D.I. #548).

8.      On March 15, 2023, (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**").

9.      On March 20, 2023, Hawk Investment Holdings Ltd. ("**Hawk**") filed a motion for relief from the automatic stay (the "**Hawk Stay Relief Motion**") seeking relief from the automatic stay in order to proceed with an action in the Delaware Court of Chancery (the "**Delaware Chancery Court**") which, in turn sought relief pursuant to § 225 of Title 8 of the Delaware Code (the "**Section 225 Action**") against the Debtors. (D.I. #16).

10.     On April 5, 2023, the Debtors filed an objection to the Hawk Stay Relief Motion. (D.I. #78).

11.     Thereafter, on April 6, 2023, Hawk filed a motion pursuant to sections 1112/1104 of the Bankruptcy Code, seeing dismissal or conversion of the Debtors' cases, or alternatively, the appointment of a Chapter 11 trustee pursuant to section 1104(a) of the Bankruptcy Code (the "**1112/1104 Motion**"). (D.I. #94).

12.     In the 1112/1104 Motion, Hawk argued that cause existed to appoint a trustee based upon the Debtors' pre- and post-petition history of fraud, dishonesty, incompetence, and gross mismanagement of their businesses.

13.     The Debtors filed an opposition to the 1112/1104 Motion on May 8, 2023. (D.I. #193).

14.     On January 5, 2024, the Court entered an order, which, among other things, granted 1112/1104 Motion with respect to the appointment of a Chapter 11 trustee, and (2) granted the Hawk Stay Relief Motion allowing the Section 225 Action to proceed (the "**Trustee Order**"). (D.I. #549).

15.     On January 9, 2024, the Office of the United States Trustee filed a notice of appointment of William A. Homony to serve as the chapter 11 trustee (the "**Appointment Date**") as well as an Application for the entry of an Order approving the appointment of the Trustee. (D.I. #554 and #553 respectively).

16.     On January 12, 2024, the Bankruptcy Court entered an Order granting the Application to appoint the Trustee.

17.     On January 17, 2024, the Trustee filed an Application to Employ Obermayer Rebmann Maxwell & Hippel LLP as his counsel (D.I. #564) and that Application was approved on January 29, 2024 (D.I. # 577).

4880-0354-5067 v1

18.     On January 17, 2024, the Trustee filed an Application to Employ Miller Coffey Tate LLP as his accountants/advisors (D.I. #566) and that Application was approved on February 15, 2024 (D.I. # 586).

19.     On August 14, 2024, the Trustee filed an Application to Employ SSG Advisors, LLC ("**SSG**") (D.I. #715) and on September 6, 2024 the Trustee filed an amended Application to employ SSG (D.I. #732) to provide investment banking services to the Trustee with respect to the marketing and sale of the Debtors' Assets.  That amended Application was approved on September 20, 2024 (D.I. #741).

20.     Since the Appointment Date, the Trustee and his professionals have reviewed and analyzed *inter alia*, the Debtors' respective Schedules of Assets and Liabilities and the Statement of Financial Affairs ("**Schedules and Statements**"), volumes of documents from the various dockets in connection with the Debtors' Cases, the Adversary Proceeding filed by the Debtors, the Delaware Chancery Court cases, the Delaware Supreme Court case, the Debtors' Monthly Operating Reports, and the volumes of documents supplied by the Debtors and contained in the Debtors' books and records provided by the Debtors, in order for the Trustee to fulfil his obligations under the Trustee Order.

21.     After substantial consultations with his professionals, and certain of the professionals retained by the Debtors' to defend the Delaware proceedings, the Trustee has determined that the sale of the Debtors' Assets pursuant to this Motion is in the best interest of the Debtors' creditors and stakeholders.

22.     Through the Trustee's substantial efforts, and having reached a settlement with Hawk, as collateral agent for the secured creditors (collectively, the "**Secured Creditors**") resolving objections to the secured claims against the Debtors' estates (the "**Hawk Settlement**"),

6

the Trustee seeks to move forward with his obligations under the Code and the Hawk Settlement
for approval of the procedures for sale of the Debtors' Assets, and ultimately approval of the Sale
at Auction.

23.     Information regarding the Debtors' Assets, capital structure, and the circumstances
its operations, is set forth in the Debtors' filed Schedules and Statements on file with the clerk of
the Bankruptcy Court.

## II.    The Debtors' Assets.

24.     The Trustee is seeking authorization and approval of Bid Procedures in connection
with the sale of substantially all of the Debtors' Assets.[3]  The Sale will be on an "as is", "where is"
basis, without any warranty of any kind, express or implied.

25.     Stream was founded to develop and commercialize a proprietary technology for
viewing three-dimensional content without the need for 3D glasses or goggles ("**Ultra-D**"). Stream
created Technovative, a wholly owned subsidiary, which in turn directly or indirectly owns various
subsidiaries, including SeeCubic B.V. ("**SCBV**"), an entity formed under the laws of the
Netherlands and which functions as the primary research and development engine for the business.
Together, these subsidiaries own and hold rights in technology including Ultra-D.

26.     Stream's Ultra-D technology was developed, in part, based on certain intellectual
property, including a portfolio of glasses-free 3D patents licensed from Koninklijke Philips
Electronics. Stream also has an alleged technology license (the "**Rembrandt License**") from
Rembrandt 3d Holding LTD ("**Rembrandt**").

---

[3] Bidders will have access to a data room to be set up for the Sale where relevant information regarding the Debtor's
Assets will be maintain during the Sale process.  The Trustee makes no warranties as to the accuracy of the Debtors'
filed Schedules and Statements and urges each potential bidder to perform their due diligence before bidding.

7

27.     The Trustee does not intend to sell or assign the Rembrandt License and believes there may be claims against Rembrandt that the Trustee is retaining and may pursue in the future.

28.     In certain instances, the Trustee may be asked to sell equity interests in certain downstream entities from the Debtor.

**III.     The Hawk Settlement, the Sale Process, and the Stalking Horse Bid.**

29.     On June 5, 2024, the Bankruptcy Court approved the Hawk Settlement.  Pursuant to the Hawk Settlement the Trustee is permitted to expose the Debtors' Assets to sale by Auction, with the Allowed Secured Claims of the Secured Creditors serving as the Stalking Horse bidder for the Assets.

30.     The Salient terms of the Hawk Settlement are as follows:

**I.     Treatment of Secured Claims**:

a.  Upon the entry of the order approving the 9019 Motion, the Secured Creditors' claims shall be deemed to have not been converted and the Secured Creditors shall be deemed to have an allowed secured claim against the Debtors' estates in the amount of $180 million plus any additional funds the Secured Creditors advance to SCBV subsequent to the Trustee's appointment ("**Allowed Secured Claim**").

b.  A portion of the Allowed Secured Claim in the amount of $150 million will serve as a stalking horse bid (the "**Stalking Horse Bid**"), subject to approval of the Bankruptcy Court, as part of a Trustee motion for auction bid procedures.  The Stalking Horse Bid will not receive any traditional bid protections, including but not limited to, a break-up fee or expense reimbursement.

c.  The Secured Creditors may participate at any auction but any overbid by the Secured Creditors in excess of the Stalking Horse Bid must be in cash but only to the extent the bid exceeds the amount of the Stalking Horse Bid.

d.  The Secured Creditors through SeeCubic shall continue to fund all costs and expenses of SCBV (incurred in the ordinary course and consistent with SCBV's operations during the pendency of these chapter 11 cases and including any employee claims arising therefrom) for so long as the parties pursue a sale of the Debtors' assets as contemplated by, and in accordance with, the  Agreement, not to exceed 90 days, which advanced amounts will increase the Allowed Secured Claim in accordance with 1(a) above and shall not constitute administrative expense claims against the Debtors' bankruptcy estates.

4880-0354-5067 v1

## II.    Sale of the Debtors' Assets.

Subject to documentation satisfactory to Hawk (and drafted in consultation with Hawk), SCI shall serve as the stalking horse bidder for the Collateral, with such bid (the "**Stalking Horse Bid**") and Asset Purchase Agreement (the "**Stalking Horse APA**") attached to the Bidding Procedures.

a.    Subject to documentation satisfactory to Hawk and the Trustee, the Stalking Horse Bid shall consist of a credit bid of the Allowed Secured Claim in the amount of $150 million.

b.    The Secured Creditors waive the right to seek or obtain a "breakup fee" or a "topping fee" or any other bid protections as part of the Stalking Horse Bid. The Bidding Procedures shall specify that in order for a bid to constitute a "Qualifying Bid" such bid shall include:

c.    A bid deposit in the amount of 10% of the proposed aggregate purchase price (the "Bid Deposit"), and

d.    Evidence satisfactory to the Trustee of its financial wherewithal to consummate a Sale in the amount of the proposed purchase price.

## III.    The Bidding Procedures.

The Bid Procedures shall specify that Qualifying Bids may include both cash and non-cash consideration, subject to the following conditions:

a.    The cash component shall be no less than $120 million,

b.    The non-cash component of the bid shall be backed by a letter of credit or other security, over which Hawk shall have consultation rights as to the sufficiency and form of such security, and

c.    The Bid Deposit shall be 10% of the aggregate purchase price, including both the cash component and the non-cash component of the bid.

d.    To the extent the Trustee receives any other Qualified Bids (exclusive of the Stalking Horse Bid which will be deemed a Qualified Bid), SCI may participate in the Auction. Any overbid submitted by SCI in excess of the Stalking Horse Bid at the Auction shall be in cash only. For the avoidance of doubt, SCI cannot utilize any of the remaining Allowed Secured Claim as part of any overbid; however, its overbid may include a credit bid up to $150 million.

## IV.    Trustee/Estate Carve out.

With respect to any sale that closes as contemplated by, and in accordance with, the terms of the Agreement, the Secured Creditors will provide a carve-out ("Carve-Out") in the form of cash from the sale proceeds of their collateral at Closing, or SeeCubic shall fund the Carve-Out if the Secured Creditors' Stalking Horse Bid or any subsequent overbid is determined to be the winning bid, as follows:

a.    $7,500,000.00 and an additional 10% of each dollar in excess of the Stalking Horse Bid for the benefit of the Debtors' estates paid as follows:

i.    $1,000,000.00 paid to the Trustee upon entry of an Order approving the

9

Agreement (i.e.: the 9019 Motion);
    ii.  $1,500,000.00 paid to the Trustee upon approval of the bidding procedures; and the balance paid at closing.
    iii.  The Trustee shall receive the balance of the Carve-Out (*i.e.*, the Carve-Out minus the Carve-Out Advance) at Closing:
        1.  In the event SCI is the successful bidder, by SCI in cash at Closing.
        2.  In the event a third party is the successful bidder, from the cash proceeds of the purchase price.

    b.  Trustee to retain rights to the $1 million bond posted by the Debtors in the DE Chancery Court.

    c.  Trustee to retain all claims and cause of action not released against third-parties including but not limited to Chapter 5 claims and causes of action and any claims against the Debtors' directors and officer (collectively "Litigation Claims") and any resulting proceeds from said Litigation Claims.

    d.  The bankruptcy estates and/or any trustee or disbursing agent retain the right to object to claims against the bankruptcy estates.

    e.  The Secured Creditors will provide the Trustee with documentation regarding SeeCubic's financial ability to fund the Carve-Out.

    f.  The Secured Creditors will be allowed a subordinate unsecured deficiency claim subordinated to all other general unsecured creditors (the "Deficiency Claim") to the extent that the Secured Creditor Distribution is not sufficient to satisfy the Allowed Secured Claim in full. The Secured Creditors' Deficiency Claim will be recognized as an impaired unsecured claim which the Secured Creditor shall be entitled to vote on confirmation of any Trustee Plan.

31.    Since its retention, SSG has begun marketing the Debtors' Assets for sale to potential purchasers in order to solicit the highest and best bid to maximize the value to the Debtors' estates.

32.    SSG will continue to actively market the Assets, to a wide spectrum of interested parties, including potential financial and strategic buyers.

33.    SSG will, with the Trustee's assistance, set up an electronic data room that will be made available for potential bidders subject to their entry into NDAs, and shall prepare and distribute presentations and confidential information memoranda regarding the Assets.

34.    SSG will continue its marketing process, which will afford the Trustee the best opportunity to maximize value for the sale of the Assets at the Auction.

10

35.     Subject to the Bidding Procedures the Trustee retains the right to pursue any transaction or restructuring strategy that, in the Trustee's business judgment, will maximize the value of the Debtors' estates.

36.     If the Trustee receives multiple offers for the Assets, the Trustee intends to conduct the Auction to determine the highest or best offer for the Assets.

37.      Accordingly, the Trustee believes that the sale of the Debtors' Assets will maximize the value of the Debtors' estates for the benefit of all their creditors, stakeholders, and other parties-in-interest.

**IV.     The Stalking Horse Provisions.**

38.     The Hawk Settlement provides for the Secured Creditors to act as the Stalking Horse Bidder for the sale of the Debtors' Assets.

39.     By this Motion, the Trustee seeks to approve the selection of the Secured Creditors as the Stalking Horse Bidder.

40.     The Stalking Horse is being selected based upon the Trustee's determination that the proposal from the Secured Creditors at this juncture represents the highest and best non-contingent offer for the Debtors' Assets to date.

41.     The Stalking Horse Bidder's offer would constitute the initial Qualified Bid (as defined in the Bidding Procedures).

42.     The Trustee, on behalf of the Debtors has entered into an Asset Purchase Agreement with the Secured Creditors (the "**Stalking Horse APA**").  Attached as Exhibit "B" is a true and correct copy of the Stalking Horse APA between the Debtors and the Secured Creditors.[4]

---

[4] Bidders should expect changes to material terms of the Stalking Horse APA in that the Stalking Horse APA contemplates a credit bid by the Secured Creditors. However, all other material terms of the APA will remain unchanged.

4880-0354-5067 v1

43.     The Trustee seeks approval of the Stalking Horse APA as a template for any Asset purchase with any third party other than the Secured Creditors or for an Alternate Transaction (the "**Modified APA**").

## V.     Bidding Procedures.

44.     By this Motion, the Trustee seeks approval of the Bidding Procedures. The Bidding Procedures are designed to maximize value for the Debtors' estates, while ensuring an orderly sale process consistent with the timeline available to the Trustee, based upon timelines in the Stalking Horse APA.

45.     The Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the manner in which bidders become Qualified Bidders and bids become Qualified Bids (each as defined in the Bidding Procedures), the receipt and negotiation of bids received, the conduct of the Auction, the selection and approval of any ultimately successful bidders, and the deadlines with respect to accomplishing the foregoing.

46.     The Trustee believes that the Bidding Procedures afford the Trustee a sufficient and reasonable opportunity to maximize the value of a sale of the Assets for the benefit of the estates.

47.     The Trustee is hopeful that the absence of any bid protections, like a Topping Fee or Break Up Fee, will encourage and perhaps stimulate additional bids.

48.     The Bidding Procedures establish the following key dates:

a.      **Hearing on Bid Procedures: October XX, 2024**

b.      **Bid Deadline**: To participate in the bidding, each Potential Bidder, must deliver to the notice parties enumerated in the Bidding Procedures a written offer, so as to be received by no later than November 15, 2024 at 4:00 (EST) (the "Bid Deadline").

12

c.    **Auction**: If the Trustee receives two or more Qualified Bids, the Trustee will conduct the Auction of the Assets. If the Auction is held, it shall take place on November 18, 2024 at 10:00 a.m. (EST) at the offices of Obermayer Rebmann Maxwell & Hippel LLP, Suite 3400, 1500 Market Street, Philadelphia, PA 19103 or such other place and time as determined by the Trustee. At the Auction, only those parties that have been designated by the Trustee as Qualified Bidders shall be entitled to attend and participate in the Auction.

d.    **Sale Hearing**: The hearing to approve the sale of the Assets to the Successful Bidder (as defined in the Bidding Procedures) is scheduled to take place on November 22, 2024 at 10:00 a.m. (EST) before the Honorable Ashely M. Chan, Bankruptcy Judge, either telephonically through Court Solutions or at the Courtroom 4 at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA 19107, or at such time thereafter as counsel may be heard.

49.    Key terms of the Bidding Procedures are highlighted below:

a.    **Due Diligence Materials**: Any party that submits to the Trustee an executed confidentiality agreement in such form reasonably satisfactory to the Trustee may be granted access to diligence materials.

b.    **Form and Content of Qualified Bids**: A Qualified Bid is a written offer to purchase the Assets, including but not limited to the Debtors' interests in intellectual property ("IP") in any combinations, submitted to the Trustee and his advisors, so as to be received by the Bid Deadline that satisfies each of the following conditions:

c.    **Good Faith Offer**: Each Bid must constitute a good faith, bona fide, non-contingent offer to purchase substantially all or certain of the Assets or other assets. The offers

may include a proposal to pay amounts due to the Secured Creditors over time if any Qualified Bid contains an upfront cash payment of at least $120,000,000.00.

d. **Good Faith Deposit**: Each Bid must be accompanied by a deposit in the amount of 10% of the proposed total purchase price which will be held in a non-interest bearing escrow account.

e. **Executed Agreement**: Each Bid must include an executed Modified APA substantially in the form of the Stalking Horse APA as set forth in Exhibit "B" as modified pursuant to which the potential bidder proposes to effectuate the acquisition of the Debtors' Assets, and any necessary transaction documents, signed by an authorized representative of such bidder.

f. Each Bid must also include a copy of the Modified APA **marked against the Stalking Horse APA attached as Exhibit B hereto, to show all changes requested by the Potential Bidder** (including those related to the assumption and assignment of executory contracts and unexpired leases, and other material terms such that the Trustee may determine how such Bid compares to the terms of the Asset Purchase Agreement and competing Bids) and if less than all Assets indicate clearly which of the Assets are being bid upon. Each Modified APA must provide a commitment to close within five (5) business days after all closing conditions are met. The Trustee reserves the right to reject any bid that is accompanied by a Modified APA that does not reasonably meet the terms of the Stalking Horse APA or exceed the Stalking Horse Bid.

g. **Purchase Price**: Each Bid must clearly identify the purchase price to be paid (the "Purchase Price").

h. **Cash Requirements**: Each Bid must provide evidence of the ability to pay the cash portion of any Purchase Price contained in any Bid, and the Initial Increment (as defined below), in full, in order to be a Qualified Bid.

i. **Designation of Assigned Contracts and Leases**: Each Bid must identify any and all executory contracts and unexpired leases of the Debtors that the potential bidder wishes to be assumed pursuant to a Sale (the "**Assigned Contracts**"). A Bid must specify whether the Trustee or the potential bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs.

j. **Designation of Assumed Liabilities**: Each Bid must identify all liabilities which the potential bidder proposes to assume as part of the Sale.

k. **Corporate Authority**: Each Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the Sale; provided that, if the potential bidder is an entity specially formed for the purpose of effectuating the Sale, then the potential bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the Sale by the equity or interest holder(s) of such potential bidder in order to satisfy the potential bidder's obligations under the Modified APA.

l. **Disclosure of Identity of Potential Bidder**: A Bid must fully disclose the identity of each entity that will be bidding on the Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation.

m. **Disclosure of Connections**: A Bid must fully disclose any connections or agreements with the Debtors or its affiliates, including any relationships, connections, agreements, arrangements or understandings with the Debtors, Trustee, the Debtors' existing shareholders, members, officers, director, managers or principals, or any other known, potential, prospective bidder, or potential bidder.

n. **Proof of Financial Ability to Perform**: A Bid must include written evidence reasonably satisfactory to the Trustee in his sole judgment, may reasonably conclude, in

15

consultation with his advisors, that demonstrates that the Potential Bidder has the necessary financial ability to timely consummate a Sale including any Overbids necessary at the Auction and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all executory contracts and unexpired leases to be assumed and assigned in such Sale.

o.     **Contingencies**: Except as otherwise provided in the Stalking Horse APA, a Bid must not be subject to material conditions or contingencies to closing, including without limitation, obtaining financing, internal approvals or further due diligence.

p.     **Bid Irrevocable**: A Bid must provide that it is irrevocable until two (2) business days after the Closing of the Sale. Each potential bidder further agrees that its Bid, if not chosen as the Successful Bid (as defined in the Bid Procedures), shall serve, without modification, as a Backup Bid (as defined in the Bid Procedures) as may be designated by the Trustee at the Sale Hearing, in the event the Successful Bidder (as defined in the Bid Procedures) fails to close as provided in the Successful Bidder's APA and the Sale Order.[5]

q.     **As-Is, Where-Is**: A Bid must include the following disclaimer: EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY THE TRUSTEE PURSUANT TO THIS AGREEMENT (I) THE TRUSTEE MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, RELATING TO THE ASSETS, OR THE ASSUMED LIABILITIES, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO VALUE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR FOR ORDINARY PURPOSES, OR ANY

---

[5] Pursuant to the Bidding Procedures, the Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final and best Overbid) open and irrevocable until two (2) business days after the closing of the Sale (the "Outside Backup Date").

4880-0354-5067 v1

OTHER MATTER, (II) THE TRUSTEE MAKES NO, AND HEREBY DISCLAIMS ANY, OTHER REPRESENTATION OR WARRANTY REGARDING THE ASSETS OR THE ASSUMED LIABILITIES, AND (III) THE ASSETS AND THE ASSUMED LIABILITIES ARE CONVEYED ON AN "AS IS, WHERE IS" BASIS AS OF THE CLOSING, AND THE BUYER SHALL RELY ONLY UPON ITS OWN EXAMINATION THEREOF. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY THE TRUSTEE PURSUANT TO THIS AGREEMENT, THE TRUSTEE MAKES NO REPRESENTATION OR WARRANTY REGARDING ANY ASSET, AND NONE SHALL BE IMPLIED AT LAW OR IN EQUITY.

r.      **Time Frame for Closing**: A Qualified Bid by a potential bidder must be reasonably likely to be consummated, if selected as the Successful Bid, within a timeframe acceptable to the Trustee, or by November 29, 2024.

s.      **Consent to Jurisdiction**: Each Potential Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, the Trustee, the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Trustee, the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale, and (iii) commit to the entry of a final order or judgment in any way related to the Trustee, the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

17

t.    **No Bid Protections**: The Stalking Horse bidder shall receive no bid protections.

u.    **Auction and Auction Procedures**: At the Auction, all Qualified Bidders may submit Overbids (as defined in the Bidding Procedures); provided, however, such Overbid shall be made in increments of not less than $250,000.00 ("**Initial Overbid Increment**") above the prior bid (with respect to bids other than the Stalking Horse Bid, the Overbid must exceed the Stalking Horse Bid, plus the Initial Overbid Increment). The Auction shall continue until there is one Qualified Bid that the Trustee determines, in his reasonable business judgment is the highest or otherwise best Qualified Bid at the Auction (the "**Successful Bid**," and the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**"), which shall be subject to approval by the Bankruptcy Court. In selecting the Successful Bid, the Trustee may consider any factors relevant to the value and viability of the Qualified Bid, including the amount and nature of the consideration, including any assumed liabilities, the timing for Closing, the nature, number and type of changes to the Stalking Horse APA contained in the Modified APA, if any, the extent to which such modifications are likely to delay or impede the Closing of the Sale, the total consideration to be received by the Debtors, the likelihood of each Qualified Bidder's ability to close a transaction and the timing thereof, and the net benefit to the Debtors' estates. Promptly following the Trustee's selection of the Successful Bid and the conclusion of the Auction, the Trustee shall announce the Successful Bid and Successful Bidder at the close of the Auction and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

v.    **Reservation of Rights**: Except as otherwise provided in the Bidding Procedures or the Bidding Procedures Order, the Trustee reserves the right as he may reasonably determine to be in the best interest of the Debtors' estates and in the exercise of his fiduciary duties

to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and the estates; (e) impose additional terms and conditions with respect to all potential bidders; (f) extend the deadlines set forth herein without consent; and (g) increase subsequent bid increments following the Overbid; or (h) remove any Asset from the auction, or continue or cancel the Auction and/or Sale Hearing in open court without further notice. Notwithstanding anything to the contrary contained in the Bidding Procedures or the Bidding Procedures Order, nothing in the Bidding Procedures will prevent the Trustee from considering any and all transactions. Notwithstanding anything to the contrary contained in the Bidding Procedures or the Bidding Procedures Order, nothing in the Bidding Procedures will prevent the Trustee from exercising his fiduciary duties under applicable law to maximize the value to be obtained for the Assets.

50.     The Bidding Procedures expressly recognize the Trustee's fiduciary obligations to maximize value. Accordingly, the Bidding Procedures preserve the Trustee's right to announce additional procedural rules for conducting the Auction as necessary or appropriate to maximize value for the Debtors' estates and does not impair the Trustee's ability to consider any and all Qualified Bids.

**VI.     Form and Manner of Sale Notice.**

51.     Within three (3) business days after the entry of the Bidding Procedures Order, or as soon thereafter as practicable (the "**Mailing Date**"), the Trustee will cause the notice, substantially in the form attached hereto as **Exhibit D** (the "**Sale Notice**"), to be served on (a) any

19

party that has filed a notice of appearance in these Chapter 11 cases; (b) any entity on the Master Service List; (c) any parties known or reasonably believed to have expressed interest in the Assets or any portion thereof; (d) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Assets; (e) all parties to executory contracts and unexpired leases to be assumed and assigned, as part of the Sale; (f) all applicable state and local taxing authorities; and (g) any governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder (the "**Notice Parties**").

52.    Additionally, on the Mailing Date or as soon as reasonably practicable thereafter, the Trustee proposes to publish the Sale Notice (as may be modified for publication purposes, the "**Publication Notice**"), on one occasion, in a paper of general circulation chosen in consultation with SSG. The Trustee believes that the Publication Notice is sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Trustee.

53.    The Trustee avers that the Sale Notice and Publication Notice are reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction; (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Motion and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets for the Sale; (v) instructions for obtaining a copy of the Asset Purchase Agreement; (vi) representations describing the Sale as being free and clear of any and all liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances, and other interests attaching to the sale proceeds with the same validity and priority; and (vii) notice of the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder arising from the Auction, if any, and the procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

20

## VII. Assumption Procedures.

54. The Trustee also seeks approval of the procedures for assuming and assigning executory contracts and unexpired leases (the "**Assumption Procedures**") to facilitate the fair and orderly assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale. The key provisions of the Assumption Procedures are:

a. **Contract Assumption Notice**: No less than seven (7) days prior to the Sale Objection Deadline (the "**Assumption and Assignment Service Deadline**"), the Trustee shall serve a notice of contract assumption in substantially the form attached hereto as **Exhibit E** (the "Contract Assumption Notice") via overnight delivery on all counterparties to all potential Assigned Contracts and provide a copy of the same to the Secured Creditors. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Trustee's good faith estimates of the Cure Payments required in connection with the executory contract or unexpired lease, as applicable, and (iv) the Sale Objection Deadline; provided, however, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or unexpired lease, as applicable, or that the stated Cure Payment related to any executory contract or unexpired lease constitutes a claim against the Debtors. Further, the inclusion of an executory contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such executory contract or unexpired lease, as applicable, will ultimately be assumed and assigned.

b. **Cure Payments and Adequate Assurance of Future Performance**: The payment of the applicable Cure Payments by Successful Bidder, the provision of adequate

21

assurance by the Successful Bidder(s), that they will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Successful Bidder(s) under the Assigned Contracts shall (i) effect a cure of all defaults existing thereunder, and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

        c.     Assumption Notices will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice.

        d.     **Objections**: Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by counsel to the Trustee on or before fourteen (14) days after service of the Contract Assumption Notice (the "**Cure Objection Deadline**"). The deadline to object to assumption and assignment solely with respect to the adequate assurance of future performance from the Successful Bidder, however, is the date that is two days after the conclusion of the Auction, but any such objection must be received before the start of the Sale Hearing, or such deadline set forth in the Supplemental Assumption Notice.

        55.     Any party failing to timely file an objection to the cure amount, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract

22

or Additional Assigned Contract (including the adequate assurance of future performance), (c) the

relief requested in the Motion, and (d) the Sale. Such party shall forever be barred and estopped

from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or

Additional Assigned Contract, adequate assurance of future performance, the relief requested in

the Motion, whether applicable law excuses such counterparty from accepting performance by, or

rendering performance to the Successful Bidder, for purposes of section 365(c)(1) of the

Bankruptcy Code and from asserting any additional cure or other amounts against the Trustee and

the Successful Bidder, as applicable, with respect to such party's Assigned Contract or Additional

Assigned Contract.

## BASIS FOR RELIEF REQUESTED

56.     The Trustee submits that the Sale requested by this Sale Motion is authorized under

section 363(b) of the Bankruptcy Code governing sales outside of the ordinary course of a debtor's

business.

57.     Section 363(b) of the Bankruptcy Code provides, in relevant part: "[t]he trustee,

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b).

58.     This Court's power under section 363 is augmented by section 105(a), which

provides in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. As set forth below, the

Trustee submits he has satisfied the requirements of sections 105, 363, and 365 of the Bankruptcy

Code.

**VIII.  The Bidding Procedures Are Fair and Designed to Maximize Value for the Assets.**

59.     The Trustee submits that the Bidding Procedures as proposed herein, are appropriate under sections 105 and 363 of the Bankruptcy Code, in that they are tailored to ensure that bidding is fair and reasonable and will yield the maximum value for the Debtors' Assets, for the benefit of their respective estates, their creditors, stakeholders, and other parties-in-interest.

60.     The Bidding Procedures proposed herein are designed to maximize the value received for the Assets by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids.

61.     The Bidding Procedures provide potential bidders with sufficient notice and an opportunity to acquire or obtain information necessary to submit a timely and informed bid. Accordingly, the Trustee and all parties-in-interest can be assured that the consideration obtained for the Assets will be fair and reasonable and will achieve the highest or best value. At the same time, the Bidding Procedures provide the Trustee with the opportunity to consider all competing offers and to select, in his discretion, the highest and best offer for the Assets.

62.     Accordingly, the Trustee believes and therefore prays the Court should approve the Bidding Procedures, including the selection of the Stalking Horse as a Qualified Bidder and the Stalking Horse Bid as the initial Qualified Bid.

**IX.     Approval of the Sale is Warranted Under Section 363(b) of the Bankruptcy Code Because a Sound Business Justification Exists.**

63.     Although the Bankruptcy Code does not articulate the standard for approving a sale of assets (other than requiring notice and a hearing), the United States Court of Appeals for the Third Circuit in the seminal case of *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) interpreted Section 363(b)(i) to require a finding by the Bankruptcy Court that the

acquirer of a debtor's assets be a good faith purchaser. The Third Circuit construed the "good faith

purchaser" standard to mean one who purchases "in good faith" and for "value." Id. at 147.

64.    As the court in *Abbotts Dairies* opined:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his
> conduct in the course of the sale proceedings. Typically, the misconduct that would
> destroy a purchaser's good faith status at a judicial sale involves fraud, collusion
> between the purchaser and other bidders or the trustee, or an attempt to take grossly
> unfair advantage of other bidders.

*Id*. at 147 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

65.    Traditionally, courts have held that "fair and valuable consideration is given in a

bankruptcy sale when the purchaser pays 75% percent of the appraised value of the assets." *Abbotts*

*Dairies*, 788 F.2d at 149; *In re Karpe*, 84 B.R. 926, 933 (Bankr. M.D. Pa. 1988).

66.    Respectfully, the sale of the Assets in accordance with the Bidding Procedures

satisfies the *Abbotts Dairies* test. First, the Trustee has fully disclosed and requested the Court's

approval of the Bidding Procedures and all the terms and conditions of the Sale and proposed

Auction and intends to provide comprehensive notice of the sale as discussed above. *See In re*

*Colony Hill Assoc.*, 111 F.3d 269 (2d Cir. 1997) (determination of "good faith" is based on

traditional equitable principles, including whether there has been full disclosure to the Bankruptcy

Court). The Bid Procedures are specifically tailored to maximize the value to be obtained for the

Assets.

67.    In addition, the Trustee intends to continue to market the Sale of the Assets. The

Trustee and his Advisors at SSG are hopeful that as a result of their intended notice of the Sale to

all potentially interested parties, and ensuing efforts to find other bidders, and the marketing of the

Assets, interested purchasers will be encouraged to submit bids, attend the Auction and generate a

spirited and robust Auction process.

4880-0354-5067 v1

68.    Courts typically require a sound business purpose to sell assets outside of a plan of reorganization. *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

69.    Courts consider the following non-exhaustive list of factors in determining whether a sound business purpose exists: (a) sound business reason for the sale; (b) accurate and reasonable notice; (c) proportionate value of the asset to the estate as a whole (fair and reasonable); (d) the amount of elapsed time since the filing; (e) the likelihood that a plan of reorganization will be proposed and confirmed in the near future; (f) the effect of the proposed disposition on the future plan; (g) the amount of proceeds to be obtained from the sale versus the appraised value of the property sold; and (h) whether the asset is decreasing or increasing in value. See *Lionel Corp.*, 722 F.2d at 1071; *Del. & Hudson Ry.*, 124 B.R. at 176; *In re Weatherly Frozen Food Grp., Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992). A debtor is "simply required to justify the proposed disposition with sound business reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

70.    Consideration of the above factors here unequivocally establishes that the Sale should be approved. As discussed above, the Trustee will continue his marketing efforts for the Assets and will solicit proposals for the purchase of the Assets before the proposed bid deadline and, based on the Trustee's and SSG's marketing efforts, the Trustee will have, under the circumstances, amply marketed the Assets before the proposed date of the Sale Hearing.

71.    The Trustee has proposed Bidding Procedures designed to maximize the purchase price for the Debtors' Assets.  The Procedures allow for sale of all or part of the Debtors' Assets to various purchasers. The proposed Bidding Procedures and the form and manner of notice of the

Sale have been submitted for approval to the Court and will ensure that any and all interested

parties will receive adequate notice of the Auction to allow for a competitive Sale process.

72.     Further, based upon the Hawk Settlement a distribution to unsecured creditors is

assured.  An Auction process  provides a mechanism that may yield additional recoveries.

73.     For all these reasons, the Trustee respectfully submits that the Sale of the Assets is

supported by sound business reasons and is in the best interests of the Debtors and their respective

estates. Accordingly, the Trustee requests approval of the Sale pursuant to Section 363(b) of the

Bankruptcy Code.

## X.      The Sale Satisfies the Requirements of Section 363(f) for a Sale Free and Clear of All Liens, Claims, Encumbrances and Interests.

74.     Section 363(f) permits a debtor to sell property free and clear of another party's

interest in the property if: (a) applicable non-bankruptcy law permits such a free and clear sale; (b)

the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds

the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the

interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of

its interest. See 11 U.S.C. § 363(f). Because section 363(f) is stated in the disjunctive, satisfaction

of any one of its five requirements will suffice to warrant approval of the proposed sale. *See In re

Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) is written in the disjunctive,

authorizing a trustee or debtor-in-possession to sell property of the estate free and clear of all liens

"if any of the five conditions of § 363(f) are met"); *Scherer v. Fed. Nat'l Mortg. Ass'n (In re

Terrace Chalet Apts., Ltd.)*, 159 B.R. 821, 825 (N.D. Ill. 1993) (sale extinguishes liens under

section 363(f) as long as one of the five specified exceptions applies).

75.     In this case, the Assets are subject to the claims of the Allowed Secured Claims.

27

76.     Here, the Trustee avers that sections 363(f)(2) and (5) are satisfied with respect to Allowed Secured Claims. Further, all parties known to have asserted a lien or other encumbrance on the Assets will receive notice of the Sale. To the extent they have not objected to the Sale by the Sale Objection Deadline, they will be deemed to have consented to the Sale free and clear of all liens, claims, encumbrances and interests (other than Assumed Liabilities).

77.     The Trustee proposes to sell the Assets in a commercially reasonable manner and expects that the value of the proceeds from such sale will adequately reflect the value of the property sold.  The Auction will result in proceeds (or a credit bid) paying or satisfying all Allowed Secured Claims.  Second, the Trustee further proposes that upon the Closing, any party with a valid and enforceable lien or other encumbrance shall have a corresponding security interest in the proceeds of the Sale, as such liens and encumbrances will attach to the proceeds of the Sale with the same validity, priority, and force and effect as such lien or encumbrance had immediately prior to the closing of the Sale. In addition, all such persons could be compelled to accept money satisfaction for their security interests. As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for the sale of the Assets, free and clear of all liens, claims and encumbrances (other than the Assumed Liabilities).

78.     The Trustee also submits that it is appropriate to sell the Assets free and clear of successor liability relating to the Assets. Such limitations on successor liability ensure that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to the Debtors' estates. If such relief is not granted, the purpose of an Order purporting to authorize the transfer of assets free and clear of encumbrances (other than the Assumed Liabilities) would be thwarted by the potential for holders of claims to

4880-0354-5067 v1

thereafter use the transfer as a basis to assert claims against a buyer arising from the Debtors' conduct.

79.    Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free and clear from successor liability relating to the debtor's business. *See, e.g., In Matter of Motors Liquidation Co.*, No. 15-2844-BK(L), 2016 WL 3766237 (2d Cir. July 13, 2016) *12, *13 ("We agree that successor liability claims can be `interests' when they flow from a debtor's ownership of transferred assets" and holding that "a bankruptcy court may approve a § 363 sale `free and clear' of successor liability claims if those claims flow from the debtor's ownership of the sold assets. Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim"); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[I]n personam claims, including any potential state successor or transferee liability claims against New Chrysler, as well as in rem interests, are encompassed by section 363(f) and are therefore extinguished by the Sale."); *Contrarian Funds, LLC v. Westpoint Stevens, Inc. (In re Westpoint Stevens, Inc.)*, 333 B.R. 30, 50 (S.D.N.Y. 2005), *rev'd in part on other grounds*, 600 F.3d 231 (2d Cir. 2010) ("Where . . . a sale is to be free and clear of existing liens and interests other than those of the estate, one or more of the criteria specified in section 363(f) of the statute must also be met.").

80.    For these reasons, the Successful Bidder should not be liable under any theory of successor liability relating to the Assets, but instead, should receive the Assets free and clear of claims (other than the Assumed Liabilities) including successor liability claims, and the Sale Order so provides.

**XI.    A Successful Bidder Should be Entitled to the Protections of Section 363(m) of the Bankruptcy Code and the Sale Does Not Violate Section 363(n).**

81.    Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a buyer who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. 11 U.S.C. § 363(m).

82.    "Although the Bankruptcy Code does not define the meaning of `good-faith buyer,' . . . most courts have adopted a traditional equitable definition: `one who purchases the assets for value, in good faith and without notice of adverse claims.'" *Licensing by Paolo v. Sinatra (In Re Gucci)*, 126 F.3d 380, 392 (2d Cir. 1997)). The "good faith component of the test under § 363(m) speaks `to the equity of [the bidder's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978).

83.    As will be demonstrated at the Sale Hearing, the Trustee's conduct of the sale process, and the selection of a Successful Bid, shall have been conducted in good faith and at arm's-length in accordance with the Bid Procedures. Accordingly, the Trustee requests that the Sale Order include a provision that the Successful Bidder for the Assets is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code. The Trustee believes that providing the Successful Bidder with such protection will ensure that the maximum price will be achieved for the Assets.

84.     Furthermore, as will be demonstrated at the Sale Hearing, neither the Trustee nor the Successful Bidder, once selected, shall have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. The Trustee will have negotiated the Asset Purchase Agreement in good faith and at arms' length. Moreover, the Bidding Procedures are designed to prevent the Trustee or the Successful Bidder from engaging in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

## XII.    The Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.

85.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). A trustee or debtor's decision to assume or reject an executory contract or unexpired lease is governed by the business judgment standard. *See Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (section 365 of the Bankruptcy Code "permits the trustee or debtor in possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide whether ones it would be beneficial to adhere to and which ones it would be beneficial to reject"). Once the debtor (or trustee) states a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

31

86.     Further, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor or trustee to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1). Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2).

87.     The meaning of "adequate assurance of future performance" is dependent on the facts and circumstances of each case. Adequate assurances may be provided, for example, by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Fleming Cos.*, 499 F.3d 300 (3d Cir. 2007) (quoting *Cinicola*, 248 F.3d at 120 n. 10 (3d Cir. 2001).

88.     The Trustee requests approval under section 365 of the Bankruptcy Code of the Trustee's assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder. The Trustee further requests that the Sale Order provide that the Assigned Contracts will be transferred to and remain in full force and effect for the benefit of the Successful Bidder notwithstanding any provisions in such contracts or leases, including those described in sections 365(b)(2), (f)(1) and (f)(3) of the Bankruptcy Code that prohibit such assignment.

89.     To the extent necessary, the Trustee will present facts at the Sale Hearing to demonstrate the financial wherewithal, willingness, and ability of the Successful Bidder to perform under the Assumed Contracts.

4880-0354-5067 v1

90.    The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate performance under the Assumed Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.

91.    Further, the Trustee will give notice to all parties to the potentially Assigned Contracts in substantially the form attached hereto as **Exhibit E**.  The Contract Assumption Notice will include the amounts the Trustee believes are necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code.

92.    Accordingly, the Trustee submits that implementation of the proposed contract assumption procedures is appropriate and should be approved by this Court.

## XIII.   The Stalking Horse Will Not Receive Expense Reimbursement or a Breakup Fee.

93.    Pursuant to the Bidding Procedures, the Trustee will not pay the Stalking Horse a Breakup Fee and/or Expense Reimbursement (i.e., the Bid Protections). In the exercise of his judgment, the Trustee, and the Secured Creditors have agreed, that the Stalking Horse Bidder will not receive any Bid Protections.

### IMMEDIATE RELIEF IS NECESSARY/WAIVER OF STAY

94.    The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. In explicating the standards governing preliminary injunctions, courts have instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which `money damages cannot provide adequate compensation.' "*Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). Further, the "harm must be shown to be actual and imminent, not remote or speculative." The Trustee submits that, for the reasons already set forth herein, the relief requested

33

in this Motion is necessary to avoid immediate and irreparable harm. In that regard the Trustee

will be seeking expedited consideration the Sale Motion and Bid Procedures.

95.     The Trustee also requests that the Court waive the stay imposed by Bankruptcy

Rule 6004(h), which provides that an order authorizing the use, sale, or lease of property other

than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise." Fed. R. Bankr. P. 6004(h).

96.     Accordingly, the Trustee respectfully requests that the Court waive the 14-day stay

imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies

immediate relief.

## REQUEST FOR EXPEDITED CONSDIERATION PURSUANT TO LOCAL RULE OF BANKRUPTCY PROCEDURE 5070-1(g)

97.     In accordance with L.B.R. 5070-1(f), and 9014-1, the Trustee seeks Expedited

Consideration of the instant Motion and further requests approval of the request for expedited

consideration pursuant to L.B.R. 9014-2.

98.     Pursuant to L.B.R. 5070-1(f)(3), this request for expedited consideration may be

stated as part of the Motion.

99.     The Trustee respectfully submits that expedited consideration of the Motion is

required to permit the immediate and timely marketing of the Assets and ensure a Closing by the

end of November 2024 as agreed upon with the Secured Creditors.

100.    The Trustee further believes that expedited consideration will not prejudice the

Debtors or any of the Debtors' creditors or stakeholders when balanced against the Trustee's need

to expeditiously bring the Assets to market.

101.    The undersigned has contacted the office of the United States Trustee and counsel

to the Secured Creditors as required by L.B.R. 5070-1(f)(1). The United States Trustee and the

Secured Creditors have consented to the Motion being heard on an expedited basis consistent with the Court's calendar.

102.    Furthermore, The Trustee also requests (a) that this Court permit notice of the hearings to be served by overnight mail, facsimile transmission, or by electronic means upon (i) the Office of the United States Trustee, (ii) the Debtors' top 20 unsecured creditors, (iii) the Secured Creditors, (iii) the Debtors; and (iv) all parties who have timely filed requests for notice under Bankruptcy Rule 2002, and (b) that this Court limit the notice period accordingly. The Trustee believes that such notice is sufficient under the circumstances for the expedited hearing.

103.    Reduction of the time periods in question is not prohibited under Fed. R. Bankr. P. 9006(c)(2) and the rules listed therein.

## RESERVATION OF RIGHTS

104.    Nothing in this Motion should be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation of the Trustee's ability to contest same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim; or (d) granting third-party-beneficiary status or bestowing any additional rights on any third party.

## NOTICE

105.    Notice of this Motion will be given to: (i) the Office of the United States Trustee for Region 3; (ii) the Secured Creditors, (iii) the holders of the twenty (20) largest unsecured claims against the Debtors; and (v) all parties entitled to notice pursuant to Local Bankruptcy Rule 9014-3. The Trustee submits that no other or further notice is required.

4880-0354-5067 v1

## NO PRIOR REQUEST

106.    No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

The Trustee respectfully request that this Court enter the Bidding Procedures Order, approve the authority of the Trustee to select a Stalking Horse Bidder, and, after the Sale Hearing, the Sale Order, substantially in the forms annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: September 30, 2024       By: */s/ Michael D. Vagnoni*
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066
Facsimile: (215) 665-3165
E-mail:  edmond.george@obermayer.com
          michael.vagnoni@obermayer.com

*Counsel to William A. Homony Chapter 11 Trustee*

36

**<u>EXHIBIT A</u>**
**Bidding Procedures Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)**[1] |
|  | : |  |

## ORDER (A) APPROVING BIDDING PROCEDURES AND FORM OF ASSET PURCHASE AGREEMENT IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING PROCEDURES FOR SELECTION OF A STALKING HORSE BIDDER AND BID PROTECTIONS, AND (D) <u>GRANTING RELATED RELIEF</u>

Upon the motion (the "**<u>Sale Motion</u>**") of William A. Homony (the "**<u>Trustee</u>**") in his capacity of Chapter 11 Trustee of Stream TV Networks, Inc. ("**<u>Stream</u>**") and Technovative Media Inc. ("**<u>Technovative</u>**", or collectively with Stream, the "**<u>Debtors</u>**"), seeking entry of an order (this **"<u>Order</u>"**), (a) authorizing and approving the bidding procedures attached hereto as Exhibit 1 (the "**<u>Bidding Procedures</u>**")[2] in connection with the sale of the Assets of the Debtors, and the form of Asset Purchase Agreement in connection with the Sale, (b) approving the form and manner of notice of the Auction and the Sale Hearing, (c) scheduling the Sale Hearing and setting other related dates, (d) approving procedures for the assumption and assignment of executory contracts and unexpired leases and noticing of related Cure Payments, (e) granting expedited consideration of the Sale Motion and (f) granting related relief; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having the power to enter a final order

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Declaration of the Trustee in Support of the Motion, as applicable.

consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Trustee's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no further notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and this Court having determined that the relief requested by the Motion is in the best interests of the Debtors, its estate, creditors, and other parties in interest; and upon all of the proceedings in this Chapter 11 case conducted before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby **FOUND, CONCLUDED AND DETERMINED THAT**:

A.    <u>Bidding Procedures</u>. The Trustee has articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the value of the Assets.

B.    <u>Asset Purchase Agreement</u>. The form of Stalking Horse Asset Purchase Agreement attached to the Motion as **Exhibit B** (the "**Stalking Horse APA**") is reasonable and appropriate for soliciting bids for the Assets.

C.    <u>Sale Notice</u>. The notice, substantially in the form attached hereto as **Exhibit 2**, provided by the Trustee regarding the Sale of the Assets by the Auction and Sale Hearing (the "**Sale Notice**") is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction; (ii) the Bidding

Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Motion and the date, time, and place of the Sale Hearing; (iv) specific identification of the Assets for sale; (v) instructions for promptly obtaining a copy of the Asset Purchase Agreement; (vi) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching to the sale proceeds with the same validity and priority; and (vii) notice of the proposed assumption and assignment of the Assigned Contracts to the Successful Bidder and the right, procedures, and deadlines for objecting thereto, and no further notice of the Sale shall be required.

        D.    <u>Assumption and Assignment Procedures</u>. The Motion and the Contract Assumption Notice (as defined herein) are reasonably calculated to provide counterparties to the Assigned Contracts with proper notice of the intended assumption and assignment of their executory contracts and any Cure Payments (as defined herein). The Assumption Procedures (as defined herein) are appropriate.

        E.    <u>Other Findings</u>. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

        **NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT**:

        1.    The Motion is GRANTED as set forth herein.

**I.    Important Dates and Deadlines**

        2.    **<u>Sale Hearing</u>**. The Sale Hearing will commence on **November 22, 2024,** before the Honorable Ashely M. Chan, United States Bankruptcy Judge, in the United States Bankruptcy

Court, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA, 19107, in Courtroom No. 4.

3.      **Sale Objection Deadline**. Objections, if any, to the Motion and the Sale of the Assets to a Successful Bidder, except objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be made by **November 20, 2024 at 4:00 p.m. (prevailing Eastern Standard Time)** (the "**Sale Objection Deadline**"). Objections solely based on the identity of the Successful Bidder and adequate assurance of future performance must be made by **4:00 p.m.** (**prevailing Eastern Time**) on the date that is two (2) business days before the Sale Hearing (the "**Supplemental Limited Sale Objection Deadline**"). In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline and served on (i) counsel to the Trustee so as to be received by the applicable objection deadline as set forth in the Procedures Order, and (ii) any other entity on the Master Service List.

4.      **Response Deadline**. Responses or replies, if any, to timely filed objections to entry of the Sale Order approving a Sale to the Successful Bidder must be filed prior to commencement of the Sale Hearing, provided that such deadline may be extended by agreement of the Trustee and the affected objecting party. Responses or replies, if any, to timely filed objections to the identity of the Successful Bidder and/or adequate assurance of future performance may be presented at the Sale Hearing.

5.      **Competitive Bidding**. The following dates regarding the competitive bidding process are hereby established and approved:

a.    **Bid Deadline: November 15, 2024, at 4:00 p.m. (prevailing Eastern Standard Time)**, the deadline by which all Qualified Bids (as defined in the Bidding Procedures) must be actually received in writing in electronic format by the parties specified in the Bidding Procedures (the "Bid Deadline"); and

b.    **Auction: November 18, 2024, at 10:00 a.m. (prevailing Eastern Standard Time)**, is the date and time the Auction, which will be held at the offices of counsel to the Trustee, Obermayer Rebmann Maxwell & Hippel LLP, 1500 Market Street, Suite 3400 Philadelphia, PA, 19102 or such other place and time as the Trustee shall notify all Qualified Bidders that have submitted Qualified Bids, and the Secured Creditors and their counsel.

II.    **Bidding Procedures and Related Relief**

A.    **Bidding Procedures.**

6.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved in their entirety. The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale, and any party desiring to submit an offer for the Assets must comply with the terms of the Bidding Procedures and this Order. The Bidding Procedures shall also govern the terms on which the Trustee will proceed with the Auction and/or the Sale. The Trustee is authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.

7.    No person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," or other similar bid protections or fee or payment.

8.    The deposits provided by all Qualified Bidders shall be deemed held in escrow in a designated non-interest bearing account by the Trustee and shall not become property of the

Debtors' bankruptcy estate unless and until released from escrow to the Trustee pursuant to an Order of this Court.

## III.    Auction

9.      The Trustee is authorized, subject to the terms of this Order and the Bidding Procedures, to take actions reasonably necessary, in the discretion of the Trustee, to select a Stalking Horse, and conduct and implement the Auction.

10.     Only the Trustee (and his professionals and advisors), and any Qualified Bidder, in each case, along with their representatives and counsel, or such other parties as the Trustee shall determine, shall attend the Auction and only such Qualified Bidders will be entitled to make Bids at the Auction.  Pursuant to the Hawk Settlement, the Secured Creditors shall be deemed to be a Qualified Bidder for all purposes under the Bid Procedures.

11.     The Trustee and his professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth in this Order or the Bidding Procedures, the Trustee may conduct the Auction in the manner he reasonably determines will result in the highest or otherwise best Qualified Bid.

12.     Each Qualified Bidder participating in the Auction must confirm on the record that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures; and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

13.     The Trustee may (a) select, in its business judgment, pursuant to the Bidding Procedures, the overall highest or otherwise best Qualified Bid and the Successful Bidder, and (b)

reject any bid that, in the Trustee's business judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their respective estates, their creditors, and parties-in-interest.

**IV.    Sale Hearing Notice and Related Relief**

14.    The Sale Notice is hereby approved.  Within three (3) business days following the entry of this Order, or as soon as reasonably practicable thereafter (the "**Mailing Date**"), the Trustee will cause the Sale Notice to be served on: (a) any party that has filed a notice of appearance in these Chapter 11 cases; (b) any entity on the Master Service List; (c) any parties known or reasonably believed to have expressed an interest in the Assets or any portion thereof; (d) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Assets; (e) all parties to executory contracts and unexpired leases to be assumed and assigned, or rejected as part of the Sale; (f) all applicable state and local taxing authorities; and (g) any governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder.

15.    In addition, on the Mailing Date, the Trustee shall publish a notice, substantially in the form of the Sale Notice (as may be modified for publication purposes), on one occasion, in the paper of general circulation chosen by the Trustee and its professionals and advisors.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Trustee.

## V.    Assumption and Assignment Procedures

16.    The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Successful Bidder pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "**Assumption Procedures**") are hereby approved to the extent set forth herein.

17.    The Assumption Procedures shall govern the assumption and assignment of all of the Debtors' executory contracts and unexpired leases to be assumed and assigned in connection with the Sale under the Asset Purchase Agreement (each, an "**Assigned Contract**," and, collectively, the "**Assigned Contracts**"), subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (the "**Cure Payments**"), the provision of adequate assurance by the Debtors or the Successful Bidder, as applicable, that Buyer will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Successful Bidder under the Assigned Contracts:

a.    **Contract Assumption Notice**: No less than twenty-one (21) days prior to the Sale Objection Deadline (the "**Assumption and Assignment Service Deadline**"), the Trustee shall serve a notice of contract assumption in substantially the form attached hereto as **Exhibit 3** (the "**Contract Assumption Notice**") via overnight delivery on all counterparties to all potential Assigned Contracts and provide a copy of the same to the Secured Creditors. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or

unexpired lease, as applicable, (iii) the Trustee's good faith estimates of the Cure Payments required in connection with the executory contract or unexpired lease, as applicable, and (iv) the Sale Objection Deadline; provided, however, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or unexpired lease, as applicable, or that the stated Cure Payment related to any executory contract or unexpired lease constitutes a claim against the Debtors' estates.  Further, the inclusion of an executory contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such executory contract or unexpired lease, as applicable, will ultimately be assumed and assigned.

      b.     **Cure Payments and Adequate Assurance of Future Performance**: The payment of the applicable Cure Payments by Successful Bidder, as applicable, the provision of adequate assurance by the Successful Bidder, as applicable, that they will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Successful Bidder under the Assigned Contracts shall (i) effect a cure of all defaults existing thereunder, and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

      c.     **Supplemental Contract Assumption Notice**: Pursuant to the terms of the Stalking Horse APA or the Modified APA, as applicable, or as otherwise agreed by the Trustee and the Successful Bidder, at any time after the Assumption and Assignment Service Deadline and prior to one (1) business day before Closing, the Successful Bidder has the right to designate a (i) supplement the list of Assigned Contracts with previously omitted executory contracts and/or unexpired leases ("**Additional Assigned Contracts**"), (ii) remove Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale ("**Removed**

**Assigned Contracts**"), and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts.

        d.    **Objections**: Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by counsel to the Trustee on or before 14 days after service of the Contract Assumption Notice (the "**Cure Objection Deadline**"), or such deadline set forth in the Supplemental Assumption Notice. The deadline to object to assumption and assignment solely with respect to the adequate assurance of future performance from the Successful Bidder, however, is the date that is two days after the conclusion of the Auction, but any such objection must be received before the start of the Sale Hearing, or such deadline set forth in the Supplemental Assumption Notice. Any party failing to timely file an objection to the cure amount, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, as applicable, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future performance), (c) the related relief requested in the Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Payment, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law

excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

18.    The Trustee shall have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment, or for the payment of any cure costs.

## VI.    Other Related Relief

19.    Any objections to the entry of this Order and the relief granted herein that have not been withdrawn, waived, resolved or settled, and all reservations of rights included therein, are hereby expressly overruled.

20.    The Trustee shall have no personal liability for any obligations of the Debtors' estates.

21.    Any obligations of the Debtors set forth in this Order and any Asset Purchase Agreement that are intended to be performed by the Trustee prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein.

22.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.    To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

24.    The Trustee is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

25.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

BY THE COURT:

_____

Honorable Ashely M. Chan
Chief United States Bankruptcy Judge

**<u>Exhibit 1</u>**
**Bidding Procedures**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)[1]** |
|  | : |  |

## BIDDING PROCEDURES

On March 15, 2023, (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc ("Technovative" collectively with Stream, the "**Debtors**") commenced Chapter 11 cases in the Bankruptcy Court for the Eastern District of Pennsylvania (the "**Court**").

On January 9, 2024 (the "**Appointment Date**"), William A. Homony was appointed as Chapter 11 Trustee of the Debtors' estates (the "Trustee") in order to determine, *inter alia*, if it would be beneficial to pursue a sale of substantially all of the Debtors' Assets.

On XXXXX, 2024, the Court entered an order [Docket No. [WW]] (the "**Bidding Procedures Order**")[2] approving, among other things, these bidding procedures (the "**Bidding Procedures**") and the Stalking Horse Asset Purchase Agreement ("**Stalking Horse APA**") to solicit bids on the Assets.

These Bidding Procedures set forth, among other things, (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Debtors' Assets pursuant to an order of the Bankruptcy Court approving such transaction (the "**Sale**"); (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the process by which the Trustee is authorized to conduct the auction ("**Auction**") for the Sale; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a potential Sale at a Sale Hearing (each as defined herein).

Pursuant to these Bidding Procedures, the Trustee and his advisors shall (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Potential Bidders (as defined below) in conducting their due diligence activities, (iii) receive offers from Potential Bidders, and (iv) negotiate any offers made to acquire the Assets.

The key dates for the sale process are as follows:

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] All terms used but not otherwise defined herein shall have the meanings ascribed to them in the motion for approval of the Bidding Procedures (the "**Motion**").

| November 15, 2024 at 4:00 p.m. prevailing Eastern Time | Bid Deadline - Due Date for Bids and Deposits |
|---|---|
| November 18, 2024 at 10:00 a.m. prevailing Eastern Time | Auction |
| November 20, 2024 at 4:00 p.m. prevailing Eastern Time | Sale Objection Deadline[3] |
| November 21, 2024 at 12:00 p.m. prevailing Eastern Time | Sale Objection Response Deadline |
| At the Sale Hearing | Supplemental Limited Sale Objection Response Deadline |
| November 22, 2024 at 10:00 a.m. prevailing Eastern Time | Sale Hearing |
| November 29, 2024 | Closing |

## Due Diligence

**Access to Diligence Materials**

To participate in the bidding process and to receive access to due diligence (the "**Diligence Materials**"), a party interested in acquiring the Debtors' Assets must submit to the Trustee an executed NDA in such form reasonably satisfactory to the Trustee. A party who qualifies for access to Diligence Materials pursuant to these Bidding Procedures shall be a "**Potential Bidder**."

The Trustee will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence, as determined by the Trustee, access to the electronic data room and other information that a Potential Bidder may reasonably request; provided, however, that the Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below). The availability of additional due diligence to a Qualified Bidder will cease on the date of the Auction; provided, however, that the Successful Bidder shall be permitted to continue to conduct due diligence until the Closing of the Sale (subject to the terms of the Successful Bidder Asset Purchase Agreement (as defined below)). The Trustee reserves the right to withhold any Diligence Materials that the Trustee determines are not appropriate for disclosure to a Potential Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Trustee nor its representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

Each Potential Bidder will be deemed to acknowledge and represent it (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities that are the subject of the Auction prior to making any such bid, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise

---

[3] This deadline applies to all objections to the Sale Motion as well as the Sale of the Assets with the exception of objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder.

2

regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures.

All due diligence requests must be directed to the Trustee's investment banker, J. Scott Victor, Managing Director, SSG Capital Advisors, LLC; 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428: Direct: 610-940-5802; Mobile: 215-816-8118; jsvictor@ssgca.com.

**Due Diligence from Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access by the Trustee or his advisors regarding the ability of such Potential Bidder to consummate its transaction.

## Designation of Stalking Horse Bidder

The Trustee is authorized to name the Secured Creditors as the Stalking Horse Bidder, (as defined in the Sale Motion) in connection with the Auction and enter into a stalking horse APA (a "**Stalking Horse APA**") with no bid protections.

Parties interested in becoming a Qualified Bidder for Debtors' Assets are encouraged to submit a Qualifying Bid by forwarding to the Trustee's Investment Banker: J. Scott Victor and Teresa C. Kohl, Managing Directors, SSG Advisors, LLC; 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428: Direct: 610-940-5802; J. Scott Victor Mobile: 215-816-8118 and Teresa C. Kohl Mobile: 215-280-6766; jsvictor@ssgca.com and tkohl@ssgca.com.

## Bid Deadline

The Trustee shall assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and shall accept Bids (as defined below) until **November 15, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") to acquire the Assets.

**The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.** Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

No later than the Bid Deadline, a Potential Bidder that desires to make a bid to consummate the Sale shall deliver written copies of its Bid (as defined below) in electronic format to: (i) the Trustee (bhomony@mctllp.com) (ii) counsel to the Trustee, Obermayer Rebmann Maxwell & Hippel LLP (edmond.george@obermayer.com) (iii) investment banker to the Trustee, J. Scott Victor and Teresa C. Kohl, Managing Directors, SSG Capital Advisors, LLC; 300 Barr Harbor Drive, Suite 420 West Conshohocken, PA 19428: Direct: 610-940-5802; J. Scott Victor, Mobile: 215-816-8118 and Teresa C. Kohl Mobile: 215-280-6766; jsvictor@ssgca.com and tkohl@ssgca.com.; and (iv) Office of the United States Trustee.

3

The Trustee may extend the Bid Deadline without further order of the Bankruptcy Court, subject to providing notice to all Potential Bidders and the Stalking Horse Bidder.

### Determination of Qualified Bid Status

To be eligible for consideration as a Qualified Bid and to participate in the Auction, each Potential Bidder must deliver to the Trustee, his counsel and his advisors, a written, irrevocable, signed offer (each, a "**Bid**") that must be determined by the Trustee, in its business judgment, to satisfy each of the following conditions:[4]

a.    **Good Faith Offer**: Each Bid must constitute a good faith, bona fide offer to purchase all or certain of the Assets.

b.    **Good Faith Deposit**: Each Bid must be accompanied by a deposit in the amount of 10% of the Purchase Price (as defined in the Modified APA (as defined below)), before any reductions for assumed liabilities (the "**Good Faith Deposit**"). The Good Faith Deposit shall come in the form of a wire transfer, certified check or other form acceptable to the Trustee, in his sole and exclusive discretion. Each Good Faith Deposit will be deposited and held in one or more non-interest-bearing accounts by the Trustee but shall not become property of the Debtors' estates absent further Order of the Bankruptcy Court. Wire instructions will be provided by the Trustee upon request.

c.    **Executed Agreement**: Each Bid must include an executed Asset Purchase Agreement (a "**Modified APA**") substantially in the form of the Stalking Horse APA, and any necessary transaction documents, signed by an authorized representative of such Potential Bidder, pursuant to which the Potential Bidder proposes to effectuate the acquisition of substantially all of the assets of the Debtors. Each Bid must also include a copy of the Modified APA marked against the Stalking Horse APA to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of executory contracts and unexpired leases, and other material terms such that the Trustee may determine how such Bid compares to the terms of the Stalking Horse APA and competing Bids). Each Modified APA must provide a commitment to close within two (2) business days after all closing conditions are met.

d.    **Purchase Price**: Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**") and identify how much of the Bid is being paid in cash. Qualified Bids must bid a minimum consideration equal to the Stalking Horse Bid, plus the increment.

e.    **Cash Requirements**: Each Bid must provide evidence of the ability to pay the cash portion of the bid in cash in full. To the extent the bid contains cash and non-cash

---

[4] The Trustee may, in his sole and exclusive discretion, waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust Auction so long as any such waiver is not materially inconsistent with these Bidding Procedures.

portions, the allocations shall be identified in the bid.  If a non-cash portion is part of the Bid, the cash portion must be a minimum of $120,000,000.00.

f.  **Designation of Assigned Contracts and Leases**: A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Potential Bidder wishes to be assumed pursuant to a Sale. A Bid must specify whether the Debtors or the Potential Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs.

g.  **Designation of Assumed Liabilities**: A Bid must identify all liabilities which the Potential Bidder proposes to assume.

h.  **Corporate Authority**: A Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the proposed Sale; provided that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Sale, then the Potential Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the Sale by the equity or interest holder(s) of such Potential Bidder.

i.  **Disclosure of Identity of Potential Bidder**: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such Bid (including the identity of any parent companies of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements or understandings with the Debtors, or any other known, potential, prospective bidder, or Potential Bidder, or any officer, director, shareholder or member of the Debtors.

j.  **Disclosure of Connections**: A Bid must fully disclose any connections or agreements with the Debtors or their affiliates, any other known Potential Bidder and/or any officer or director or member of the Debtors.

k.  **Proof of Financial Ability to Perform**: A Bid must include written evidence that the Trustee may reasonably conclude, in consultation with his advisors, demonstrates that the Potential Bidder has the necessary financial wherewithal to timely consummate a Sale including the amount of any Overbid and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all executory contracts and unexpired leases to be assumed and assigned in such Sale. Such information must include the following:

(1)  contact names and numbers for verification of financing sources;

(2)  written evidence of the Potential Bidder's internal resources and proof of any debt funding commitments from a recognized banking institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors' estates in the

amount of the cash portion of such Bid, in each case, as are needed to close the Sale;

(3)    the Potential Bidder's most current audited (if any) and latest unaudited financial statements or, if the bidder is an entity formed for the purpose of making a bid, the current audited (if any) and latest unaudited financial statements of the equity holder(s) of the bidder or such other form of financial disclosure, and a guaranty from such equity holder(s);

(4)    a description of the Potential Bidder's pro forma capital structure; and

(5)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee demonstrating that such Potential Bidder has the ability to promptly close the Sale.

l.    **Conditions/Contingencies**: Except as provided in the Stalking Horse APA, a Bid must not be subject to material conditions or contingencies to closing, including without limitation obtaining financing, internal approvals or further due diligence.

m.    **Bid Irrevocable**: A Bid must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Potential Bidder further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Trustee at the Sale Hearing, in the event the Successful Bidder fails to close as provided in the Successful Bidder's Modified APA, if at all, and the Sale Order.

n.    **As-Is, Where-Is**: A Bid must include the following disclaimer: EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY TRUSTEE PURSUANT TO THIS AGREEMENT (I) THE TRUSTEE MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, RELATING TO THE  ASSETS OR THE ASSUMED LIABILITIES, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO VALUE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR FOR ORDINARY PURPOSES, OR ANY OTHER MATTER, (II) THE TRUSTEE MAKES NO, AND HEREBY DISCLAIM ANY, OTHER REPRESENTATION OR WARRANTY REGARDING THE ASSETS OR THE ASSUMED LIABILITIES, AND (III) THE ASSETS AND THE ASSUMED LIABILITIES ARE CONVEYED ON AN "AS IS, WHERE IS" BASIS AS OF THE CLOSING, AND THE BUYER SHALL RELY UPON ITS OWN EXAMINATION THEREOF. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE TRUSTEE MAKES NO REPRESENTATION OR WARRANTY REGARDING ANY ASSET.

o.    **Time Frame for Closing**: A Bid by a Potential Bidder must be reasonably likely to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Trustee.

p.    **Consent to Jurisdiction**: Each Potential Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale, and (iii) commit to the entry of a final order or judgment in any way related to the Debtors, the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

q.    **Bid Protections**: A Bid must not entitle the Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of payment or reimbursement and, by submitting a Bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction. Each Potential Bidder presenting a Bid will bear its own costs and expenses (including legal fees) in connection with any proposed Sale.

r.    **Representations and Warranties**: A Bid must include the following representations and warranties:

    i.    a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable assets prior to submitting its Bid;

    ii.    a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Modified APA ultimately accepted and executed by the Trustee;

    iii.    a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable assets;

    iv.    a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

    v.    a statement that all proof of financial ability to consummate a Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

    vi.    a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

7

## Review of Bids; Designation of Qualified Bids

A Bid received from a Potential Bidder that meets the above requirements, as determined by the Trustee, shall constitute a "**Qualified Bid**" for such Assets (and such Potential Bidder, a "**Qualified Bidder**"); provided that if the Trustee receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Trustee may provide the Potential Bidder with the opportunity to cure or remedy any deficiencies prior to the Bid Deadline.

Within two (2) business days after the Bid Deadline, the Trustee and his advisors will determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a Qualified Bid will not be considered by the Trustee. To the extent there is any dispute regarding whether a bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction.

Prior to the Auction, the Trustee and its advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Trustee's reasonable business judgment the highest or otherwise best bid (the "**Starting Bid**").  The Starting Bid may be the bid of the Stalking Horse Bidder or any other higher or better Qualified Bid.  In making such determination, the Trustee will take into account, among other things, the execution risk attendant to any submitted bids. Within twenty-four (24) hours of such determination, but in no event later than twenty-four (24) hours before the start of the Auction, the Trustee will (i) notify the Bidder as to which Qualified Bid is the Starting Bid, and (ii) distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Trustee not to be a Qualified Bid, the Trustee will refund such Potential Bidder's Good Faith Deposit on or within ten (10) business days after the Bid Deadline.

By submitting its Bid, each Potential Bidder is agreeing with each other Potential Bidder to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after the Auction.

Without the written consent of the Trustee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid during the period that such Qualified Bid remains binding as specified herein; provided, that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

## Auction

If two or more Qualified Bids are received by the Bid Deadline, the Trustee will conduct an auction (the "**Auction**") to determine the highest or otherwise best Qualified Bid. This determination shall take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid to the estate and may include, but are not limited to, the following: (a)

4880-0354-5067 v1

the amount and nature of the consideration, including any assumed liabilities; (b) the number, type and nature of any changes to the Asset Purchase Agreement requested by each Qualified Bidder; (c) the extent to which such modifications or provisions are likely to delay closing of the sale of the Debtors' Assets and the cost to the Debtor estates of such modifications or delay; (d) the total consideration to be received by the Debtors; (e) the likelihood the Qualified Bidder can close the transaction timely; and (f) any other qualitative or quantitative factor the Trustee deems reasonably appropriate under the circumstances (collectively, the "**Bid Assessment Criteria**"). Notwithstanding anything herein to the contrary, the Trustee may select a combination of Qualified Bids for the Assets, in any combination that yields the highest or best value for the Debtors' respective estates.

If no Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, the Trustee will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held.

### Procedures for Auction

If the Trustee receives two or more Qualified Bids, the Auction shall take place on November 18, 2024 at 10:00 a.m. (EST) at the offices of Obermayer Rebmann Maxwell & Hippel LLP, 1500 Market Street, Suite 3400, Philadelphia, PA 19102, or such other place and time as determined by the Trustee. The Auction may be postponed, adjourned or cancelled as the Trustee deems appropriate, provided the Trustee provides notice of such postponement or adjournment and the time and place for the commencement of the Auction. The Auction shall be conducted according to the following procedures:

**Participation**

Only the Trustee, his Advisors, and any Qualified Bidder that has submitted a Qualified Bid, in each case, along with their representatives and counsel, or such other parties as the Trustee shall determine shall attend the Auction and only such Qualified Bidders will be entitled to make any Bids at the Auction.

**The Trustee Shall Conduct the Auction**

The Trustee and his professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Trustee may conduct the Auction in the manner they reasonably determine will result in the highest or otherwise best Qualified Bid. The Trustee shall provide each participant in the Auction with a copy of the Modified APA associated with the Starting Bid. In addition, at the start of the Auction, the Trustee shall describe the terms of the Starting Bid. Each Qualified Bidder participating in the Auction must confirm, both before and after the Auction, that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, and (b) has reviewed, understands and accepts the Bidding Procedures.

All Qualified Bidders may submit further Bids, along with a markup or a further markup of the applicable Asset Purchase Agreement. The Auction will be conducted in rounds. At any

9

time, a Qualified Bidder may request that the Trustee announce the current highest and best bid. If requested, the Trustee shall use reasonable efforts to clarify any and all questions any Qualified Bidder may have regarding the Trustee's announcement of the Starting Bid or the then current and highest bid.

The Trustee may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent with the Bidding Procedures.

**Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Trustee's announcement of the respective Starting Bid. Any Overbid for purposes of this Auction must comply with the following conditions:

a. **Minimum Overbid Increments**: Any Overbid after and above the respective Starting Bid or any subsequent Overbid shall be made in increments valued at not less than $250,000. The Trustee reserves the right to increase or decrease any subsequent increments, after the first Overbid.

b. **Remaining Terms Are the Same as for Qualified Bids**: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that (i) the Bid Deadline shall not apply and (ii) no additional Good Faith Deposit shall be required beyond the Good Faith Deposit previously submitted by a Qualified Bidder, provided that the Successful Bidder shall be required to make a representation at the end of the Auction that it will provide any additional deposit necessary so that its Good Faith Deposit is equal to the amount of ten percent (10%) of the Purchase Price contained in the Successful Bid. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Qualified Bidder to the Asset Purchase Agreement or a previously submitted Modified APA, in connection therewith (including any changes to the designated assigned executory contracts and unexpired leases and assumed liabilities). Any Overbid must remain open and binding on the Qualified Bidder until and unless the Trustee accepts a higher or otherwise better Overbid from another Qualified Bidder (except, to the extent required hereby, to serve as the Backup Bid). At the Trustee's discretion, to the extent not previously provided, a Qualified Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information reasonably acceptable to the Trustee) reasonably demonstrating such Qualified Bidder's ability to close the Sale proposed by such Overbid.

**Announcement and Consideration of Overbids**

a. **Announcement of Overbids**: The Trustee shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each

10

such Overbid, the basis for calculating such total consideration and such other terms as the Trustee reasonably determines will facilitate the Auction.

b. **Consideration of Overbids**: Subject to the deadlines set forth herein, the Trustee reserves the right in its reasonable business judgment to make one or more continuances of the Auction to, among other things facilitate discussions between the Trustee and Qualified Bidders or allow a Qualified Bidder to consider how it wishes to proceed.

## Closing the Auction

The Auction shall continue until there is one or more Qualified Bid(s) that the Trustee determines in his reasonable business judgment, is the highest or otherwise best Qualified Bid at the Auction. Thereafter, the Trustee shall select such Qualified Bid as the overall highest or otherwise best Qualified Bid (such Bid, the "**Successful Bid**," the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**" and the Qualified Bidder's purchase agreement, the "**Successful Bidder Asset Purchase Agreement**"). In making this decision, the Trustee shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid. Promptly following the Trustee's selection of the Successful Bid and the conclusion of the Auction, the Trustee shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Trustee shall not consider any Bids submitted after the conclusion of the Auction. For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Trustee from exercising its fiduciary duties under applicable law to maximize the value obtained for the Assets.

## Designation of Backup Bidder

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Bid at the Auction, as determined by the Trustee, in the exercise of its business judgment will be designated as the backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "**Backup Bid**") open and irrevocable until the date that is two days after the closing of the transaction with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, the Backup Bidder will be deemed to maintain the new prevailing bid, and the Trustee will be authorized, but not required, without further order of the Bankruptcy Court, to consummate the Sale with the Backup Bidder.

**Sale Is As Is/Where Is**

Except as otherwise provided in the Successful Bidder Asset Purchase Agreement or the Sale Order, the Assets or any other assets of the Debtors sold pursuant to the Bidding Procedures, shall be conveyed at the closing of a transaction with a Successful Bidder in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**" Except as may be set forth in the Successful Bidder Asset Purchase Agreement or the Sale Order, the Assets are sold free and clear of any and all liens, claims, interests, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, restrictions, charges, and encumbrances to attach to the net proceeds of sale with the same validity and with the same priority.

**Sale Objections and Hearing**

A hearing to consider approval of the Successful Bid (the "**Sale Hearing**") is scheduled to take place on November XX 2024 at 11:00 a.m. (EST) before the Honorable Ashely M. Chan, Bankruptcy Judge, either telephonically through Court Solutions or at the Courtroom 4 at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA 19107, or at such time thereafter as counsel may be heard. At the Sale Hearing, the Trustee will present the Successful Bid to the Bankruptcy Court for approval; provided, however, to the extent that the Successful Bid is to be implemented pursuant to a Plan, the Sale Hearing shall be used as a status conference.

Objections to the Sale (each, a "**Sale Objection**"), shall (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Trustee, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court; and (vi) be served upon the Objection Notice Parties (as defined in the in the Bidding Procedures Order) by **November XX, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"); provided, that the Trustee may extend the Sale Objection Deadline, as the Trustee deems appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.

Each Successful Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed transaction.

Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing

or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Sale contemplated by a purchase or investment agreement between the Trustee and each Successful Bidder, including the transfer of the Assets to such Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 1141(c) of the Bankruptcy Code.

## Return of Good Faith Deposits of Qualified Bidders

The Good Faith Deposits of all Qualified Bidders shall be held in one or more non-interest-bearing escrow accounts by the Trustee but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. If the Backup Bidder is not designated the Successful Bidder, the Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder on the date that is the Outside Backup Date. In the case of a breach or failure to perform on the part of the Successful Bidder (including any Backup Bidder designated as a Successful Bidder), the remaining portion of the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Trustee as liquidated damages, in addition to any and all rights, remedies and/or causes of action that may be available to the Trustee at law or in equity, and, the Trustee shall be free to consummate the proposed transaction at the next highest price bid at the Auction by a Qualified Bidder, without the need for an additional hearings or orders of the Courts. The Trustee reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures. If the Successful Bidder timely closes the Sale transaction, its Good Faith Deposit shall be credited towards the purchase price.

## Reservation of Rights of the Trustee

Except as otherwise provided in the Bidding Procedures or the Bidding Procedures Order, the Trustee reserves the right as it may reasonably determine to be in the best interest of its estate and in the exercise of its fiduciary duty to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reduce the Overbid amount; (e) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (3) contrary to the best interests of the Debtors and their respective estates; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; and (h) continue or cancel the Auction and/or Sale Hearing in open court without further notice.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Trustee from considering any and all transactions, including, but not limited to, proposals to sponsor a plan of reorganization.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Trustee from exercising its fiduciary duties under applicable law.

4880-0354-5067 v1

**Exhibit 2**
**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **Stream TV Networks, Inc.,** *et al*. | : | **Bankruptcy No. 23-10763 (AMC)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)[1]** |
|  | : |  |

## NOTICE OF AUCTION AND SALE HEARING PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On, March 15, 2023, the above-captioned Debtors and former debtors in possession (the "**Debtors**"), filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**").

2.      On January 9, 2024 (the "**Appointment Date**"), William A. Homony was appointed as Chapter 11 Trustee of the Debtors' estates (the **"Trustee")** in order to determine, *inter alia*, if it would be beneficial to pursue a sale of substantially all of the Debtors' Assets.

3.      On XXXXXX, 2024, in connection with the proposed sale (the "**Sale**") of the Debtors' Assets (the "**Assets**") at an auction for the Assets (the "**Auction**"), the Trustee filed a motion (the "Motion"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[2] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No._____].

4.      On **XXXXXX, 2024**, the Bankruptcy Court entered the Bidding Procedures Order [Docket No._____].  Pursuant to the Bidding Procedures Order, if two or more Qualified Bids are received before the Bid Deadline, the Trustee will conduct the Auction to determine the highest or otherwise best Qualified Bid, beginning on **November 18, 2024** at 10:00 a.m. (EST) at the offices of Obermayer Rebmann Maxwell & Hippel LLP, 1500 Market Street , Suite 3400, Philadelphia, PA 19102 or such other place and time as the Trustee shall notify all Qualified Bidders that have submitted Qualified Bid. Only the Trustee (and his professionals and advisors) and parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, **by no later than November 15, 2024 at 4:00 p.m. (EST)** (the "**Bid Deadline**") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Debtors' Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

4.      A hearing to approve the Sale (the "**Sale Hearing**") will be held on November 20, 2024 at 10:00 a.m. (EST) before the Honorable Ashely M. Chan, U.S.B.J. at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA, 19107 in Courtroom No. 4., or at such time thereafter as counsel may be heard, unless otherwise continued by the Trustee pursuant to terms of the Bidding Procedures.

5.      Objections, if any, to the Motion and the Sale of the Assets to a Successful Bidder, except objections related solely to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be made by **November 20, 2024 at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). Objections solely to the identity of the Successful Bidder and adequate assurance of future performance must be made by **November 20, 2024,  4:00 p.m., prevailing Eastern Time** on the date that is two (2) business days before the Sale Hearing. In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline or the Supplemental Limited Sale Objection Deadline, as applicable, and served on (i) counsel for the Trustee, and (ii) any other entity on the Master Service List. *Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Assets as approved by the Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363 (f)(2) of the Bankruptcy Code.*

6.      This Notice and the Sale Hearing is subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Trustee encourages parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of all the Assets and/or copies of any related document, including the Motion, or the Bidding Procedures Order, may make a written request to counsel for the Trustee, Obermayer Rebmann Maxwell Hippel LLP, c/o Edmond M George, Esquire (edmond.george@obermayer.com) or Michael D. Vagnoni, Esquire (michael.vagnoni@obermayer.com)  In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found through PACER on the Court's website, https://ecfnjb.uscourts.gov/ (registration required).

Respectfully Submitted,

Dated: September 30, 2024      By: */s/ Michael D. Vagnoni*
                                          Edmond M. George, Esquire
                                          Michael D. Vagnoni, Esquire
                                          OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                                          Centre Square West
                                            1500 Market Street, Suite 3400
                                            Philadelphia., PA 19102
                                            Telephone: (215) 665-3066

2

Facsimile: (215) 665-3165
E-mail:  edmond.george@obermayer.com
              michael.vagnoni@obermayer.com

4880-0354-5067 v1

**Exhibit 3**
**Contract Assumption Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)**[1] |
| | : | |

## ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

PLEASE TAKE NOTICE THAT:

1.　　On March 15, 2023, the above-captioned debtors and former debtors in possession (the "**Debtors**"), filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**").

2.　　On January 9, 2024 (the "**Appointment Date**"), William A. Homony was appointed as Chapter 11 Trustee of the Debtors' estates (the **"Trustee")** in order to determine, *inter alia*, if it would be beneficial to pursue a sale of substantially all of the Debtors' Assets.

1.

3.　　On **XXXXX**, in connection with the proposed sale (the "**Sale**") of the Debtors' assets (the "**Assets**") at an auction (the "**Auction**"), the Trustee filed a motion (the "**Motion**"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[2] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No. _____].

3.　　Pursuant to the Bidding Procedures Order, the Trustee hereby provides notice that they are seeking to assume and assign to the Successful Bidder the executory contracts and/or unexpired leases (each, an "**Assigned Contract**") listed on **Exhibit A** attached hereto.

4.　　When the debtor assumes and assigns an Assigned Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, the Successful Bidder will pay you the amount the Debtors' records reflect is owing for prepetition arrearages as set forth on **Exhibit A** (the "**Cure Payment**"). The Debtors' records reflect that all post-petition amounts owing under your Assigned Contract have been paid and will continue to be paid in the ordinary

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

course of business until the assumption and assignment of the Assigned Contract, and that other than the Cure Payment, there are no other defaults under the Assigned Contract.

5.      Inclusion of an executory contract or unexpired lease as an Assigned Contract on **Exhibit A** is not a guarantee that such executory contract or unexpired lease will ultimately be assumed and assigned to the Successful Bidder. Should it be determined that the Assigned Contract to which you are a party will not be assumed and assigned, you will be notified in writing.

6.      Under the terms of the Bidding Procedures, the Successful Bidder may modify the list of Assigned Contracts on **Exhibit A** at any time prior to three (3) business days before the Sale Hearing (the "**Designation Deadline**"), and the Trustee reserves the right at any time before the closing of a Sale, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Trustee exercises any of these reserved rights, the Trustee will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**"); provided, however, the Trustee may not add an executory contract or unexpired lease to the list of Assigned Contracts that has been previously rejected by the Trustee by Order of the Court.

7.      Objections, if any, to the proposed Cure Payment or assumption and assignment must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by proposed counsel to the Trustee on or before **14 days after service of this Contract Assumption Notice** (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice. The deadline to object to assumption and assignment solely with respect to the adequate assurance of future performance shall be the date that is two (2) business days before the start of the Sale Hearing; provided, however, and for the avoidance of doubt, the deadline to object to the Cure Payment shall not be extended.

8.      If an objection to the Cure Payment or assumption and assignment is timely filed and not resolved by the parties, a hearing with respect to the objection will take place in the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA 19107 Courtroom 4, at the Sale Hearing to be held at 10:00 a.m. (prevailing Eastern Time) on November XX, 2024, or at a later hearing, as determined by the Trustee. A hearing regarding the Cure Payment, if any, may be continued at the discretion of the Trustee until after the Closing.

9.      **Any party failing to timely file an objection to the Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, or the Sale will be deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of**

such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future performance), (c) the related relief requested in the Motion, and (d) the Sale. Such party will be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, the adequate assurance of future performance or the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to such party's Assigned Contract or Additional Assigned Contract.

10.    After the Auction, the Trustee will file, but not serve, a notice that identifies the Successful Bidder. The Trustee and/or the Successful Bidder reserve all of their rights, claims and causes of action with respect to the Assigned Contracts listed on **Exhibit A** hereto. Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on **Exhibit A** hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired post-petition within the meaning of Bankruptcy Code section 365; and (b) shall be subject to the Trustee's and/or any Successful Bidder's right to conduct further diligence with respect to the Cure Payment of each Assigned Contract and to modify such Cure Payment accordingly. In the event that the Trustee and/or any Successful Bidder determine that your Cure Payment should be modified, you will receive a notice, which will provide for additional time to object to such proposed modification.

Respectfully Submitted,

Dated: September 30, 2024    By: */s/ Michael D. Vagnoni*
                                Edmond M. George, Esquire
                                Michael D. Vagnoni, Esquire
                                OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                                Centre Square West
                                1500 Market Street, Suite 3400
                                Philadelphia, PA 19102
                                Telephone: (215) 665-3066
                                Facsimile: (215) 665-3165
                                E-mail:  edmond.george@obermayer.com
                                        michael.vagnoni@obermayer.com

                                *Counsel to William A. Homony Chapter 11 Trustee*

3

**<u>EXHIBIT B</u>**
**Asset Purchase Agreement**

**Asset Purchase Agreement to be provided**

**<u>EXHIBIT C</u>**
**Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al*. | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)[1]** |
| | : | |

**ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS, (B) AUTHORIZING THE TRUSTEE TO ENTER INTO AND PERFORM
DEBTORS' OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (C)
APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**"),[2] of the Chapter 11 Trustee, William A.

Homony (the "Trustee") of the estates of Stream TV Networks, Inc. (**"Stream"**) and Technovative

Media, LLC (**"Technovative"**, or collectively with Stream, the **"Debtors"**) for *inter alia*, entry of

an order (this "**Sale Order**") (a) authorizing and approving the entry into and performance under

the terms and conditions of that certain Asset Purchase Agreement, substantially in the form

attached hereto as **Exhibit 1** (as may be amended, supplemented or restated, the "**Asset Purchase**

**Agreement**"), and all other ancillary agreements (collectively, the "**Transaction Documents**"),

by and among the Debtors and _____ (the "**Buyer**"), (b) authorizing and

approving the sale of those Assets set forth in the Asset Purchase Agreement (the "**Assets**") free

and clear of all liens, claims, encumbrances, and other interests, except to the extent set forth in

the Asset Purchase Agreement, and the assumption of certain assumed liabilities set forth in the

Asset Purchase Agreement (the "**Assumed Liabilities**") pursuant to the Asset Purchase Agreement

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).
[2] Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Motion or the Bidding Procedures Order (as defined herein), as applicable.

4880-0354-5067 v1

upon the closing of the Sale (the "**Closing**"), (c) authorizing the assumption and assignment of executory contracts and unexpired leases set forth on **Exhibit 2** attached hereto, as the same may be subsequently modified pursuant to the terms of the Asset Purchase Agreement (each, an "**Assigned Contract**," and, collectively, the "**Assigned Contracts**"), upon the Closing, subject to the payment by the Buyer of any payments to cure any defaults arising under any Assigned Contract (the "**Cure Payments**"), the provision of adequate assurance by the Buyer, as applicable, that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Buyer under the Assigned Contracts, and (d) granting related relief, all as more fully set forth in the Motion; and this Court having entered the Order (A) Approving the Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving Procedures for the Assignment and Assumption of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief [Docket No. ___] (the "**Bidding Procedures Order**");[3] and the Trustee having conducted an auction (the "Auction") for the Assets; and the Trustee having determined that the Buyer has submitted the highest or otherwise best bid for the Assets and determined that the Buyer is the Successful Bidder and that _____ is the Back-Up Bidder (as defined in the Bidding Procedures), in accordance with the Bidding Procedures; and the Court having conducted a hearing on the Motion (the "**Sale Hearing**"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the Asset Purchase Agreement, and any and all objections to the Sale and the Transaction Documents filed in accordance with the Bidding Procedures Order; and the Court having heard statements of counsel and the evidence presented in support of the

---

[3] All references herein to the Bidding Procedures Order shall also be deemed to be references to the bidding procedures approved thereby (the "**Bidding Procedures**").

relief requested in the Motion at the Sale Hearing and in the Declaration of J. Scott Victor of SSG,

the Trustee's Investment Bankers submitted in support of the Sale (the "**Victor Declaration**");

and it appearing that due notice of the Motion, the Sale Hearing, the Asset Purchase Agreement,

and the Sale has been provided; and it appearing that the relief requested in the Motion is in the

best interests of the Debtors, their respective estates, stakeholders, and all other parties in interest;

and it appearing that the Court has jurisdiction over this matter; and it appearing that the legal and

factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief

granted herein; and after due deliberation, it is hereby FOUND, CONCLUDED, AND

DETERMINED THAT:

### Jurisdiction, Venue, and Final Order

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C.

§§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this

District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent

necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made

applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay

in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding

pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute

conclusions of law, they are adopted as such.

## Notice of the Motion, Auction, Sale Hearing, Asset Purchase Agreement and Sale and the Cure Payments

D.       As evidenced by the affidavits of service and publication previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, the Asset Purchase Agreement, and the Sale has been provided by the Trustee in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014. The Trustee has complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the Asset Purchase Agreement, and the Sale as required by the Bidding Procedures Order. The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the Asset Purchase Agreement, or the Sale is required. With respect to entities whose identities are not reasonably ascertained by the Trustee, publication of the Sale Notice (as defined in the Motion) was sufficient and reasonably calculated under the circumstances to reach such entities.

E.       A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

F.       In accordance with the Bidding Procedures Order, the Trustee has served a notice of their intent to assume and assign the Assigned Contracts and of the Cure Payments upon each counterparty to an Assigned Contract. The service and provision of such notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of the assumption and assignment of the Assigned Contracts or establishing a Cure Payment for the respective Assigned Contracts. Counterparties to the Assigned Contracts have had an adequate opportunity to object to the assumption and assignment of the applicable Assigned Contracts and the Cure Payments set forth in the notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the counterparty

4

from accepting performance by, or rendering performance to, the Buyer (or its designee) for purposes of section 365(c)(1) of the Bankruptcy Code). All objections, responses, or requests for adequate assurance, if any, have been resolved, overruled, or denied, as applicable.

### Highest and Best Offer

G.      As demonstrated by the Victor Declaration, the evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, the Trustee conducted a sale process in accordance with, and have, along with the Buyer, complied in all respects with, the Bidding Procedures Order and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Assets and assume the Assumed Liabilities.

H.      The Trustee and his advisors engaged in a robust and extensive marketing and sale process in accordance with the Bidding Procedures Order and the sound exercise of the Trustee's business judgment.

I.      The Trustee and the Buyer have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner.

J.      The Trustee conducted a fair and open sale process and the sale process, the Bidding Procedures, and the Auction were non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any entity that either expressed an interest in acquiring the Business or Assets, or who the Trustee believed may have had an interest in acquiring the Assets, to make an offer to purchase the Debtors' Assets.

K.      The sale process conducted by the Trustee pursuant to the Bidding Procedures Order and the Bidding Procedures resulted in the highest or otherwise best value for the Business

or Assets for the Trustee and its estate, its creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result.

L.       The Trustee has demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of its obligations under the Asset Purchase Agreement.

M.       The Trustee has also determined, in a valid and sound exercise of their business judgment that the next highest or otherwise best Qualified Bid (as defined in the Bidding Procedures) (the "**Back-Up Bid**") for all or substantially all of the Assets was _____ _____, as the Back-Up Bidder.

N.       The consummation of the Sale outside a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtor. The Sale does not constitute a sub rosa plan for which approval has been sought without the protections that a disclosure statement would afford.

O.       Entry of an order approving the Asset Purchase Agreement, and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Sale, as set forth in and pursuant to the Asset Purchase Agreement.

### Personal Identifiable Information

P.       The Debtors do not use personal information and therefore a confidential information ombudsman is not necessary or required.

### Good Faith of Buyer

Q.       The consideration to be paid by the Buyer under the Asset Purchase Agreement was negotiated at arm's-length, in good faith and without collusion pursuant to section 363(m) of the

Bankruptcy Code and constitutes reasonably equivalent value and fair and adequate consideration for the Assets. Specifically: (i) the Buyer recognizes that the Trustee was free to deal with any other party interested in purchasing the Business or Assets; (ii) the Buyer complied in all respects with the provisions in the Bidding Procedures Order in negotiating and entering into the Transaction Documents, and the transactions described therein comply with the Bidding Procedures Order; (iii) the Buyer agreed to subject any bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments made by the Buyer in connection with the Sale have been disclosed in the Asset Purchase Agreement; (v) no common identity of directors, officers or controlling member exists among the Buyer and the Debtors; (vi) the negotiation and execution of the Asset Purchase Agreement and the other Transaction Documents were at arm's-length and in good faith, and at all times each of the Buyer and the Trustee were represented by competent counsel of their choosing; (vii) the Buyer did not in any way induce or cause the chapter 11 filing of the Debtors; and (viii) the Buyer has not acted in a collusive manner with any person with respect to the Sale process or Auction. The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents. The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws.

R.    The Debtors, through the Trustee, and the Buyer, through its management, boards of directors, members, officers, directors, managers, employees, agents, and representatives, have acted in good faith. The Asset Purchase Agreement and the other Transaction Documents, and each of the transactions contemplated therein, were negotiated, proposed, and entered into by the

Trustee and the Buyer in good faith, without collusion or fraud, and from arm's-length bargaining positions. The Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby.

## No Fraudulent Transfer

S.       The consideration provided by the Buyer pursuant to the Asset Purchase Agreement for its purchase of the Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, or the Commonwealth of Pennsylvania.

T.       Neither the Buyer nor its past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies or partners (each, a "**Buyer Party**" and collectively, the "**Buyer Parties**") is a continuation of the Debtors or its estate and no Buyer Party is holding itself out to the public as a continuation of the Debtors or its estate simply by closing the Sale, and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer (or any other Buyer Party) and the Debtors estates.

## Validity of Transfer

U.       The Trustee has authorized the execution and delivery of the Asset Purchase Agreement and the Sale of the Assets to the Buyer (or its designee). The has all of the power and authority necessary to consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtor to

consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement. The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

## Section 363(f) of the Bankruptcy Code is Satisfied

V.      The Sale of the Assets to the Buyer (or its designee) and the assumption and assignment to the Buyer of the Assigned Contracts under the terms of the Asset Purchase Agreement meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the Sale of the Assets will be free and clear of any and all liens, claims, encumbrances, and interests, and will not subject any Buyer Party to any liability for any liens, claims, encumbrances, and interests whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), except as expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities (as defined in the Asset Purchase Agreement). All holders of liens, claims, encumbrances, and interests who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of liens, claims, encumbrances, and interests are adequately protected thereby satisfying section 363(e) of the Bankruptcy Code by having their liens, claims, encumbrances, and interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert liens, claims, encumbrances, and interests, or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable. Those holders of claims who did object and that have an

interest in the Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

      W.     The transfer of the Assets to the Buyer (or its designee) under the Asset Purchase Agreement will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Assets free and clear of all liens, claims, encumbrances, and interests, except as expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities. The Trustee may sell interests in the Assets free and clear of all liens, claims, encumbrances, and interests because, in each case, one or more of the standards set forth in section 363(f) have been satisfied. The Buyer would not have entered into the Transaction Documents and would not consummate the transactions contemplated thereby, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts (i) if the transfer of the Assets were not free and clear of all interest of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise or (ii) if the Buyer or any of its affiliates or designees would, or in the future could, be liable for any interests, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, in each case subject only to the Assumed Liabilities. Not transferring the Assets free and clear of all interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative or vicarious liability or any similar theory and/or applicable state or federal law or otherwise (subject only to the Assumed Liabilities), would adversely impact the Trustee's efforts to maximize the value of its estate.

## Assumption and Assignment of the Assigned Contracts

X.        The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order are integral to the Asset Purchase Agreement, are in the best interests of the Debtors and their respective estates, creditors, and other parties in interest, and represent the reasonable exercise of sound business judgment by the Trustee.

Y.        The Trustee has met all the requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts. The Buyer (or its designee) and/or the Debtors have (i) cured and/or provided adequate assurance of prompt cure of any default existing prior to the Closing under all of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Assigned Contracts, and (iii) provided adequate assurance of future performance, all within the meaning of sections 365(b)(1)(B) and (C) of the Bankruptcy Code. The Buyer has provided adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(b)(2)(B) and in accordance with the Bidding Procedures to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts.

Z.        At any time prior to the rejection of an executory contract or unexpired lease, the Debtors shall have the right, in accordance with the Bidding Procedures Order, to serve a Supplemental Assumption Notice upon any non-Debtor counterparty thereto indicating the Debtor's intent to assume and assign such executory contract or unexpired lease. The objection deadline for all Assigned Contracts, other than those subject to a Supplemental Assumption Notice, lapsed on XXXXX, 2024. Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed in any Supplemental Assumption Notice with respect thereto, must (i) be

11

in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, the correct Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by, counsel to the Trustee. If the parties cannot agree on a resolution, the Trustee will seek an expedited hearing before the Court to determine the Cure Payment and approve the assumption and assignment to Buyer. If there is no objection prior to the applicable objection deadline, then the counterparties will be deemed to have consented to the assumption and assignment to Buyer and the Cure Payment, and such assumption and assignment to Buyer and the Cure Payment shall be deemed approved by this Sale Order without further order of this Court.

AA.    The (i) transfer of the Assets to the Buyer and (ii) assignment to the Buyer of the Assigned Contracts, will not subject the Buyer or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the Commonwealth of Pennsylvania, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, except for the Assumed Liabilities.

## Consummation of the Sale

BB.    Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, the sale of the Assets must be approved and consummated promptly to preserve the value of the Assets. Time, therefore, is of the essence in effectuating the Asset Purchase

Agreement. As such, the Trustee and the Buyer intend to close the sale of the Assets as soon as reasonably practicable. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Asset Purchase Agreement. Accordingly, there is sufficient cause to waive the stay provided in the Bankruptcy Rules 6004(h) and 6006(d).

## NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.      The Motion is GRANTED to the extent set forth herein.

2.      All objections to or reservation of rights with respect to the Motion or the relief requested therein that have not been withdrawn or resolved are overruled. All persons and entities who did not object or withdraw their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      The Asset Purchase Agreement and the other Transaction Documents, and all terms and conditions thereof, are hereby approved, and the Trustee is authorized to take any and all steps to attain Closing.

4.      The Back-Up Bidder is hereby approved as the Back-Up Bidder (as defined in the Bidding Procedures), and the Back-Up Bid is hereby approved and authorized as the Back-Up Bid (as defined in the Bidding Procedures). To the extent necessary, the terms and conditions of the Back-Up Bid will be fully determined and approved at a later date pursuant to a separate sale order consistent with the terms of the Back-Up Bid.

### Transfer of the Assets as set forth in the Asset Purchase Agreement

5.      The Trustee is authorized and directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms

13

and conditions set forth in the Transaction Documents and this Sale Order, (b) assume and assign any and all Assigned Contracts, and (c) take all further actions and execute and deliver the Transaction Documents and any and all additional instruments and documents that may be necessary or appropriate to implement the Asset Purchase Agreement and the other Transaction Documents and consummate the Sale in accordance with the terms thereof, all without further order of the Court.

6.      The Buyer is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities (as defined in the Asset Purchase Agreement).

7.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Trustee to transfer the Assets to the Buyer (or its designee) in accordance with the Asset Purchase Agreement, the other Transaction Documents and this Sale Order.

8.      At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Assets shall be immediately vested in the Buyer (or its designee) pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Assets. All persons or entities, presently or at or after the Closing, in possession of some or all of the Assets, are directed to surrender possession of any and all portions of the Assets to the Buyer (or its designee) or its respective designees on the Closing or at such time thereafter as the Buyer (or its designee) may request.

9.      This Sale Order (a) shall be effective as a determination that, as of the Closing, (i) no claims other than the Assumed Liabilities will be assertable against any Buyer Party or any of its respective assets, (ii) the Assets shall have been transferred to the Buyer (or its designee) free and clear of all liens, claims, encumbrances and interests, subject only to the Assumed Liabilities,

and (iii) the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents. The Assets are sold free and clear of any reclamation rights. All liens, claims, encumbrances and interests on the Assets shall attach to the proceeds of the Sale ultimately attributable to the property against which such liens, claims, encumbrances and interests applied or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such liens, claims, encumbrances and interests applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or its estate, as applicable, or as otherwise provided herein.  Notwithstanding anything to the contrary in this Order, the Asset Purchase Agreement, or any related agreements, documents, or other instruments, or otherwise all cash proceeds of the Sale, up to the amount of the Secured Claims shall be paid at the time of Closing to the Secured Creditors until such time as all Secured Claims have been fully repaid and satisfied in full.

10.    Except as otherwise provided in the Asset Purchase Agreement (including with respect to the Assumed Liabilities), all persons and entities (and their respective successors and

15

assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, and the ownership, sale, or operation of the Assets prior to Closing or the transfer of the Assets to the Buyer (or its designee), are hereby forever barred, estopped, and permanently enjoined from asserting such claims against any Buyer Party and its property. Following the Closing, no holder of any claim or interest shall interfere with the Buyer's (or its designee's) title to or use and enjoyment of the Assets based on or related to any such claim or interest, or based on any action the Debtors may take in their respective Chapter 11 case.

11.    If any person or entity that has filed financing statements, mortgages, mechanic's claims, lis pendens, or other documents or agreements evidencing claims against the Debtors or in the Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens, claims, encumbrances and interests that the person or entity has with respect to the Debtors or the Assets or otherwise, then only with regard to the Assets that are purchased by the Buyer (or its designee) pursuant to the Asset Purchase Agreement and this Sale Order, (a) the Trustee is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets, (b) the Buyer (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances against the Buyer and the Assets, and (c) upon consummation of the Sale, the Buyer (or its designee)

may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, encumbrances and interests that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Assets. This Sale Order is deemed to be in a recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the Sale and assignment of the Assets free and clear of liens, claims, encumbrances and interests shall be self-executing and neither the Trustee nor the Buyer (or its designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

### No Successor or Transferee Liability

12.    No Buyer Party shall be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Sale contemplated by the Asset Purchase Agreement, or the transfer, operation, or use of the Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Buyer, with respect to any Assumed Liabilities), (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act of 1974 ("**ERISA**"), tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation.

17

13.     Other than as expressly set forth in the Asset Purchase Agreement (including with respect to the Assumed Liabilities), no Buyer Party shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Assets or (b) any claims against the Debtors. Except as expressly provided in the Asset Purchase Agreement (including with respect to the Assumed Liabilities) with respect to the Buyer, no Buyer Party shall have any liability whatsoever with respect to the Debtors operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "**Successor Liability**") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Assets or the Assumed Liabilities prior to the Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation or other employee benefits which is or has been sponsored, maintained or contributed to by the Debtors or with respect to which the Debtors have any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which the Debtors have at any time contributed, or had any obligation to contribute. Except to the extent expressly included in the Assumed Liabilities with respect to the Buyer or as otherwise expressly set forth in the Asset Purchase Agreement, no Buyer Party shall have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act (29 U.S.C.

§§ 2101 et seq.), (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. § 151 et seq. (the "**NLRA**"), or (f) any foreign, federal, state, or local labor, employment or environmental law, by virtue of the Buyer's purchase of the Assets, assumption of the Assumed Liabilities, or hiring of certain employees of the Debtors pursuant to the terms of the Asset Purchase Agreement. Without limiting the foregoing, no Buyer Party shall have any liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Assets except to the extent they are Assumed Liabilities set forth in the Asset Purchase Agreement.

14.    Immediately prior to the Closing, the Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or controlling members existed between the Buyer and the Debtors.

15.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against any Buyer Party or their respective assets (including, without limitation, the Assets), with respect to any (a) claim in these Chapter 11 cases or in connection with or related to the Sale or the Debtors or (b) Successor Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action,

in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, failing, or refusing to renew any license, permit, or authorization to operate any business in connection with the Assets or conduct any of the businesses operated with respect to such assets. For the avoidance of doubt, nothing in this paragraph shall affect the post-Closing rights and remedies of counterparties to Assigned Contracts.

## Good Faith of Buyer

16.    The Sale contemplated by the Asset Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, without limitation, the assumption and assignment of the Assigned Contracts), unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

17.    Neither the Trustee, the Debtors nor the Buyer have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

## Assumption and Assignment of Assigned Contracts

18.    The Trustee is authorized and directed at the Closing to assume and assign each of the Assigned Contracts to the Buyer (or its designee) pursuant to sections 105(a) and 365 of the Bankruptcy Code and to execute and deliver to the Buyer (or its designee) such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer (or its designee). The payment of the applicable Cure Payments (if any), the provision of adequate assurance by the Buyer, as applicable, that it will promptly cure any non-monetary defaults

existing prior to Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Buyer under the Assigned Contracts shall (a) effect a cure of all defaults existing thereunder as of the Closing and (b) compensate for any actual pecuniary loss to such counterparty resulting from such default.

19.     Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Payments, the provision of adequate assurance by the Buyer, as applicable, that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Buyer under the Assigned Contracts, the Assigned Contracts to be assumed and assigned under the Asset Purchase Agreement shall be assigned and transferred to and remain in full force and effect for the benefit of, the Buyer (or its designee) notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer. Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract to the Buyer (or its designee) or allow the counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract to the Buyer (or its designee), constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer (or its designee) of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer (or its designee) shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assigned Contracts, and such Assigned Contracts shall remain in full force and effect for the benefit of the Buyer (or its designee). Each counterparty to the Assigned Contracts shall be forever barred, estopped, and

permanently enjoined from (a) asserting against the Debtors or any Buyer Party or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including, without limitation, any breach related to or arising out of change-in-control provisions in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts and (b) asserting against any Buyer Party (or its respective property, including, without limitation, the Assets) any claim, counterclaim, defense, breach, condition, or setoff asserted, or assertable against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

20.     Upon the Closing and the payment of the relevant Cure Payments, if any, the provision of adequate assurance by the Debtors or the Buyer, as applicable, that it will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Buyer under the Assigned Contracts, the Buyer (or its designee) shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts. The failure of the Debtors or the Buyer (or its designee) to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Buyer (or its designee), as the case may be, to enforce every term and condition of such Assigned Contract. Any party that may have had the right to consent to the assignment of any Assigned Contract is deemed to have consented for the purposes of section 365(e)(2)(A) of the Bankruptcy Code.

21.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing after the Sale Objection Deadline and prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing, or as soon thereafter as reasonably practicable.

22.     The assignments of each of the Assigned Contracts are made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code.

### Other Miscellaneous Provisions

23.     Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

24.     The terms and provisions of the Asset Purchase Agreement, the other Transaction Documents and this Sale Order shall be binding in all respects upon the Debtors, their respective estates, all creditors of (whether known or unknown) and holders of equity or member interests in the Debtors, any holders of claims against or on all or any portion of the Assets, all counterparties to the Assigned Contracts, and the Buyer, and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s), examiner(s), or receiver(s) appointed in any of the Debtors' Chapter 11 cases or upon conversion to Chapter 7 under the Bankruptcy Code, as to which trustee(s), examiner(s), or receiver(s) such terms and provisions likewise shall be binding. The Asset Purchase Agreement shall not be subject to rejection or avoidance by the

Debtors, their respective estates, their creditors, members, or any trustee(s), examiner(s), or receiver(s).

25.     The terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in any of this Chapter 11 case; (b) converting the Chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 case; or (d) pursuant to which this Court abstains from hearing the Chapter 11 case. The terms and provisions of this Sale Order, notwithstanding the entry of any such orders described in (a)-(d) above, shall continue in this Chapter 11 case, or following dismissal of this Chapter 11 case.

26.     Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

27.     The Asset Purchase Agreement may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not, based on the Trustee's business judgment, have a material adverse effect on the Debtors' estates or their creditors. The Trustee shall provide the Secured Creditors with notice of any such modification, amendment, or supplement of the Asset Purchase Agreement. For the avoidance of doubt, all other modifications, amendments, or supplements that have a material adverse effect on the Debtors' estates or their creditors shall require Court approval.

28.     The Asset Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

24

29.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014 or otherwise, the terms and conditions of this Sale Order shall be effective immediately upon entry and the Trustee and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.

31.     To the extent there is any conflict between the terms of this Sale Order and the Asset Purchase Agreement, the terms of this Sale Order shall control. Nothing contained in any chapter 11 plan hereinafter confirmed in this Chapter 11 case or any order confirming such chapter 11 plan, or any other order of the Court, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or any other Transaction Document or the terms of this Sale Order.

32.     The Court shall retain exclusive jurisdiction with respect to the terms and provisions of this Sale Order and the Asset Purchase Agreement.

**EXHIBIT D**
**Sale Notice**

4880-0354-5067 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)[1]** |
| | : | |

## NOTICE OF AUCTION AND SALE HEARING PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On March 15, 2023, the above-captioned Debtors and former debtors in possession (the "**Debtors**"), filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**").

2.      On January 9, 2024 (the "**Appointment Date**"), William A. Homony was appointed as Chapter 11 Trustee of the Debtors' estates (the "Trustee") in order to determine, *inter alia*, if it would be beneficial to pursue a sale of substantially all of the Debtors' Assets.

3.      On XXXXX, 2024 in connection with the proposed sale (the "**Sale**") of the Debtors' assets (the "**Assets**") at an auction for the Assets (the "**Auction**"), the Trustee filed a motion (the "Motion"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[2] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No.___].

4.      On _____, 2024, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ]. Pursuant to the Bidding Procedures Order, if two or more Qualified Bids are received before the Bid Deadline, the Trustee will conduct the Auction to determine the highest or otherwise best Qualified Bid, beginning on November 18, 2024 at 10:00 a.m. (EST) at the offices of Obermayer Rebmann Maxwell & Hippel LLP, 1500 Market Street , Suite 3400, Philadelphia, PA 19102 or such other place and time as the Trustee shall notify all Qualified Bidders that have submitted Qualified Bids. Only the Trustee (and its professionals and advisors and parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, **by no later than November 15, 2024 at 4:00 p.m. (EST)** (the "**Bid Deadline**") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Debtors' Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

4.      A hearing to approve the Sale (the "**Sale Hearing**") will be held on November 22, 2024 at 10:00 a.m. (EST) before the Honorable Ashely M. Chan, U.S.B.J., at the United States Bankruptcy Court for the Eastern District of Pennsylvania, at the United States Bankruptcy Court for the Eastern District of Pennsylvania, in the United States Bankruptcy Court, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA, 19107 in Courtroom No. 4., or at such time thereafter as counsel may be heard, unless otherwise continued by the Trustee pursuant to terms of the Bidding Procedures.

5.      Objections, if any, to the Motion and the Sale of the Assets to a Successful Bidder, except objections related solely to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be made by **November 20, 2024, at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). Objections solely to the identity of the Successful Bidder and adequate assurance of future performance must be made by **4:00 p.m., prevailing Eastern Time** on the date that is two (2) business days before the Sale Hearing. In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline or the Supplemental Limited Sale Objection Deadline, as applicable, and served on (i) counsel for the Trustee, and (ii) any other entity on the Master Service List. *Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Assets as approved by the Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363 (f)(2) of the Bankruptcy Code.*

6.      This Notice and the Sale Hearing is subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Trustee encourages parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of all the Assets and/or copies of any related document, including the Motion, or the Bidding Procedures Order, may make a written request to counsel for the Trustee, Obermayer Rebmann Maxwell Hippel LLP, c/o Edmond M. George, Esquire (edmond.george@obermayer.com) or Michael D. Vagnoni, Esquire (michael.vagnoni@obermayer.com). In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found through PACER on the Court's website, https://ecfnjb.uscourts.gov/ (registration required).

Respectfully Submitted,

Dated: September 30, 2024        By: */s/ Michael D. Vagnoni*
                                 Edmond M. George, Esquire
                                 Michael D. Vagnoni, Esquire
                                 OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                                 Centre Square West

2

4880-0354-5067 v1

1500 Market Street, Suite 3400
Philadelphia., PA 19102
Telephone: (215) 665-3066
Facsimile: (215) 665-3165
E-mail:  edmond.george@obermayer.com
          michael.vagnoni@obermayer.com

*Counsel to William A. Homony Chapter 11 Trustee*

**<u>EXHIBIT E</u>**
**Contract Assumption Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al*. | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)[1]** |
| | : | |

## <u>NOTICE OF AUCTION AND SALE HEARING PLEASE TAKE NOTICE OF THE FOLLOWING:</u>

1.      On March 15, 2023, the above-captioned and former debtors in possession (the "**Debtors**"), filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**").

2.      On January 9, 2024 (the "**Appointment Date**"), William A. Homony was appointed as Chapter 11 Trustee of the Debtors' estates (the "Trustee") in order to determine, inter alia, if it would be beneficial to pursue a sale of substantially all of the Debtors' Assets.

3.      On XXXXXX, in connection with the proposed sale (the "**Sale**") of the Debtors' assets (the "**Assets**") at an auction (the "**Auction**"), the Trustee filed a motion (the "Motion"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[2] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No. _____].

3.      On XXXXXX, 2024, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ]. Pursuant to the Bidding Procedures Order, if two or more Qualified Bids are received before the Bid Deadline, the Trustee will conduct the Auction to determine the highest or otherwise best Qualified Bid, beginning on November 18, 2024 at 10:00 a.m. (EST) at the offices of Obermayer Rebmann Maxwell & Hippel LLP, 1500 Market Street , Suite 3400, Philadelphia, PA 19102 or such other place and time as the Trustee shall notify all Qualified Bidders that have submitted Qualified Bids. Only the Trustee (and his professionals and advisors), and parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, **by no later than November 15, 2024 at 4:00 p.m. (EST)** (the "**Bid Deadline**") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Debtors' Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

4.      A hearing to approve the Sale (the "**Sale Hearing**") will be held on November 20, 2024 at 10:00 a.m. (EST) before the Honorable Ashely M. Chan, U.S.B.J. at the United States Bankruptcy Court for the Eastern District of Pennsylvania, in the United States Bankruptcy Court, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA, 19107 in Courtroom No. 4., or at such time thereafter as counsel may be heard, unless otherwise continued by the Trustee pursuant to terms of the Bidding Procedures.

5.      Objections, if any, to the Motion and the Sale of the Assets to a Successful Bidder, except objections related solely to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be made by **XXXXXX, 2024 at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). Objections solely to the identity of the Successful Bidder and adequate assurance of future performance must be made by **4:00 p.m., prevailing Eastern Time** on the date that is two (2) business days before the Sale Hearing. In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline or the Supplemental Limited Sale Objection Deadline, as applicable, and served on (i) counsel for the Trustee, and (ii) any other entity on the Master Service List. *Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Assets as approved by the Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363 (f)(2) of the Bankruptcy Code.*

6.      This Notice and the Sale Hearing is subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Trustee encourages parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of all the Assets and/or copies of any related document, including the Motion, or the Bidding Procedures Order, may make a written request to counsel for the Trustee, Obermayer Rebmann Maxwell Hippel LLP, c/o Edmond M. George, Esquire (edmond.george@obermayer.com) or Michael D. Vagnoni, Esquire (michael.vagnoni@obermayer.com).   In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found through PACER on the Court's website, https://ecfnjb.uscourts.gov/ (registration required).

Respectfully Submitted,

Dated: September 30, 2024      By: */s/ Michael D. Vagnoni*
                              Edmond M. George, Esquire
                              Michael D. Vagnoni, Esquire

2

4880-0354-5067 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al*. | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)[1]** |
| | : | |

**ORDER GRANTING EXPEDITED CONSIDERATION, SHORTENED
TIME AND LIMITED NOTICE ON MOTION OF WILLIAM A. HOMONY IN HIS
CAPACITY AS CHAPTER 11 TRUSTEE FOR (I) AN ORDER (A) APPROVING THE
BIDDING PROCEDURES AND FORM OF ASSET PURCHASE AGREEMENT FOR
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B)
ESTABLISHING THE NOTICE PROCEDURES AND APPROVING THE FORM AND
MANNER OF NOTICE THEREOF AND SCHEDULING A SALE BY AUCTION, (C)
APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D)
SCHEDULING A SALE HEARING, (E) GRANTING EXPEDITED CONSIDERATION
PURSUANT TO LOCAL RULE OF BANKRUPTCY PROCEDURE 5070-1(g), AND (F)
GRANTING RELATED RELIEF, AND (II) AN ORDER (A) APPROVING THE SALE
OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF**

AND NOW this _____ day of _____, 2024, upon consideration

of the Motion of William A. Homony in His Capacity as Chapter 11 Trustee for (I) an Order (A)

Approving the Bidding Procedures and Form of Asset Purchase Agreement for the Sale of

Substantially all of the Debtors' Assets, (B) Establishing the Notice Procedures and Approving the

Form and Manner of Notice Thereof and Scheduling a Sale by Auction, (C) Approving Procedures

for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D)

Scheduling a Sale Hearing, (E) Granting Expedited Consideration Pursuant to Local Rule of

Bankruptcy Procedure 5070-1(g), and (F) Granting Related Relief, and (II) an Order (A)

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief (the "Sale Motion"),[2] and cause therefore having been demonstrated, it is hereby ORDERED as follows:

1.    The Trustee's request for an Expedited Consideration, shortened time, and limited notice on the Motion is GRANTED.

2.    A hearing to consider the Motion is scheduled for _____, 2024 at _____ a.m./p.m. before the Honorable Ashely M. Chan, United States Bankruptcy Judge in the United States Bankruptcy Court, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA, 19107 in Courtroom No. 4.  Any objection to the Motion must be filed with the Clerk of the Bankruptcy Court and served upon counsel on or before _____, 2024.

3.    A copy of this Order shall be served by counsel to the Trustee on or before _____, 2024, at _____ a.m./p.m. by facsimile, next day mail or by electronic means, including the Court's CM/ECF system, upon: (i) Counsel to the Secured Creditors; (ii) the Office of the United States Trustee; (iii) the Debtors' top twenty unsecured creditors (iv) the Debtors; and (v) all parties who have timely filed requests for notice under Bankruptcy Rule 2002.

4.    Prior to the hearing on the Motion, the Trustee shall file a Certificate of Service demonstrating compliance with paragraph 3 above.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion, the Bidding Procedures or the Bidding Procedures Order.

5.	If notice is given in the manner provided above, said notice shall be sufficient and proper and in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, and the Local Rules of this Court.


BY THE COURT:


_____
Honorable Ashely M. Chan
Chief United States Bankruptcy Judge

4880-0354-5067 v1