# Exhibit 11

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| **Stream TV Networks, Inc.**, *et al*. | : | **Bankruptcy No. 23-10763 (AMC)** |
|  | : |  |
| Debtors. | : | **(Jointly Administered)**[1] |
|  | : |  |

### ORDER (A) APPROVING BIDDING PROCEDURES AND FORM OF ASSET PURCHASE AGREEMENT IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING PROCEDURES FOR SELECTION OF A STALKING HORSE BIDDER AND BID PROTECTIONS, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "**Sale Motion**") of William A. Homony (the "**Trustee**") in his capacity of Chapter 11 Trustee of Stream TV Networks, Inc. ("**Stream**") and Technovative Media Inc. ("**Technovative**", and collectively with Stream, the "**Debtors**"), seeking entry of an order (this **"Order"**), (a) authorizing and approving the bidding procedures attached hereto as Exhibit 1 (the "**Bidding Procedures**")[2] in connection with the sale of the Assets of the Debtors, the Stalking Horse APA, and form of Asset Purchase Agreement in connection with the Sale, (b) approving the form and manner of notice of the Auction and the Sale Hearing, (c) scheduling the Sale Hearing and setting other related dates, (d) approving procedures for the assumption and assignment of executory contracts and unexpired leases and noticing of related Cure Payments, (e) granting the Sale Motion and (f) granting related relief; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having the power to enter a final order

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Declaration of the Trustee in Support of the Motion, as applicable.

consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Trustee's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no further notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and this Court having determined that the relief requested by the Motion is in the best interests of the Debtors, its estate, creditors, and other parties in interest; and upon all of the proceedings in this Chapter 11 case conducted before this Court; and after due deliberation and sufficient cause appearing therefore and any remaining objections having been withdrawn or overruled, it is hereby **FOUND, CONCLUDED AND DETERMINED THAT**:

A.    <u>Jurisdiction; Venue</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006. Venue for these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Bidding Procedures</u>. The Trustee has articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **<u>Exhibit 1</u>**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the value of the Assets. The Bidding Procedures were negotiated in good faith and at arm's length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Assets.

C.      Asset Purchase Agreement. That certain Asset Purchase Agreement, originally

filed on the docket on September 30, 2024 (D.I. #750), and amended on November 11, 2024 (D.I.

#795), among the Debtors and SeeCubic, Inc. (the "**Stalking Horse Bidder**") (as amended, the

"**Stalking Horse APA**") was negotiated in good faith and at arm's length between the parties and

may serve as a reasonable and appropriate baseline for soliciting other bids for the Assets.

D.      Stalking Horse Bidder. The Stalking Horse Bid as reflected in the Stalking Horse

APA represents the highest and best offer the Trustee has received to date. The Stalking Horse

APA provides the Debtors with the opportunity to sell the Assets in order to preserve and realize

their going concern value and provide a floor for a further marketing and auction process. The

Stalking Horse Bid will secure a fair and adequate baseline price for the Assets and, accordingly,

will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

The Stalking Horse Bidder is not an "insider" or "affiliate" of either of the Debtors, as those terms

are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators,

directors, or controlling stakeholders exist between the Stalking Horse Bidder and the Debtors.

E.      Sale Notice. The notice, substantially in the form attached hereto as **Exhibit 2**, as

amended, provided by the Trustee regarding the Sale of the Assets by the Auction and Sale Hearing

(the "**Sale Notice**") is reasonably calculated to provide all interested parties with timely and proper

notice of the proposed Sale, including: (i) the date, time, and place of the Auction; (ii) the Bidding

Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the

Motion and the date, time, and place of the Sale Hearing; (iv) specific identification of the Assets

for sale; (v) instructions for promptly obtaining a copy of the Stalking Horse APA; (vi)

representations describing the Sale as being free and clear of liens, claims, interests, and other

encumbrances, with all such liens, claims, interests, and other encumbrances attaching to the sale

proceeds with the same validity and priority; and (vii) notice of the proposed assumption and

assignment of the Assigned Contracts to the Successful Bidder and the right, procedures, and

deadlines for objecting thereto, and no further notice of the Sale shall be required.

F.    Assumption and Assignment Procedures. The Motion and the Contract Assumption

Notice (as defined herein) are reasonably calculated to provide counterparties to the Assigned

Contracts with proper notice of the intended assumption and assignment of their executory

contracts and any Cure Payments (as defined herein). The Assumption Procedures (as defined

herein) are appropriate.

G.    Other Findings. The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the preceding findings of fact

constitute conclusions of law, they are adopted as such. To the extent any of the preceding

conclusions of law constitute findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT**:

1.    The Motion is GRANTED as set forth herein.

2.    The Debtors and the Trustee are authorized to enter into and perform under the

Stalking Horse APA, which shall be subject to higher or otherwise better offers in accordance with

the terms of this Order and the Bidding Procedures.

**I.    Important Dates and Deadlines**

3.    **Sale Hearing**. The Sale Hearing will commence on **December 4, 2024, at 1:00**

**P.M. (prevailing Eastern Standard Time)** before the Honorable Ashely M. Chan, United States

Bankruptcy Judge, in the United States Bankruptcy Court, Robert N.C. Nix Sr. Federal

Courthouse, 900 Market Street, Philadelphia, PA, 19107, in Courtroom No. 4.

4.      **Sale Objection Deadline**. Objections, if any, to the Motion and the Sale of the Assets to a Successful Bidder, except objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be filed by **November 22, 2024, at 4:00 P.M. (prevailing Eastern Standard Time)** (the "**Sale Objection Deadline**"). Objections solely based on the identity of the Successful Bidder and adequate assurance of future performance must be made at the Sale Hearing (the "**Supplemental Limited Sale Objection Deadline**"). In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline or the Supplemental Limited Sale Objection Deadline, as applicable, and served on (i) counsel to the Trustee so as to be received by the applicable objection deadline as set forth in the Procedures Order and (ii) any other entity on the Master Service List.  Objections solely based on the identity of the Successful Bidder and adequate assurance of future performance must additionally be served on counsel to the Successful Bidder.

5.      **Response Deadline**. Responses or replies, if any, to timely filed objections to the entry of the Sale Order approving a Sale to the Successful Bidder must be filed on or before **November 29, 2024, at 4:00 P.M. (prevailing Eastern Standard Time)**, provided that such deadline may be extended by agreement of the Trustee and the affected objecting party. Responses or replies, if any, to timely filed objections to the identity of the Successful Bidder and/or adequate assurance of future performance may be presented at the Sale Hearing.

6.      **Competitive Bidding**. The following dates regarding the competitive bidding process are hereby established and approved:

4858-4678-3740 v3

      a.      **Bid Deadline: December 2, 2024, at 12:00 P.M. (prevailing Eastern Standard Time)**, the deadline by which all Qualified Bids (as defined in the Bidding Procedures) must be actually received in writing in electronic format by the parties specified in the Bidding Procedures (the "Bid Deadline"); and

      b.      **Auction: December 3, 2024, at 10:00 A.M. (prevailing Eastern Standard Time)**, is the date and time the Auction, if required, which will be held at the offices of counsel to the Trustee, Obermayer Rebmann Maxwell & Hippel LLP, 1500 Market Street, Suite 3400 Philadelphia, PA, 19102 or such other place and time as the Trustee shall notify all Qualified Bidders that have submitted Qualified Bids, and the Secured Creditors and their counsel.

**II.**      **Bidding Procedures and Related Relief**

      **A.**      **Bidding Procedures.**

7.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved in their entirety. The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale, and any party desiring to submit an offer for the Assets must comply with the terms of the Bidding Procedures and this Order. The Bidding Procedures shall also govern the terms on which the Trustee will proceed with the Auction and/or the Sale. The Trustee is authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.

8.      No person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," or other similar bid protections or fee or payment.

9.      The deposits provided by all Qualified Bidders shall be deemed held in escrow in a designated non-interest bearing account by the Trustee and shall not become property of the

4858-4678-3740 v3

Debtors' bankruptcy estates unless and until released from escrow to the Trustee pursuant to an Order of this Court.

10. The Stalking Horse Bidder is a Qualified Bidder and the Stalking Horse Bid is a Qualified Bid for all purposes.

**III. Auction**

11. The Trustee is authorized, subject to the terms of this Order and the Bidding Procedures, to take actions reasonably necessary, in the discretion of the Trustee, to conduct and implement the Auction.

12. Only the Trustee (and his professionals and advisors), and any Qualified Bidder, in each case, along with their representatives and counsel, or such other parties as the Trustee shall determine, shall attend the Auction and only such Qualified Bidders will be entitled to make Bids at the Auction. Pursuant to the Hawk Settlement, the Secured Creditors shall be deemed to be a Qualified Bidder for all purposes under the Bid Procedures.

13. The Trustee and his professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth in this Order or the Bidding Procedures, the Trustee may conduct the Auction in the manner he reasonably determines will result in the highest or otherwise best Qualified Bid.

14. Each Qualified Bidder participating in the Auction must confirm on the record that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures; and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

4858-4678-3740 v3

15.     The Trustee may (a) select, in its business judgment, pursuant to the Bidding Procedures, the overall highest or otherwise best Qualified Bid and the Successful Bidder, and (b) reject any bid that, in the Trustee's business judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their respective estates, their creditors, and parties-in-interest.

## IV.     Sale Hearing Notice and Related Relief

16.     The Sale Notice is hereby approved.  On or before November 20, 2024 (the "**Mailing Date**"), the Trustee will cause the Sale Notice to be served on: (a) any party that has filed a notice of appearance in these Chapter 11 cases; (b) any entity on the Master Service List; (c) any parties known or reasonably believed to have expressed an interest in the Assets or any portion thereof; (d) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Assets; (e) all parties to executory contracts and unexpired leases to be assumed and assigned, or rejected as part of the Sale; (f) all applicable state and local taxing authorities; and (g) any governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder.

## V.     Assumption and Assignment Procedures

17.     The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired leases proposed to be assumed by the Successful Bidder pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "**Assumption Procedures**") are hereby approved to the extent set forth herein.

18.     The Assumption Procedures shall govern the assumption and assignment of all of

4858-4678-3740 v3

the Debtors' executory contracts and unexpired leases to be assumed and assigned in connection with the Sale under the Asset Purchase Agreement (each, an "**Assigned Contract**," and, collectively, the "**Assigned Contracts**"), subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (the "**Cure Payments**"), the provision of adequate assurance by the Debtors or the Successful Bidder, as applicable, that Buyer will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Successful Bidder under the Assigned Contracts:

a.      **Contract Assumption Notice**: On November 21, 2024 (the "**Assumption and Assignment Service Deadline**"), the Trustee shall serve a notice of contract assumption in substantially the form attached hereto as **Exhibit 3** (the "**Contract Assumption Notice**") via overnight delivery on all counterparties to all potential Assigned Contracts and provide a copy of the same to the Secured Creditors and their counsel. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Trustee's good faith estimates of the Cure Payments required in connection with the executory contract or unexpired lease, as applicable, and (iv) the Sale Objection Deadline; provided, however, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or unexpired lease, as applicable, or that the stated Cure Payment related to any executory contract or unexpired lease constitutes a claim against the Debtors' estates. Further, the inclusion of an executory contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such executory contract or unexpired lease, as

9

applicable, will ultimately be assumed and assigned.

        b.        **Cure Payments and Adequate Assurance of Future Performance**: The payment of the applicable Cure Payments by Successful Bidder, as applicable, the provision of adequate assurance by the Successful Bidder, as applicable, that they will promptly cure any non-monetary defaults existing prior to the Closing under the Assigned Contracts, and the provision of adequate assurance of future performance by the Successful Bidder under the Assigned Contracts shall (i) effect a cure of all defaults existing thereunder, and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

        c.        **Supplemental Contract Assumption Notice**: Pursuant to the terms of the Stalking Horse APA or the Modified APA, as applicable, or as otherwise agreed by the Trustee and the Successful Bidder, at any time after the Assumption and Assignment Service Deadline and prior to one (1) business day before Closing, the Successful Bidder has the right to (i) supplement the list of Assigned Contracts with previously omitted executory contracts and/or unexpired leases ("**Additional Assigned Contracts**"), (ii) remove Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale ("**Removed Assigned Contracts**"), and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts.

        d.        **Objections**: Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any

4858-4678-3740 v3

applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by counsel to the Trustee and the Successful Bidder or the Stalking Horse Bidder (as applicable) on or before seven (7) days after service of the Contract Assumption Notice (the "**Cure Objection Deadline**"), or such deadline set forth in the Supplemental Assumption Notice. Objections to assumption and assignment solely with respect to the adequate assurance of future performance from the Successful Bidder, however, must be received before the start of the Sale Hearing, or such deadline set forth in the Supplemental Assumption Notice. Any party failing to timely file an objection to the cure amount, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, as applicable, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future performance), (c) the related relief requested in the Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Payment, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

19.     The Trustee shall have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment, or for the payment of any cure costs.

4858-4678-3740 v3

## VI.    Other Related Relief

20.    Any objections to the entry of this Order and the relief granted herein that have not been withdrawn, waived, resolved or settled, and all reservations of rights included therein, are hereby expressly overruled.

21.    The Trustee shall have no personal liability for any obligations of the Debtors' estates.

22.    Any obligations of the Debtors set forth in this Order and any Asset Purchase Agreement that are intended to be performed by the Trustee prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein.

23.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

24.    To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

25.    The Trustee is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

26.    The Stalking Horse Bidder or its designee has standing to seek to enforce the terms of this Order.

27.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

BY THE COURT:

Date: Nov. 20, 2024

_____
Honorable Ashely M. Chan
Chief United States Bankruptcy Judge

12

**Exhibit 1**
**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)**[1] |
| | : | |

## BIDDING PROCEDURES

On March 15, 2023, (the "**Petition Date**"), Stream TV Networks, Inc. ("**Stream**") and Technovative Media, Inc ("**Technovative**" and collectively with Stream, the "**Debtors**") filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), in the Bankruptcy Court for the Eastern District of Pennsylvania (the "**Court**").

On January 9, 2024, William A. Homony was appointed as Chapter 11 Trustee of the Debtors' estates (the "**Trustee**") in order to determine, *inter alia*, if it would be beneficial to pursue a sale of substantially all of the Debtors' Assets.

On XXXXX, 2024, the Court entered an order [Docket No. [WW]] (the "**Bidding Procedures Order**")[2] approving, among other things, these bidding procedures (the "**Bidding Procedures**") and the Stalking Horse APA , pursuant to which SeeCubic, Inc. (the "**Stalking Horse Bidder**") has committed to provide a credit bid, pursuant to section 363(k) of the Bankruptcy Code in the amount of $150,000,000.00 in partial satisfaction of the Allowed Secured Claim (as defined in the Stalking Horse APA) (the "**Stalking Horse Bid**") pursuant to the terms of the Hawk Settlement. Pursuant to the Bidding Procedures, the Stalking Horse Bid is subject to higher or better offers, the outcome of the Auction (as defined herein) if one is needed, and approval of the Court.

These Bidding Procedures set forth, among other things, (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Debtors' Assets pursuant to an order of the Bankruptcy Court approving such transaction (the "**Sale**"); (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the process by which the Trustee is authorized to conduct the auction ("**Auction**") for the Sale; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a potential Sale at a Sale Hearing (each as defined herein).

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] All terms used but not otherwise defined herein shall have the meanings ascribed to them in the motion for approval of the Bidding Procedures (the "**Motion**").

Pursuant to these Bidding Procedures, the Trustee and his advisors shall (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Potential Bidders (as defined below) in conducting their due diligence activities, (iii) receive offers from Potential Bidders, and (iv) negotiate any offers made to acquire the Assets.

The key dates for the sale process are as follows:

| Date/Time | Event |
|---|---|
| November 22, 2024 at 4:00 P.M. prevailing Eastern Standard Time | Sale Objection Deadline[3] |
| November 29, 2024 at 4:00 P.M. prevailing Eastern Standard Time | Sale Objection Response Deadline |
| December 2, 2024 at 12:00 P.M. prevailing Eastern Standard Time | Bid Deadline - Due Date for Bids and Deposits |
| December 3, 2024 at 10:00 A.M. prevailing Eastern Standard Time | Auction |
| At the Sale Hearing | Supplemental Limited Sale Objection Response Deadline |
| December 4, 2024 at 1:00 P.M.. prevailing Eastern Standard Time | Sale Hearing |
| December 10, 2024 | Closing |

### Due Diligence

**Access to Diligence Materials**

To participate in the bidding process and to receive access to due diligence (the "**Diligence Materials**"), a party interested in acquiring the Debtors' Assets must submit to the Trustee (i) an executed nondisclosure agreement in such form reasonably satisfactory to the Trustee, (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale as reasonably determined by the Trustee, and (iii) a statement that such party has a bona fide interest in submitting a bid. A party who qualifies for access to Diligence Materials pursuant to these Bidding Procedures shall be a "**Potential Bidder**." The Secured Creditors will be deemed a Potential Bidder at all times.

The Trustee will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence, as determined by the Trustee, access to the electronic data room and other information that a Potential Bidder may reasonably request; provided, however, that the Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below). The availability of additional due diligence to a Qualified Bidder will cease on the date of the Auction; provided, however, that the Successful Bidder shall be permitted to continue to conduct due diligence until the Closing of

---

[3] This deadline applies to all objections to the Sale Motion as well as the Sale of the Assets with the exception of objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder.

the Sale (subject to the terms of the Successful Bidder Asset Purchase Agreement (as defined below)). The Trustee reserves the right to withhold any Diligence Materials that the Trustee determines are not appropriate for disclosure to a Potential Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Trustee nor its representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

Each Potential Bidder will be deemed to acknowledge and represent it (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities that are the subject of the Auction prior to making any such bid, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures.

All due diligence requests must be directed to the Trustee's investment banker, J. Scott Victor, Managing Director, SSG Capital Advisors, LLC; 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428: Direct: 610-940-5802; Mobile: 215-816-8118; jsvictor@ssgca.com.

**Due Diligence from Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access by the Trustee or his advisors regarding the ability of such Potential Bidder to consummate its transaction. Failure to comply with such reasonable requests for additional information and due diligence access may be a basis for the Trustee to determine that such bidder (including any Qualified Bidder) is no longer a Potential Bidder or that the Bid made by such bidder will not be considered a Qualified Bid.

## Designation of Stalking Horse Bidder

The Trustee is authorized to name SeeCubic, Inc. ("**SCI**") as the Stalking Horse Bidder, (as defined in the Sale Motion) in connection with the Auction and enter into the stalking horse APA (a "**Stalking Horse APA**"; the Bid memorialized by the Stalking Horse APA, the "**Stalking Horse Bid**") with no bid protections.

## Communications with Potential Bidders

There must be no communications between and among Potential Bidders unless the Trustee has previously authorized such communication in writing or with the participation of the Trustee or the Trustee's advisors, and each Potential Bidder shall be deemed to have so represented to the Trustee and the Court. The Trustee reserves the right, in his reasonable business judgment, to disqualify any Potential Bidder(s) that have communications between and among themselves without the participation of the Trustee or the Trustee's prior written consent.

## Bid Deadline

The Trustee shall assist Potential Bidders in conducting their respective due diligence investigations and shall accept Bids (as defined below) until **December 2, 2024, at 12:00 p.m. (prevailing Eastern Standard Time)** (the "**Bid Deadline**") to acquire the Assets.

Parties interested in becoming a Qualified Bidder for Debtors' Assets are encouraged to submit a Qualified Bid to the Trustee's Investment Banker: J. Scott Victor and Teresa C. Kohl, Managing Directors, SSG Advisors, LLC; 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428: Direct: 610-940-5802; J. Scott Victor Mobile: 215-816-8118 and Teresa C. Kohl Mobile: 215-280-6766; jsvictor@ssgca.com and tkohl@ssgca.com.

**The submission of a Bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such Bid.** Any party that does not submit a Bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

No later than the Bid Deadline, a Potential Bidder that desires to make a bid to consummate the Sale shall deliver written copies of its Bid (as defined below) in electronic format to: (i) the Trustee (bhomony@mctllp.com); (ii) counsel to the Trustee, Obermayer Rebmann Maxwell & Hippel LLP (edmond.george@obermayer.com); (iii) investment banker to the Trustee, J. Scott Victor and Teresa C. Kohl, Managing Directors, SSG Capital Advisors, LLC; 300 Barr Harbor Drive, Suite 420 West Conshohocken, PA 19428: Direct: 610-940-5802; J. Scott Victor, Mobile: 215-816-8118 and Teresa C. Kohl Mobile: 215-280-6766; jsvictor@ssgca.com and tkohl@ssgca.com; and (iv) Office of the United States Trustee.

The Trustee may extend the Bid Deadline without further order of the Bankruptcy Court, subject to providing notice to all Potential Bidders and the Stalking Horse Bidder.

## Determination of Qualified Bid Status

To be eligible for consideration as a Qualified Bid and to participate in the Auction, each Potential Bidder must deliver to the Trustee, his counsel and his advisors, a written, irrevocable, signed offer (each, a "**Bid**") prior to the Bid Deadline that must be determined by the Trustee, in its business judgment, to satisfy each of the following conditions; *provided*, that for the avoidance of doubt, the Stalking Horse Bid is a Qualified Bid, and the Stalking Horse Bidder is a Qualified Bidder:[4]

    a.    **Good Faith Offer**: Each Bid must constitute a good faith, bona fide offer to purchase all or certain of the Assets (it being understood that partial bids may be permitted only if the combined consideration thereof satisfies the requirements of a Minimum Bid, as defined below).

---

[4] The Trustee may, in his sole and exclusive discretion, waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust Auction so long as any such waiver is not materially inconsistent with these Bidding Procedures.

b.    **Good Faith Deposit**: Each Bid must be accompanied by a deposit in the amount of ten percent (10%) of the total Purchase Price (as defined in the Modified APA (as defined below)), before any reductions for assumed liabilities (the "**Good Faith Deposit**"). The Good Faith Deposit shall come in the form of a wire transfer, certified check or other form acceptable to the Trustee, in his sole and exclusive discretion. Each Good Faith Deposit will be deposited and held in one or more non-interest-bearing accounts by the Trustee but shall not become property of the Debtors' estates absent further Order of the Bankruptcy Court. Wire instructions will be provided by the Trustee upon request.

c.    **Executed Agreement**: Each Bid must include an executed Asset Purchase Agreement (a "**Modified APA**") substantially in the form of the Stalking Horse APA, and any necessary transaction documents, signed by an authorized representative of such Potential Bidder, pursuant to which the Potential Bidder proposes to effectuate the acquisition of substantially all of the Assets of the Debtors. Each Bid must also include a copy of the Modified APA marked against the Stalking Horse APA to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of executory contracts and unexpired leases, and other material terms such that the Trustee may determine how such Bid compares to the terms of the Stalking Horse APA and competing Bids). Each Modified APA must provide a commitment to close within two (2) business days after all closing conditions are met, but in no event later than December 10, 2024.

d.    **Purchase Price**: Each Bid must clearly identify the purchase price to be paid (the "**Purchase Price**") and identify how much of the Bid is being paid in cash. The non-cash component of the Bid, if any, shall be backed by a letter of credit or other security, over which the Secured Creditors shall have consultation rights as to the sufficiency and form of such security.

e.    **Minimum Bid**: Qualified Bids must bid a minimum consideration equal to the Stalking Horse Bid, plus a minimum overbid amount equal to or greater than $250,000.00.

f.    **Cash Requirements**: Each Bid must provide evidence of the ability to pay the cash portion of the Bid in cash in full. To the extent the Bid contains cash and non-cash portions, the allocations shall be identified in the Bid.  If a non-cash portion is part of the Bid, the cash portion must be a minimum of $120,000,000.00.  For the avoidance of doubt, the Secured Creditors shall have consultation rights with respect to the sufficiency of any non-cash component of the Purchase Price included in any Bid, as agreed upon and approved as part of the Hawk Settlement.

g.    **Designation of Assigned Contracts and Leases**: A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Potential Bidder wishes to be assumed and assigned pursuant to a Sale. A Bid must specify whether the Debtors or the Potential Bidder will be responsible for any cure costs associated

4858-4678-3740 v3

with such assumption and assignment, and include a good faith estimate of such cure costs.

h.     **Designation of Assumed Liabilities**: A Bid must identify all liabilities which the Potential Bidder proposes to assume.

i.     **Corporate Authority**: A Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate entity authorization to consummate the proposed Sale; provided that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Sale, then the Potential Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the Sale by the equity or interest holder(s) of such Potential Bidder.

j.     **Disclosure of Identity of Potential Bidder**: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such Bid (including the identity of any parent equity holders or other financial backers of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements or understandings with the Debtors, or any other known, potential, prospective bidder, or Potential Bidder, or any officer, director, shareholder or member of the Debtors.

k.     **Disclosure of Connections**: A Bid must fully disclose any connections or agreements the Potential Bidder and any of its officers and/or directors have with the Debtors, their affiliates, any other known Potential Bidder, and/or any officer, director or equity holder of the Debtors.

l.     **Proof of Financial Ability to Perform**: A Bid must include written evidence that the Trustee may reasonably conclude, in consultation with his advisors, demonstrates that the Potential Bidder has the necessary financial wherewithal to timely consummate a Sale including the amount of any Overbid and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all executory contracts and unexpired leases to be assumed and assigned in such Sale. Such information must include the following:

(1)    a statement that the Potential Bidder is financially capable of consummating the transaction contemplated by the Alternative APA;

(2)    contact names and numbers for verification of financing sources;

(3)    written evidence of the Potential Bidder's internal resources and proof of any debt funding commitments from a recognized banking institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors' estates in the amount of the cash portion of such Bid, in each case, as are needed to close the Sale;

6

(4)    the Potential Bidder's most current audited (if any) and latest unaudited financial statements or, if the bidder is an entity formed for the purpose of making a bid, the current audited (if any) and latest unaudited financial statements of the equity holder(s) of the bidder or such other form of financial disclosure, and a guaranty from such equity holder(s);

(5)    a description of the Potential Bidder's pro forma capital structure;

(6)    evidence of letters of credit or other forms of security to support any non-cash component of the Purchase Price, with respect to which the Secured Creditors shall have consultation rights over the sufficiency thereof; and

(7)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee demonstrating that such Potential Bidder has the ability to promptly close the Sale.

m.    **Conditions/Contingencies**: Except as provided in the Stalking Horse APA, a Bid must not be subject to material conditions or contingencies to closing, including without limitation obtaining financing, internal approvals or further due diligence.

n.    **Bid Irrevocable**: A Bid must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Potential Bidder further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Trustee at the Sale Hearing, in the event the Successful Bidder fails to close as provided in the Successful Bidder Asset Purchase Agreement, if at all, and the Sale Order.

o.    **As-Is, Where-Is**: A Bid must include the following disclaimer: EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY ANCILLARY DOCUMENT DELIVERED BY TRUSTEE PURSUANT TO THIS AGREEMENT (I) THE TRUSTEE MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, RELATING TO THE ASSETS OR THE ASSUMED LIABILITIES, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO VALUE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR FOR ORDINARY PURPOSES, OR ANY OTHER MATTER, (II) THE TRUSTEE MAKES NO, AND HEREBY DISCLAIM ANY, OTHER REPRESENTATION OR WARRANTY REGARDING THE ASSETS OR THE ASSUMED LIABILITIES, AND (III) THE ASSETS AND THE ASSUMED LIABILITIES ARE CONVEYED ON AN "AS IS, WHERE IS" BASIS AS OF THE CLOSING, AND THE BUYER SHALL RELY UPON ITS OWN EXAMINATION THEREOF. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE TRUSTEE MAKES NO REPRESENTATION OR WARRANTY REGARDING ANY ASSET.

p.    **Time Frame for Closing**: A Bid by a Potential Bidder must be reasonably likely to be consummated, if selected as the Successful Bid, within a time frame

4858-4678-3740 v3

acceptable to the Trustee, which in no event shall be later than [December 10], 2024.

q.    **Consent to Jurisdiction**: Each Potential Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale, and (iii) commit to the entry of a final order or judgment in any way related to the Debtors, the Bidding Procedures, the Auction, any Modified APA, or the construction and enforcement of documents relating to any Sale if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

r.    **No Bid Protections**: A Bid must not entitle the Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of payment or reimbursement and, by submitting a Bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction. Each Potential Bidder presenting a Bid will bear its own costs and expenses (including legal fees) in connection with any proposed Sale.

s.    **Representations and Warranties**: A Bid must include the following representations and warranties:

   i.    a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable assets prior to submitting its Bid;

   ii.   a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Modified APA ultimately accepted and executed by the Trustee;

   iii.  a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable assets;

   iv.   a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

   v.    a statement that all proof of financial ability to consummate a Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

8

vi.   a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

### Review of Bids; Designation of Qualified Bids

A Bid received from a Potential Bidder that meets the above requirements, as determined by the Trustee (in consultation with the Secured Creditors, as set forth above), shall constitute a "**Qualified Bid**" for such Assets (and such Potential Bidder, a "**Qualified Bidder**"); *provided* that if the Trustee receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Trustee (in consultation with the Secured Creditors) may provide the Potential Bidder with the opportunity to cure or remedy any deficiencies prior to the Bid Deadline; *provided further*, that the Stalking Horse Bid is a Qualified Bid and the Stalking Horse Bidder is a Qualified Bidder.

On or before December 2, 2024, at 6:00 P.M. (prevailing Eastern Standard Time), the Trustee and his advisors (in consultation with the Secured Creditors), will determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a Qualified Bid will not be considered by the Trustee. To the extent there is any dispute regarding whether a bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction.

Prior to the Auction, the Trustee and its advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Trustee's reasonable business judgment the highest or otherwise best bid (the "**Starting Bid**").  The Starting Bid may be the bid of the Stalking Horse Bidder or any other higher or better Qualified Bid.  In making such determination, the Trustee will take into account, among other things, the execution risk attendant to any Qualified Bids. On or before December 2, 2024, at 11:59 P.M. (prevailing Eastern Standard Time), the Trustee will (i) notify the Qualified Bidders as to which Qualified Bid is the Starting Bid, and (ii) distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

If any Bid is determined by the Trustee not to be a Qualified Bid, the Trustee will refund such Potential Bidder's Good Faith Deposit on or within ten (10) business days after the Bid Deadline.

By submitting its Bid, each Potential Bidder is agreeing with each other Potential Bidder to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after the Auction.

Without the written consent of the Trustee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid during the period that such Qualified Bid remains binding as specified herein; *provided*, that any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

9

## Auction

If two or more Qualified Bids are received by the Bid Deadline, the Trustee will conduct an auction (the "**Auction**") to determine the highest and otherwise best Qualified Bid. This determination shall take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid to the estate and may include, but are not limited to, the following: (a) the amount and nature of the consideration, including any assumed liabilities; (b) the number, type and nature of any changes to the Stalking Horse APA requested by each Qualified Bidder; (c) the extent to which such modifications or provisions are likely to delay closing of the sale of the Debtors' Assets and the cost to the Debtors' estates of such modifications or delay; (d) the total consideration to be received by the Debtors; (e) the likelihood the Qualified Bidder can close the transaction timely; and (f) any other qualitative or quantitative factor the Trustee deems reasonably appropriate under the circumstances (collectively, the "**Bid Assessment Criteria**"). Notwithstanding anything herein to the contrary, the Trustee may select a combination of Qualified Bids for the Assets, in any combination that yields the highest and best value for the Debtors' respective estates.

If no Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, the Trustee will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held and that the Stalking Horse Bid shall be deemed the "Successful Bid" (and the Stalking Horse Bidder, the "Successful Bidder"), as otherwise defined below and as used in the Bidding Procedures Motion.

## Procedures for Auction

If the Trustee receives two (2) or more Qualified Bids, the Auction shall take place on December 3, 2024, at 10:00 A.M. (EST) at the offices of Obermayer Rebmann Maxwell & Hippel LLP, Centre Square West, 1500 Market Street, Suite 3400, Philadelphia, PA 19102, or such other place and time as determined by the Trustee. The Auction may be postponed, adjourned or cancelled as the Trustee deems appropriate, in consultation with the Secured Creditors, provided the Trustee provides notice of such postponement or adjournment and the time and place for the commencement of the Auction. The Auction shall be conducted according to the following procedures:

### Participation

Only the Trustee, his advisors, and any Qualified Bidder that has submitted a Qualified Bid, in each case, along with their representatives and counsel, or such other parties as the Trustee shall determine shall attend the Auction and only such Qualified Bidders will be entitled to make any Bids at the Auction.

4858-4678-3740 v3

**The Trustee Shall Conduct the Auction**

The Trustee and his professionals shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Trustee may conduct the Auction in the manner he reasonably determines will result in the highest or otherwise best Qualified Bid. The Trustee shall provide each participant in the Auction with a copy of the Modified APA or Stalking Horse APA, as applicable, associated with the Starting Bid. In addition, at the start of the Auction, the Trustee shall describe the terms of the Starting Bid. Each Qualified Bidder participating in the Auction must confirm, both before and after the Auction, that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, and (b) has reviewed, understands and accepts the Bidding Procedures.

All Qualified Bidders may submit further Bids, along with a markup or a further markup of the applicable APA. The Auction will be conducted in rounds. At any time, a Qualified Bidder may request that the Trustee announce the current highest and best bid. If requested, the Trustee shall use reasonable efforts to clarify any and all questions any Qualified Bidder may have regarding the Trustee's announcement of the Starting Bid or the then current and highest bid.

The Trustee may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent with the Bidding Procedures.

**Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Trustee's announcement of the respective Starting Bid. Any Overbid for purposes of this Auction must comply with the following conditions:

a. **Minimum Overbid Increments**: Any Overbid after and above the respective Starting Bid or any subsequent Overbid shall be made in increments valued at not less than $250,000.00. The Trustee reserves the right to increase or decrease any subsequent increments, after the first Overbid.

b. **Remaining Terms Are the Same as for Qualified Bids**: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that (i) the Bid Deadline shall not apply and (ii) no additional Good Faith Deposit shall be required beyond the Good Faith Deposit previously submitted by a Qualified Bidder, provided that the Successful Bidder (only if the Successful Bidder is not the Stalking Horse Bidder) shall be required to make a representation at the end of the Auction that it will provide any additional deposit necessary so that its Good Faith Deposit is equal to the amount of ten percent (10%) of the Purchase Price contained in the Successful Bid. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Qualified Bidder to the Stalking Horse APA or its Modified APA, as applicable, in connection therewith (including any changes to the designated assigned executory contracts and

11

unexpired leases and assumed liabilities). Any Overbid must remain open and binding on the Qualified Bidder until and unless the Trustee accepts a higher or otherwise better Overbid from another Qualified Bidder (except, to the extent required hereby, to serve as the Backup Bid). At the Trustee's discretion, to the extent not previously provided, a Qualified Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information reasonably acceptable to the Trustee) reasonably demonstrating such Qualified Bidder's ability to close the Sale proposed by such Overbid, and the Trustee shall consult with the Secured Creditors *__only__* with respect to the sufficiency of security related to any non-cash component of an Overbid submitted by any Qualified Bidder as part of the Auction.

**Announcement and Consideration of Overbids**

a.    **Announcement of Overbids**: The Trustee shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, the basis for calculating such total consideration and such other terms as the Trustee reasonably determines will facilitate the Auction.

b.    **Consideration of Overbids**: Subject to the deadlines set forth herein, the Trustee reserves the right in its reasonable business judgment to make one or more continuances of the Auction to, among other things facilitate discussions between the Trustee and Qualified Bidders or allow a Qualified Bidder to consider how it wishes to proceed.

**Closing the Auction**

The Auction shall continue until there is one or more Qualified Bid(s) that the Trustee determines in his reasonable business judgment, is the highest and otherwise best Qualified Bid at the Auction. Thereafter, the Trustee shall select such Qualified Bid as the overall highest and otherwise best Qualified Bid (such Qualified Bid, the "**Successful Bid**," the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**" and the Qualified Bidder's purchase agreement, the "**Successful Bidder Asset Purchase Agreement**"). In making this decision, the Trustee shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid. Promptly following the Trustee's selection of the Successful Bid and the conclusion of the Auction, the Trustee shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Trustee shall not consider any Bids submitted after the conclusion of the Auction. For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Trustee from exercising its fiduciary duties under applicable law to maximize the value obtained for the Assets.

12

**Designation of Backup Bidder**

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest and otherwise best Qualified Bid at the Auction after the Successful Bid, as determined by the Trustee, in the exercise of its business judgment will be designated as the backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its initial Qualified Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "**Backup Bid**") open and irrevocable until the date that is two (2) days after the closing of the transaction with the Successful Bidder (the "**Outside Backup Date**").

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, the Backup Bidder will be deemed to maintain the new prevailing Successful Bid (and its purchase agreement, the Successful Bidder Asset Purchase Agreement) and the Backup Bidder will be deemed to be the Successful Bidder, and the Trustee will be authorized, but not required, without further order of the Bankruptcy Court, to consummate the Sale with the Backup Bidder.

**Sale Is As Is/Where Is**

Except as otherwise provided in the Successful Bidder Asset Purchase Agreement or the Sale Order, the Assets or any other assets of the Debtors sold pursuant to the Bidding Procedures, shall be conveyed at the closing of a transaction with a Successful Bidder in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**" Except as may be set forth in the Successful Bidder Asset Purchase Agreement or the Sale Order, the Assets are sold free and clear of any and all liens, claims, interests, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, restrictions, charges, and encumbrances to attach to the net proceeds of sale with the same validity and with the same priority.

**Sale Objections and Hearing**

A hearing to consider approval of the Successful Bid (the "**Sale Hearing**") is scheduled to take place on December 4, 2024, at 1:00 P.M. (prevailing Eastern Standard Time) before the Honorable Ashely M. Chan, Bankruptcy Judge, either telephonically or at the Courtroom 4 at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA 19107, or at such time thereafter as counsel may be heard. At the Sale Hearing, the Trustee will present the Successful Bid to the Bankruptcy Court for approval; provided, however, to the extent that the Successful Bid is to be implemented pursuant to a Plan, the Sale Hearing shall be used as a status conference.

Objections to the Sale (each, a "**Sale Objection**"), shall (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Trustee, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Court (a) by registered users of

4858-4678-3740 v3

the Court's case filing system, and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court; and (vi) be served upon (i) counsel for the Trustee, (ii) counsel to the Secured Creditors, and (iii) any other entity on the Master Service List (the "**Objection Notice Parties**"),  by **November 22, 2024 at 4:00 P.M. (prevailing Eastern Standard Time)** (the "**Sale Objection Deadline**"); provided, that the Trustee may extend the Sale Objection Deadline, as the Trustee deems appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.

Objections solely based on the identity of the Successful Bidder and adequate assurance of future performance must be made before the start of the Sale Hearing (the "**Supplemental Limited Sale Objection Deadline**"), and must be served on the Objection Notice Parties, counsel to the Successful Bidder, the Successful Bidder, and the Backup Bidder.

Each Successful Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed transaction.

Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection, other than an objection based solely based on the identity of the Successful Bidder and adequate assurance of future performance, by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Sale contemplated by a purchase or investment agreement between the Trustee and each Successful Bidder, including the transfer of the Assets to such Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363 of the Bankruptcy Code, and the assumption and assignment of executory contracts and unexpired leases.

## Return of Good Faith Deposits of Qualified Bidders

The Good Faith Deposits of all Qualified Bidders shall be held in one or more non-interest-bearing escrow accounts by the Trustee but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. If the Backup Bidder is not designated the Successful Bidder, the Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder on the date that is the Outside Backup Date. In the case of a breach or failure to perform on the part of the Successful Bidder (including any Backup Bidder designated as a Successful Bidder), the remaining portion of the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Trustee as liquidated damages, in addition to any and all rights, remedies and/or causes of action that may be available to the Trustee at law or in equity, and, the Trustee shall be free to consummate the Backup Bid with the Backup Bidder or the proposed transaction at the otherwise next highest price bid at the Auction by a Qualified Bidder, without

the need for an additional hearings or orders of the Courts. The Trustee reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures. If the Successful Bidder timely closes the Sale transaction, its Good Faith Deposit shall be credited towards the purchase price.

## **Reservation of Rights of the Trustee**

Except as otherwise provided in the Bidding Procedures or the Bidding Procedures Order, and subject to the terms of the Hawk Settlement, the Trustee reserves the right as it may reasonably determine to be in the best interest of its estate and in the exercise of its fiduciary duty to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reduce the Overbid amount; (e) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (3) contrary to the best interests of the Debtors and their respective estates; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; and (h) continue or cancel the Auction and/or Sale Hearing in open court without further notice.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Trustee from considering any and all transactions, including, but not limited to, proposals to sponsor a plan of reorganization.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Trustee from exercising its fiduciary duties under applicable law.

4858-4678-3740 v3

**Exhibit 2**
**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)[1]** |
| | : | |

## NOTICE OF AUCTION AND SALE HEARING PLEASE TAKE NOTICE OF THE FOLLOWING:

1.　　On, March 15, 2023, the above-captioned Debtors and former debtors in possession (the "**Debtors**"), filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**").

2.　　On January 9, 2024, William A. Homony was appointed as Chapter 11 Trustee of the Debtors' estates (the **"Trustee"**) in order to determine, *inter alia*, if it would be beneficial to pursue a sale of substantially all of the Debtors' Assets.

3.　　On September 30, 2024, in connection with the proposed sale (the "**Sale**") of the Debtors' Assets (the "**Assets**") at an auction for the Assets (the "**Auction**"), the Trustee filed a motion (the "Motion"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[2] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale and approving the terms of a Stalking Horse Asset Purchase Agreement in connection therewith; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No.750].

4.　　On _____, 2024, the Bankruptcy Court entered the Bidding Procedures Order [Docket No._____]. Pursuant to the Bidding Procedures Order, if two or more Qualified Bids are received before the Bid Deadline, the Trustee will conduct the Auction to determine the highest or otherwise best Qualified Bid, beginning on **December 3, 2024** at 10:00 A.M. (prevailing Eastern Standard Time) at the offices of Obermayer Rebmann Maxwell & Hippel LLP, 1500 Market Street, Suite 3400, Philadelphia, PA 19102 or such other place and time as the Trustee shall notify all Qualified Bidders that have submitted Qualified Bid. Only the Trustee (and his professionals and advisors) and parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, **by no later than December 2, 2024 at 12:00 P.M. (prevailing**

---

[1] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

4858-4678-3740 v3

Eastern Standard Time) (the "**Bid Deadline**") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Debtors' Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

5.      A hearing to approve the Sale (the "<u>**Sale Hearing**</u>") will be held on **December 4, 2024, at 1:00 P.M.** (prevailing Eastern Standard Time) before the Honorable Ashely M. Chan, U.S.B.J. at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA, 19107 in Courtroom No. 4., or at such time thereafter as counsel may be heard, unless otherwise continued by the Trustee pursuant to terms of the Bidding Procedures.

6.      Objections, if any, to the Motion and the Sale of the Assets, except objections related solely to the identity of the Successful Bidder and adequate assurance of future performance by a Successful Bidder, must be made by <u>**November 22, 2024, at 4:00 P.M. (prevailing Eastern Standard Time)**</u> (the "**Sale Objection Deadline**"). Objections solely to the identity of the Successful Bidder and adequate assurance of future performance must be made at the Sale Hearing. In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline or the Supplemental Limited Sale Objection Deadline, as applicable, and served on (i) counsel for the Trustee and (ii) any other entity on the Master Service List. Objections solely based on the identity of the Successful Bidder and adequate assurance of future performance must additionally be served on counsel to the Successful Bidder. *Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Assets as approved by the Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363 (f)(2) of the Bankruptcy Code.*

7.      This Notice and the Sale Hearing is subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Trustee encourages parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of all the Assets and/or copies of any related document, including the Motion, or the Bidding Procedures Order, may make a written request to counsel for the Trustee, Obermayer Rebmann Maxwell Hippel LLP, c/o Edmond M George, Esquire (edmond.george@obermayer.com) or Michael D. Vagnoni, Esquire (michael.vagnoni@obermayer.com)  In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found through PACER on the Court's website, https://ecfnjb.uscourts.gov/ (registration required).

Respectfully Submitted,

Dated: November XX, 2024        By: */s/ Michael D. Vagnoni*
                                     Edmond M. George, Esquire
                                     Michael D. Vagnoni, Esquire
                                     OBERMAYER REBMANN MAXWELL & HIPPEL LLP

2

Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066
Facsimile: (215) 665-3165
E-mail:  edmond.george@obermayer.com
          michael.vagnoni@obermayer.com

3

**Exhibit 3**
**Contract Assumption Notice**

4858-4678-3740 v3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **Stream TV Networks, Inc.,** *et al.* | : | **Bankruptcy No. 23-10763 (AMC)** |
|  | : |  |
| Debtors. | : | **(Jointly Administered)**[9] |
|  | : |  |

## ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

PLEASE TAKE NOTICE THAT:

1.    On March 15, 2023, the above-captioned debtors and former debtors in possession (the "**Debtors**"), filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**").

2.    On January 9, 2024, William A. Homony was appointed as Chapter 11 Trustee of the Debtors' estates (the "**Trustee**") in order to determine, *inter alia*, if it would be beneficial to pursue a sale of substantially all of the Debtors' Assets.

3.    On **September 30, 2024**, in connection with the proposed sale (the "**Sale**") of the Debtors' assets (the "**Assets**") at an auction (the "**Auction**"), the Trustee filed a motion (the "**Motion**"), seeking, among other things, (i) entry of an order (the "**Bidding Procedures Order**")[10] approving the bidding procedures (the "**Bidding Procedures**") governing the Sale and approving the terms of a Stalking Horse Asset Purchase Agreement in connection therewith; (ii) establishing procedures for the assignment and assumption of executory contracts and unexpired leases (the "**Assumption and Assignment Procedures**"); and (iii) granting related relief [Docket No.750].

4.    Pursuant to the Bidding Procedures Order, the Trustee hereby provides notice that they are seeking to assume and assign to the Successful Bidder the executory contracts and/or unexpired leases (each, an "**Assigned Contract**") listed on **Exhibit A** attached hereto.

5.    When the applicable Debtor assumes and assigns an Assigned Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, the Successful Bidder will pay you the amount the Debtors' records reflect is owing for prepetition arrearages as

---

[9] On April 11, 2023, the Court entered an order directing joint administration of the above-captioned case and *In re Technovative Media, Inc.*; Case No. 23-10764 (AMC). (D.I. #81).

[10] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures Order.

4858-4678-3740 v3

set forth on **Exhibit A** (the "**Cure Payment**"). The Debtors' records reflect that all post-petition amounts owing under your Assigned Contract have been paid and will continue to be paid in the ordinary course of business until the assumption and assignment of the Assigned Contract, and that other than the Cure Payment, there are no other defaults under the Assigned Contract.

6.      Inclusion of an executory contract or unexpired lease as an Assigned Contract on **Exhibit A** is not a guarantee that such executory contract or unexpired lease will ultimately be assumed and assigned to the Successful Bidder. Should it be determined that the Assigned Contract to which you are a party will not be assumed and assigned, you will be notified in writing.

7.      Under the terms of the Bidding Procedures, the Successful Bidder may modify the list of Assigned Contracts on **Exhibit A** on or before December 6, 2024 (the "**Designation Deadline**"), and the Trustee reserves the right at any time before the closing of a Sale, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Trustee exercises any of these reserved rights, the Trustee will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**"); provided, however, the Trustee may not add an executory contract or unexpired lease to the list of Assigned Contracts that has been previously rejected by the Trustee by Order of the Court.

8.      Objections, if any, to the proposed Cure Payment or assumption and assignment must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by proposed counsel to the Trustee and the Stalking Horse Bidder on or before **seven (7) days after service of this Contract Assumption Notice** (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice. Objections solely to assumption and assignment solely with respect to the adequate assurance of future performance; however, must be received before the start of the Sale Hearing; provided, however, and for the avoidance of doubt, the deadline to object to the Cure Payment shall not be extended. Objections to assumption and assignment solely with respect to the adequate assurance of future performance that are made after the Auction on December 3, 2024, and the selection of the Successful Bidder must also be served upon counsel to the Successful Bidder.

9.      If an objection to the Cure Payment or assumption and assignment is timely filed and not resolved by the parties, a hearing with respect to the objection will take place in the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street, Philadelphia, PA 19107 Courtroom 4, at the Sale Hearing to be held at 1:00 P.M. (prevailing Eastern Standard Time) on December 4, 2024, or at a later hearing, as determined by the Trustee. A hearing regarding the Cure Payment, if any, may be continued at the discretion of the Trustee until after the Closing.

10.     **Any party failing to timely file an objection to the Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Contract Assumption Notice or Supplemental Assumption Notice, or the Sale will be deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future performance), (c) the related relief requested in the Motion, and (d) the Sale. Such party will be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, the adequate assurance of future performance or the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to such party's Assigned Contract or Additional Assigned Contract.**

11.     On the date the Auction is completed, or on December 3, 2024, if the Auction does not take place because there are no other Qualified Bids, the Trustee will file, but not serve, a notice that identifies the Successful Bidder. The Trustee and/or the Successful Bidder reserve all of their rights, claims and causes of action with respect to the Assigned Contracts listed on **Exhibit A** hereto. Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on **Exhibit A** hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired post-petition within the meaning of Bankruptcy Code section 365; and (b) shall be subject to the Trustee's and/or any Successful Bidder's right to conduct further diligence with respect to the Cure Payment of each Assigned Contract and to modify such Cure Payment accordingly. In the event that the Trustee and/or any Successful Bidder determine that your Cure Payment should be modified, you will receive a notice, which will provide for additional time to object to such proposed modification.

Respectfully Submitted,

Dated: November XX, 2024    By:   _/s/ Michael D. Vagnoni_
                            Edmond M. George, Esquire
                            Michael D. Vagnoni, Esquire
                            OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                            Centre Square West
                            1500 Market Street, Suite 3400
                            Philadelphia, PA 19102
                            Telephone: (215) 665-3066
                            Facsimile: (215) 665-3165
                            E-mail:  edmond.george@obermayer.com
                                   michael.vagnoni@obermayer.com

                            *Counsel to William A. Homony Chapter 11 Trustee*

4